Ashley Gorski (*pro hac vice*)
agorski@aclu.org
Scarlet Kim (*pro hac vice*)
scarletk@aclu.org
Sarah Taitz (*pro hac vice*)
staitz@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, Floor 18
New York, NY 10004
Tel: (212) 549-2500

*Counsel for Plaintiffs*
(Additional counsel continued on next page)

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDIRAHMAN ADEN KARIYE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary of the U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>*Defendants*. | **JOINT RULE 26(f) REPORT**<br><br>No. 2:22-cv-01916-FWS-GJS<br><br>Judge: Hon. Fred W. Slaughter<br><br>Conference Date: September 1, 2022<br><br>Time: 9:00 a.m.<br><br>Courtroom: 10D (via Zoom) |

Mohammad Tajsar (SBN 280152)
mtajsar@aclusocal.org
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Tel: (213) 977-9500

Daniel Mach (*pro hac vice*)
dmach@aclu.org
Heather L. Weaver (SBN 226853)
hweaver@aclu.org
American Civil Liberties Union Foundation
915 15th St., NW Ste. 600
Washington, DC 20005
Tel: (202) 675-2330

Teresa Nelson (*pro hac vice*)
tnelson@aclu-mn.org
American Civil Liberties Union of Minnesota
P.O. Box 14720
Minneapolis, MN 55415
Tel: (651) 645-4097

*Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch, Civil Division

LESLIE COOPER VIGEN
leslie.vigen@usdoj.gov
Trial Attorney (DC Bar No. 1019782)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0727

*Counsel for Defendants*

Plaintiffs Imam Abdirahman Aden Kariye, Mohamad Mouslli, and Hameem Shah ("Plaintiffs") and Defendants Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security ("DHS"); Chris Magnus, Commissioner of U.S. Customs and Border Protection ("CBP"); Tae D. Johnson, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); and Steve K. Francis, Acting Executive Associate Director, Homeland Security Investigations ("HSI") ("Defendants") (collectively, the "Parties") submit this joint report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and the Court's June 6, 2022 Order (ECF No. 42).

### a. Statements of the Case

#### 1. Plaintiffs' Statement

Plaintiffs are three Muslim U.S. citizens who have been asked deeply personal and intrusive questions about their religious beliefs, practices, and associations by federal border officers upon return home to the United States from international travel. The questions asked by CBP and/or HSI officers have included: "How often do you pray?" "Do you attend mosque?" "What mosque do you attend?" and "Are you Sunni or Shi'a?" As a matter of agency policy, border officers enter Plaintiffs' responses into a government database where the information is stored and will be retained for up to 75 years.

Border officers intentionally target Plaintiffs for religious questioning because Plaintiffs are Muslim. The express and intentional nature of the discrimination is plain on the face of the questions themselves, which explicitly reference Islamic beliefs and practices. Travelers perceived as practicing faiths other than Islam are not routinely subjected to similarly intrusive questioning about their religious beliefs, practices, and associations.

The Complaint describes ten instances of religious questioning of the three Plaintiffs. Specifically, border officers subjected Plaintiff Kariye to religious questioning on five occasions between September 2017 and January 2022. Border

officers subjected Plaintiff Mouslli to religious questioning on four occasions between August 2018 and June 2021. In May 2019, Plaintiff Shah was subjected to religious questioning, prolonged detention, and invasive searches by border officers who retaliated against Mr. Shah for his practice of writing in a religious journal and his statements that he did not wish to be searched. These incidents took place in the context of "secondary inspection," a procedure by which CBP detains, questions, and searches certain travelers before they are permitted to enter the country.

Defendants' religious questioning and their long-term retention of Plaintiffs' responses cause Plaintiffs significant distress. The questioning conveys the stigmatizing message that the U.S. government views adherence to Islamic religious beliefs and practices as inherently suspicious, and that Muslim Americans are not entitled to the full constitutional protections afforded to other Americans. When traveling back into the United States from abroad, Plaintiffs have taken and will continue to take several measures to avoid calling attention to their religion and to avoid incurring additional scrutiny and religious questioning by CBP—such as forgoing religious dress, prayer practices, and the carrying of religious texts.

The religious questioning in this case occurs pursuant to a broader policy and/or practice by DHS and its component agencies of targeting Muslim American travelers for questioning about their religious beliefs, practices, and associations, and retaining the answers in a government database for up to 75 years. DHS's and CBP's written policies explicitly allow them to collect and maintain information about an individual's religious beliefs, practices, and associations in numerous circumstances. Defendants' practice of religious questioning of Muslim travelers has been ongoing since at least 2010, when DHS received numerous complaints from Muslim Americans regarding religious questioning by CBP officers at the border. Since that time, more than 20 Muslim Americans (in addition to Plaintiffs) have challenged religious questioning in court. *See* Pls.' Opp. to Defs.' MTD at 8 (ECF No. 44) (collecting cases). In addition, Defendants' policies require border officers to create

- 2 -
JOINT RULE 26(f) REPORT

a record of every secondary inspection at an airport or land crossing. As part of this record, border officers routinely document travelers' responses to questions, including Muslim Americans' coerced responses to questions about their religious beliefs, practices, and associations. *See* Compl. ¶ 134 (ECF No. 1) (report describing information about Plaintiff Shah's religious beliefs and practices). Defendants have a policy and/or practice of retaining these records for up to 75 years.

### 2. Defendants' Statement

The Defendant agencies—DHS, its component agencies CBP and ICE, and ICE's operational directorate HSI—bear the weighty responsibility of securing our nation's borders while "upholding the principles of professionalism, impartiality, courtesy, and respect for civil rights and civil liberties." Memo. from Kevin K. McAleenan to All DHS Employees at 1, https://perma.cc/6ZN4-TAKB. To that end, DHS policy states in no uncertain terms that the agency "does not profile, target, or discriminate against any individual for exercising his or her First Amendment rights"—including the right to freely exercise one's religion. *Id.* The same policy prohibits questioning and other information-gathering regarding First-Amendment-protected activities, except in specific, limited circumstances, including in furtherance of an authorized law enforcement activity. Consistent with the agency's statutory mandate, such activity encompasses examining individuals to determine their admissibility into the country; inquiring about their purpose for international travel or items they seek to bring into the country; investigating potential violations of law; and protecting against threats to border security or national security. These directives govern all of DHS, including DHS component agencies. CBP has additional policies that prohibit its employees from improperly taking religion into account in the performance of their official duties, or acting in a manner that demonstrates prejudice on account of religion. In addition, CBP policy requires its employees to treat all individuals in a non-discriminatory manner and to respect individuals' rights to free exercise of religion.

1   Nonetheless, Plaintiffs assert that these agencies have a secret, unwritten
2   policy or practice—which directly contradicts the public ones—of targeting Muslim
3   travelers at the U.S. border, because of their faith, for questioning about their
4   religious practices, beliefs, and associations.  They lob these accusations based on
5   three individual Muslim U.S. citizens' alleged isolated experiences, occurring during
6   a handful of U.S. border crossings over the course of six years.  Two of these
7   Plaintiffs believe they are stopped and questioned at the border because they are on
8   U.S. government watchlists; the other alleges a single instance of questioning under
9   unique circumstances, which took place over three years ago.

10   As Defendants argue in their pending motion to dismiss, *see generally* ECF
11   No. 40, 47, Plaintiffs fail to plausibly allege a policy or practice of targeting all
12   Muslims for questioning at the border because of religion based on these few alleged
13   incidents.  They are required to do so to warrant the programmatic, forward-looking
14   relief they seek against entire government agencies.  Instead, at most, Plaintiffs point
15   to discrete and circumstance-dependent instances of religious questioning, which do
16   not plausibly demonstrate any widespread practice of violating either the law, or the
17   DHS and CBP policies that prohibit religious profiling, targeting, and
18   discrimination.  Viewed in context, the allegations instead suggest questioning
19   related to Defendants' law enforcement and border security missions.  Many of the
20   alleged questions concern, among other things, travel history, the contents of a
21   Plaintiff's baggage, and individuals that Plaintiffs associated with while abroad.
22   These types of inquiries are clearly proper at the border, even when they touch upon
23   religion.  But even if one or more of these isolated instances of alleged questioning
24   was inconsistent with DHS and CBP policy, it would suggest, at most, potential
25   individual *violations* of policy, not the existence of a constitutionally infirm policy.
26   It is also Defendants' position that, for the reasons set forth in Defendants'
27   motion to dismiss, Plaintiffs fail to state any plausible claim for relief under the
28   Constitution or the Religious Freedom Restoration Act, and that this action should

1  be dismissed in its entirety on that basis. *See generally* ECF No. 40, 47.

### b. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331. The federal questions arise under Amendments I and V to the U.S. Constitution and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA").

### c. Legal Issues

Plaintiffs' complaint raises six causes of action: violation of the Establishment Clause of the First Amendment (Claim 1); violation of the Free Exercise Clause of the First Amendment (Claim 2); violation of the First Amendment right to free association (Claim 3); retaliation in violation of the First Amendment as to Plaintiff Shah (Claim 4); violation of the equal protection component of the Due Process Clause of the Fifth Amendment (Claim 5); and violation of RFRA (Claim 6). Defendants have moved to dismiss the complaint in its entirety, arguing that Plaintiffs fail to state a claim upon which relief may be granted as to each of these causes of action. *See* ECF No. 40. Plaintiffs have opposed this motion, arguing that the complaint states a claim as to each of their causes of action. *See* ECF No. 44. The Parties also disagree as to whether Plaintiffs are required to adequately allege a policy or practice of improper religious questioning for their complaint to survive dismissal and, if so, whether they have done so. Defendants' motion remains pending, and the legal issues it raises are set forth in detail in the Parties' briefs in support of the motion, *see* ECF No. 40, in opposition to it, *see* ECF No. 44, and in reply, *see* ECF No. 47. The Parties do not presently anticipate that this matter will involve any unusual substantive, procedural, or evidentiary issues.

### d. Damages

Although Plaintiffs have not asserted claims for damages in this action, Plaintiffs reserve the right to seek attorneys' fees and costs to the extent permissible

under applicable law, in amounts to be determined in the event of such application. Defendants anticipate opposing any such motion.

### e. Parties and Evidence

<u>Plaintiffs:</u>

1. Imam Abdirahman Aden Kariye
2. Mohamad Mouslli
3. Hameem Shah

<u>Defendants:</u>

1. Alejandro Mayorkas, Secretary of DHS
2. Chris Magnus, Commissioner of CBP
3. Tae Johnson, Acting Director of ICE
4. Steve K. Francis, Acting Executive Associate Director of HSI

<u>Percipient Witnesses:</u>

1. S.M. (minor child of Plaintiff Mouslli; witness to questioning of him)
2. Monther Mouslli (witness to questioning of Plaintiff Mouslli)
3. Mustafa Ahmed (witness to questioning of Plaintiff Kariye)
4. Border officers involved in or present during the instances of alleged religious questioning of Plaintiffs, as set forth in the complaint
5. Representative from DHS office that has received complaints regarding religious questioning
6. Port directors and supervisory CBP officers who oversee port of entry operations with knowledge of the policies, practices, and procedures regarding the inspections of international travelers at each of the ports of entry discussed in the Complaint
7. CBP Executive Director of the Operations Directorate of the Office of Field Operations, who has knowledge and oversight of national level policies and procedures related to inspection of international travelers at U.S. ports of entry

<u>Key Documents:</u>

The Parties anticipate that the following documents or categories of documents may be used to support the claims or defenses in this matter. By listing the following documents or categories of documents, Plaintiffs and Defendants expressly reserve, and do not waive, the right to object to discovery requests on any grounds, including relevance, proportionality, necessity, and/or that the burden of obtaining any requested discovery would not outweigh its likely benefit.

1. Policy memoranda, directives, and guidelines that guide employees of the Defendant agencies in the performance of their official duties, including the inspection of travelers at U.S. ports of entry. Such documents include, but are not limited to:

    a. Memorandum from Kevin K. McAleenan to all DHS Employees Regarding First Amendment Protected Activities (May 17, 2019), *available at* https://perma.cc/6ZN4-TAKB;

    b. CBP Directive No. 51735-013B, U.S. Customs and Border Protection Standards of Conduct (Dec. 19, 2020), *available at* https://perma.cc/83ZD-LE5P;

    c. CBP Directive No. 51735-013A, U.S. Customs and Border Protection Standards of Conduct (Mar. 13, 2012), *available at* https://perma.cc/2U8V-7VFS;

    d. CBP Directive No. 2130-021, Roles and Responsibilities of U.S. Customs and Border Protection Component Offices and Employees Regarding Civil Rights and Civil Liberties Matters (Jun. 3, 2011), *available at* https://perma.cc/2H97-28SH; and

    e. Memorandum from John P. Sanders to All CBP Employees Regarding Anti-Discrimination and Anti-Harassment Policy Statement (Jun. 5, 2019), *available at* https://perma.cc/P9PR-

       CCXP.

2. Documents and materials that demonstrate trainings or other educational information provided by the Defendant agencies to their employees regarding, among other things, civil rights and civil liberties, the First Amendment, the Constitution, religious liberty, freedom of religious exercise, religious accommodations, cultural awareness and sensitivity, anti-discrimination and anti-harassment policies, and/or privacy rights.

3. Defendants' "TECS" records of border officers' encounters with Plaintiffs, and any other records in Defendants' possession concerning Plaintiffs.

4. Complaints to DHS and component agencies regarding border officers' religious questioning of Muslim American travelers.

5. Other records in Defendants' possession concerning religious questioning by border officers.

The Parties do not anticipate the appearance of any additional parties.

**f. Insurance**

Insurance is not applicable to this case.

**g. Manual for Complex Litigation**

The Parties do not anticipate utilizing procedures from the Manual for Complex Litigation.

**h. Motions**

At this time, the Parties do not anticipate any motions seeking to add other parties or claims, file amended pleadings, or transfer venue. Defendants reserve the right to file a motion to dismiss on the basis of lack of subject matter jurisdiction.

**i. Dispositive Motions**

Defendants' motion to dismiss is pending. *See* ECF No. 40. If the Court denies that motion in whole or in part, the Parties believe it is likely that the legal questions

in the case—*i.e.*, whether Defendants' alleged conduct violates the First and Fifth Amendments and RFRA—can be decided by the Court at the summary judgment stage.

### j. Status of Discovery

The Parties have discussed a discovery plan but have not initiated discovery. There are no current discovery disputes.

### k. Discovery Plan

1. The Parties agree to exchange initial disclosures, including all information Defendants believe is not confidential and/or will not be subject to a protective order, on or before August 25, 2022, in accordance with Federal Rule of Civil Procedure 26(a)(1)(C). Defendants anticipate promptly supplementing their initial disclosures pursuant to Federal Rule of Civil Procedure 26(e) with any confidential information subject to disclosure under Federal Rule of Civil Procedure 26(a) that requires a protective order prior to such disclosure, as soon as a protective order is entered. The Parties will either jointly file a proposed protective order or separately file respective motions for a protective order with Magistrate Judge Standish by September 8, 2022.

2. Potential subjects of discovery:

   By listing the following subjects, Plaintiffs and Defendants expressly reserve, and do not waive, the right to object to discovery requests on any grounds, including relevance, proportionality, necessity, and/or that the burden of obtaining any requested discovery would not outweigh its likely benefit.

   - Defendants' records concerning Plaintiffs;
   - Defendants' policies, guidance, and practices—formal and informal—concerning religious questioning in general; the questioning of Muslims, or those perceived to be Muslim, in

particular; and of travelers who practice (or are perceived to practice) faiths other than Islam;

- Defendants' policies, guidance, and practices—formal and informal—concerning retention of records of travelers' responses to questioning by border officers;
- The intent of border officers involved in the ten incidents alleged in the Complaint;
- Complaints, disciplinary actions, performance reviews, and commendations pertaining to border officers involved in the ten incidents alleged in the Complaint;
- Complaints to DHS regarding religious questioning at the border by Muslims or travelers perceived to be Muslim, and agency responses to those complaints;
- Any governmental interest asserted by Defendants to justify the challenged conduct;
- Alternative policies and/or practices that Defendants could employ (other than religious questioning) to address or further any interest asserted by Defendants as a justification for the challenged conduct, and whether Defendants have actually evaluated such policies and/or practices;
- Plaintiffs' recollections of the alleged examinations;
- Plaintiffs' past, current, and future international travel histories, including activities Plaintiffs engaged in while abroad; and
- The bases underlying all other facts alleged in the complaint.

3. The Parties do not anticipate that discovery should be conducted in phases or otherwise be limited.

4. <u>Plaintiffs' position</u>: Plaintiffs seek to conduct 17 depositions, rather than the 10 depositions permitted by default under the Federal Rules of Civil

Procedure. Specifically, Plaintiffs seek to depose at least one border officer involved in each of the ten incidents of religious questioning, given the potential relevance of the officers' intent to Plaintiffs' discrimination claims and the officers' insight into the policy and/or practice of religious questioning. For Plaintiff Kariye, Plaintiffs seek to depose two officers involved in a particularly extensive incident of religious questioning, where Imam Kariye was detained for several hours. For Plaintiff Shah, Plaintiffs seek to depose all three officers involved in the alleged religious questioning and alleged retaliatory questioning and searches. Plaintiffs also seek to conduct Rule 30(b)(6) depositions of DHS, CBP, and ICE, and to depose at least one of the supervisory officers listed as a percipient witness above.

<u>Defendants' position</u>:   Defendants oppose the expansion of discovery beyond the limits imposed by the Federal Rules of Civil Procedure.  This case turns on questions of agency-wide policies or practices whose existence does not require extensive discovery or depositions of each individual officer involved in the alleged examinations described in the complaint.  The Defendants' relevant policies are public and judicially noticeable; the most pertinent ones have already been made available online to the Plaintiffs and the Court.  Any additional investigation can easily be completed within the scope of the 10 depositions permitted under the Federal Rules.

In any event, Plaintiffs' assertion that more than 10 depositions are necessary is speculative and premature at this stage of the litigation.  First, Defendants' motion to dismiss remains pending, *see* ECF No. 40, and it is therefore unclear which, if any, of the counts in the complaint will remain at issue following its resolution.  If, for example, the Court were to dismiss Plaintiff Shah's retaliation claim, there would be no need for Plaintiffs to

depose each of the officers or agents involved in his alleged examination. Second, Plaintiffs do not yet know whether additional discovery will be necessary, or unreasonably cumulative or duplicative without having attempted to proceed with discovery in accordance with the limits set forth in the Federal Rules of Civil Procedure. If at a later date Plaintiffs can articulate a reasonable and non-speculative basis upon which to request an expansion of discovery, they may request, and Defendants may consider whether to stipulate to, such an expansion at that time.

**l. Discovery Cut-off**

The Parties propose March 9, 2023, as a cut-off for non-expert discovery.

**m. Expert Discovery**

The Parties propose the following deadlines for expert discovery:

- Initial expert disclosures: March 16, 2023
- Rebuttal expert disclosures: March 30, 2023
- Expert discovery cut-off: April 13, 2023

**n. Settlement Conference and Alternative Dispute Resolution**

No settlement negotiations have occurred. Defendants believe ADR would be premature at this time, but if and when an ADR proceeding becomes appropriate, the Parties request an ADR proceeding before a Magistrate Judge.

**o. Trial Estimate**

The Parties anticipate a four-day bench trial. Plaintiffs anticipate calling 10 witnesses. Defendants anticipate calling 3 witnesses.

**p. Trial Counsel**

For Plaintiffs: Ashley Gorski

For Defendants: Leslie Cooper Vigen

**q. Magistrate Judge**

The Parties do not consent to try the case before a Magistrate Judge.

**r. Independent Expert or Master**

The Parties do not anticipate any need for an independent expert or master.

**s. Schedule Worksheet**

Please see Exhibit 1, attached.

**t. Class Actions**

This case is not a putative class action.

**u. Other Issues**

The Parties do not anticipate any additional issues affecting the status or management of the case.

Dated: August 18, 2022

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

By: */s/ Ashley Gorski*
    Ashley Gorski
    Attorney for Plaintiffs

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch, Civil Division

By: */s/ Leslie Cooper Vigen*
    Leslie Cooper Vigen
    Attorney for Defendants

# EXHIBIT 1

**JUDGE FRED W. SLAUGHTER**
**SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET**

Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.
**The parties must make every effort to agree on dates or the court will set them.**

| Case No. 2:22-cv-01916-FWS-GJS | | Case Name: Kariye et al. v. Mayorkas et al. | | |
|---|---|---|---|---|
| **Trial and Final Pretrial Conference Dates** | | **Pl(s)' Date mm/dd/yyyy** | **Def(s)' Date mm/dd/yyyy** | **Court Order mm/dd/yyyy** |
| Check one: [ ] Jury Trial or [X] Bench Trial **[Tuesday at 8:30 a.m., within 18 months after Complaint filed]** Estimated Duration: 4 Days | | 9/19/2023 | 09/19/2023 | [ ] Jury Trial [ ] Bench Trial _____ Days |
| Final Pretrial Conference ("FPTC") [L.R. 16], Hearing on Motions *in Limine* **[Thursday at 8:30 a.m., at least 12 days before trial]** | | 9/7/2023 | 09/07/2023 | |

| **Event[1]** *Note:* Hearings shall be on Thursdays at 10:00 a.m. Other dates can be any day of the week**.** | **Weeks Before FPTC** | **Pl(s)' Date mm/dd/yyyy** | **Def(s)' Date mm/dd/yyyy** | **Court Order mm/dd/yyyy** |
|---|---|---|---|---|
| Last Date to **Hear** Motion to Amend Pleadings /Add Parties [Thursday] | | Date will be contingent on the date of the Court's ruling on Defendants' MTD | | |
| Non-Expert Discovery Cut-Off **(no later than deadline for filing dispositive motions)** | 26 | 3/9/2023 | 03/09/2023 | |
| Expert Disclosure (Initial) | 24 | 3/16/2023 | 03/16/2023 | |
| Expert Disclosure (Rebuttal) | 22 | 3/30/2023 | 03/30/2023 | |
| Expert Discovery Cut-Off | 20[2] | 4/13/2023 | 04/13/2023 | |
| Last Date to **Hear** Motions [Thursday]<br>• Motion for Summary Judgment due at least 6 weeks before hearing<br>• All other motions due at least 4 weeks before hearing<br>• Opposition due 2 weeks after Motion is filed<br>• Reply due 1 week after Opposition is filed | 12 | 6/15/2023 | 06/15/2023 | |
| Deadline to Complete Settlement Conference [L.R. 16-15]<br>*Select* one: [X] 1. Magistrate Judge (with Court approval)<br>[ ] 2. Court's Mediation Panel<br>[ ] 3. Private Mediation | 10 | 6/29/2023 | 06/29/2023 | [ ] 1. Mag. J. [ ] 2. Panel [ ] 3. Private |
| **Trial Filings (first round)**<br>• Motions *in Limine* with Proposed Orders<br>• Memoranda of Contentions of Fact and Law [L.R. 16-4]<br>• Witness Lists [L.R. 16-5]<br>• Joint Exhibit List [L.R. 16-6.1]<br>• Joint Status Report Regarding Settlement<br>• Proposed Findings of Fact and Conclusions of Law [L.R. 52] (bench trial only)<br>• Declarations containing Direct Testimony, if ordered (bench trial only) | 3 | 8/17/2023 | 08/17/2023 | |
| **Trial Filings (second round)**<br>• Oppositions to Motions *in Limine*<br>• Joint Proposed Final Pretrial Conference Order [L.R. 16-7]<br>• Joint/Agreed Proposed Jury Instructions (jury trial only)<br>• Disputed Proposed Jury Instructions (jury trial only)<br>• Joint Proposed Verdict Forms (jury trial only)<br>• Joint Proposed Statement of the Case (jury trial only)<br>• Proposed Additional Voir Dire Questions, if any (jury trial only)<br>• Evidentiary Objections to Declarations of Direct Testimony (bench trial only) | 2 | 8/24/2023 | 08/24/2023 | |

---

[1] The parties may seek dates for additional events by filing a separate Stipulation and Proposed Order. Class actions, patent, and ERISA cases may need to vary from the above.

[2] The parties may wish to consider cutting off expert discovery prior to the deadline for filing a motion for summary judgment.