BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Civil Division, Federal Programs Branch

LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
LAUREL H. LUM (N.Y. Bar. No. 5729728)
SAMUEL A. REBO (D.C. Bar No. 1780665)
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0727
Email:  leslie.vigen@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDIRAHMAN ADEN KARIYE, *et al.*,<br><br>          *Plaintiffs*,<br><br>     v.<br><br>ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security, in his official capacity, *et al*.,<br><br>          *Defendants*. | CASE NO. 2:22-CV-1916-FWS-GJS<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:  March 23, 2023<br>Time: 10:00 a.m.<br>Place: Santa Ana, Courtroom 10D<br><br>Honorable Fred W. Slaughter<br>**United States District Judge** |

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................1

A.  Plaintiffs Do Not Plausibly Allege an Establishment Clause Violation. ......1

B.  Plaintiffs Do Not Plausibly Allege a Violation of Their Free Exercise
     Rights under the First Amendment or RFRA...................................3

    1.  Plaintiffs have not alleged a substantial burden on religious
         practice. .............................................................................4

    2.  Even had Plaintiffs alleged a substantial burden, any questioning
          was narrowly tailored to advance compelling governmental
         interests................................................................................7

C.  Plaintiffs Do Not Plausibly Allege a Violation of the First Amendment
     Right to Freedom of Association...................................................9

D.  Plaintiff Shah Does Not Plausibly Allege Retaliation in Violation of
     His First Amendment Rights. .....................................................10

E.  Plaintiffs Do Not Plausibly Allege an Equal Protection Violation. ............12

CONCLUSION.....................................................................................14

i

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adair v. England*,
   183 F. Supp. 2d 31 (D.D.C. 2002)........................................................................ 3

*Am. Fam. Ass'n, Inc. v. City & Cnty. of S.F.*,
   277 F.3d 1114 (9th Cir. 2002) ........................................................................ 6

*Ams. for Prosperity Found. v. Bonta*,
   141 S. Ct. 2373 (2021)........................................................................ 9, 10

*Apache Stronghold v. United States*,
   38 F.4th 742 (9th Cir. 2022) ........................................................................ 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 12

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ........................................................................ 2

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 12

*Cal. Parents for the Equalization of Educ. Materials v. Torlakson*,
   973 F.3d 1010 (9th Cir. 2020) ........................................................................ 6, 7, 13

*Carson v. Makin*,
   142 S. Ct. 1987 (2022)........................................................................ 6

*CFTC v. Monex Credit Co.*,
   931 F.3d 966 (9th Cir. 2019) ........................................................................ 8

*Cherri v. Mueller*,
   951 F. Supp. 2d 918 (E.D. Mich. 2013) ........................................................................ 2, 5, 13

*Doe v. Reed*,
   561 U.S. 186 (2010) ........................................................................ 10

*El Ali v. Barr*,
   473 F. Supp. 3d 479 (D. Md. 2020)........................................................................ 13

*Espinoza v. Mont. Dep't of Revenue*,
   140 S. Ct. 2246 (2020)........................................................................ 6

*Fulton v. City of Phila.*,
   141 S. Ct. 1868 (2021) ............................................................... 6

*Hernandez v. Comm'r*,
   490 U.S. 680 (1989) ................................................................... 2

*Janfeshan v. CBP*,
   2017 WL 3972461 (E.D.N.Y. Aug. 21, 2017) ....................... 13

*Joyce v. City & Cnty. of S.F.*,
   846 F. Supp. 843 (N.D. Cal. 1994) ........................................ 13

*Kariye v. Mayorkas*,
   2022 U.S. Dist. LEXIS 186915 (C.D. Cal. Oct. 12, 2022) ...........*passim*

*Kennedy v. Bremerton School District*,
   142 S. Ct. 2407 (2022) ...................................................... 1, 5, 6

*Larson v. Valente*,
   456 U.S. 228 (1982) ................................................................... 2

*Lee v. Weisman*,
   505 U.S. 577 (1992) ................................................................ 2, 3

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
   138 S. Ct. 1719 (2018) ............................................................... 7

*Mitchell v. Washington*,
   818 F.3d 436 (9th Cir. 2016) ................................................... 12

*Navajo Nation v. U.S. Forest Serv.*,
   535 F.3d 1058 (9th Cir. 2008) ................................................... 4

*O'Brien v. Welty*,
   818 F.3d 920 (9th Cir. 2016) ................................................... 11

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
   141 S. Ct. 63 (2020) ................................................................... 6

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
   44 F.4th 867 (9th Cir. 2022) ................................................. 1, 6

*Sklar v. Comm'r*,
   282 F.3d 610 (9th Cir. 2002) ..................................................... 2

iii

*Tabbaa v. Chertoff,*
   509 F.3d 89 (2d Cir. 2007) ................................................................... 8

*Tandon v. Newsom,*
   141 S. Ct. 1294 (2021).......................................................................... 6

*Thorton v. City of St. Helens,*
   425 F.3d 1158 (9th Cir. 2005) ............................................................ 13

*Tingley v. Ferguson,*
   47 F.4th 1055 (9th Cir. 2022) ............................................................... 7

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
   137 S. Ct. 2012 (2017)......................................................................... 6

*United States v. Bravo,*
   295 F.3d 1002 (9th Cir. 2002) .............................................................. 5

*United States v. Cotterman,*
   709 F.3d 952 (9th Cir. 2013) .............................................................. 12

*United States v. Mayer,*
   503 F.3d 740 (9th Cir. 2007) .............................................................. 10

*United States v. Ramsey,*
   431 U.S. 606 (1977) .......................................................................... 1, 4

*Walker v. Gomez,*
   370 F.3d 969 (9th Cir. 2004) .............................................................. 12

*Ward v. Thompson,*
   2022 WL 14955000 (9th Cir. Oct. 22, 2022) ................................... 9, 10

*Warrior v. Gonzalez,*
   2013 WL 6174788 (E.D. Cal. Nov. 20, 2013) ...................................... 3

**STATUTES**

8 U.S.C. § 1101 .................................................................................... 1

19 U.S.C. § 1582 .................................................................................. 4

iv

## INTRODUCTION

Plaintiffs' opposition confirms that the amended complaint reflects no material changes from the initial complaint and corrects none of the deficiencies the Court identified in granting the initial motion to dismiss. Instead, Plaintiffs repeatedly urge the Court to reconsider its previous conclusions based on already-rejected arguments, citing to no differences in their factual allegations or new case law that would warrant such a reversal. The Court should decline to reengage with Plaintiffs' failed arguments, reject their attempt to take a second bite at the apple, and dismiss the amended complaint with prejudice.

## ARGUMENT

**A.    Plaintiffs Do Not Plausibly Allege an Establishment Clause Violation.**

Plaintiffs' Establishment Clause claim should again be dismissed because they fail to allege any new, well-pleaded facts that might alter the Court's previous decision. Nor do their repetitive arguments warrant any change in its legal analysis.

The Court properly analyzed Plaintiffs' Establishment Clause claim under *Kennedy v. Bremerton School District*, 142 S. Ct. 2407 (2022). *See Kariye v. Mayorkas*, 2022 U.S. Dist. LEXIS 186915, at *56 (C.D. Cal. Oct. 12, 2022); *see also Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,* 44 F.4th 867, 888 (9th Cir. 2022). Plaintiffs cannot prevail under *Kennedy* because history confirms the "long-standing right of the sovereign to protect itself by stopping and examining persons . . . crossing into this country." *See United States v. Ramsey*, 431 U.S. 606, 616 (1977); *see also* Defs.' Br. 16, ECF No. 68-1. Indeed, as *Ramsey* recognized, "[t]he Congress which proposed the Bill of Rights . . . enacted the first customs statute," and border searches have been considered reasonable since. 431 U.S. at 616–19. Congress has also enacted statutes that necessitate religious inquiries at the border in certain contexts. *See, e.g.*, 8 U.S.C. § 1101(a)(27)(C), (42). Due to the unique status of the border, Plaintiffs' attempted comparisons to the Census are inapposite. *See* Pls.' Br. 16–17,

ECF No. 70.  Nor do Plaintiffs meet their burden to allege any well-pleaded facts—as opposed to generalized statements about the Establishment Clause's purpose—as to historical practices at the border.

Perhaps recognizing the weakness of their arguments under *Kennedy*, Plaintiffs urge the Court to utilize the Establishment Clause test from *Larson v. Valente*, 456 U.S. 228 (1982), or the coercion test from *Lee v. Weisman*, 505 U.S. 577 (1992), but neither applies.  First, *Larson* articulates a seldom-used test that provides for application of strict scrutiny to laws that "facially discriminate[] amongst religions." *Sklar v. Comm'r*, 282 F.3d 610, 618–19 (9th Cir. 2002); *accord Awad v. Ziriax*, 670 F.3d 1111, 1127 (10th Cir. 2012) (acknowledging "*Larson*'s rare use").  Plaintiffs cite dicta to quibble with whether *Larson* could be properly applied to a "practice," *see* Pls.' Br. 9–10, but in doing so, lose the forest for the trees.  The key point is that *Larson* applies only to government action that discriminates amongst religions clearly and on its face.  *See Sklar*, 282 F.3d at 618–19; *see also Hernandez v. Comm'r*, 490 U.S. 680, 695 (1989) ("*Larson* teaches that . . . the initial inquiry is whether the law facially differentiates among religions.").

Plaintiffs assert that the Court's previous determination that they "sufficiently alleged that there may be a pattern of 'officially sanctioned behavior' . . . of targeting Muslim Americans for religious questioning," *Kariye*, 2022 U.S. Dist. LEXIS 186915, at *52, requires the application of *Larson*.[1]  Defendants have respectfully requested that the Court reconsider this conclusion in light of the judicially noticeable policy prohibiting Department of Homeland Security (DHS) personnel from "profil[ing], target[ing], or discriminat[ing] against any individual for

---

[1] Notably, the only other court to have considered an Establishment Clause claim based on alleged religion questioning at the border dismissed that claim notwithstanding holding that the plaintiffs had adequately alleged a policy or practice.  *See Cherri v. Mueller*, 951 F. Supp. 2d 918, 935–36 (E.D. Mich. 2013).

exercising his or her First Amendment rights"—including the right to free exercise of religion.  *See* ECF No. 69-1 at 1; *see also* Defs.' Br. 13 n.4.  But regardless, allegations of an informal policy cobbled together from "ten incidents of religious questioning," along with correspondence and a memorandum from more than 10 years ago, *Kariye*, 2022 U.S. Dist. LEXIS 186915, at *52, do not constitute the type of explicit discrimination to which the Ninth Circuit has applied *Larson*.[2]  Moreover, the Ninth Circuit has not applied the *Larson* test in over 20 years—and certainly not post-*Kennedy*.  In any event, Defendants' actions survive strict scrutiny.  *See infra.*

Finally, the coercion test from *Lee* does not apply because Plaintiffs fail to allege any new facts relevant to coercion, and as the Court previously concluded, the allegations do not demonstrate that they experienced any coercion whatsoever to "support or participate in religion or its exercise."  *Kariye*, 2022 U.S. Dist. LEXIS 186915, *55–56 (citing *Lee*, 505 U.S. at 587).  Thus, the Court should again dismiss Plaintiffs' Establishment Clause claim.

**B.  Plaintiffs Do Not Plausibly Allege a Violation of Their Free Exercise Rights under the First Amendment or RFRA.**

Plaintiffs point to no new allegations that might alter the Court's conclusion rejecting their First Amendment and Religious Freedom Restoration Act (RFRA) claims.  Instead, they again take issue with the Court's well-reasoned opinion, recycle already-rejected arguments, and ask the Court to reconsider holdings grounded in well-settled case law.  The Court should not second-guess its ruling.

---

[2]  Plaintiffs' newly cited district court cases involve neither alleged informal practices nor written policies explicitly banning those alleged practices.  *See, e.g.*, *Warrior v. Gonzalez*, 2013 WL 6174788, at *5 (E.D. Cal. Nov. 20, 2013) (policy of subjecting Muslim inmates to "a visual body cavity strip search twice each evening for the thirty nights of Ramadan"); *Adair v. England*, 183 F. Supp. 2d 31, 45 (D.D.C. 2002) (policy of setting quotas for religious denominations of chaplains).

**1. Plaintiffs have not alleged a substantial burden on religious practice.**

In the RFRA context, demonstrating a substantial burden on the exercise of religion requires a showing that "individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit," or are "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069–70 (9th Cir. 2008) (en banc).[3]  Plaintiffs again assert that CBP's occasional alleged questioning about their religious beliefs, practices, and associations "forces" them to "choose between being Muslim" and "receiving CBP's permission to reenter the country."  Pls.' Br. 22.  Hyperbolic language aside, the allegations do not come close to alleging that CBP somehow conditions Plaintiffs' entry into the country or any other "benefit" upon denouncing their faith.  Plaintiffs assert that the "benefit" they do not receive is reentering the country without encountering certain types of questioning.  *See id.*  This alleged "benefit," however, does not exist.  Any individual seeking entry to the United States from abroad—citizen or not—is subject to questioning, and even "detention" or "search," before being permitted to cross the border.  *See, e.g.*, 19 U.S.C. § 1582; *see also, e.g.*, *Ramsey*, 431 U.S. at 619 ("Border searches . . . have been considered to be 'reasonable' by the single fact that the person or item in question had entered our country from the outside.");

---

[3] The Court correctly distinguished cases analyzing the meaning of "substantial burden" in the Religious Land Use and Institutionalized Persons Act (RLUIPA) context from those involving RFRA or Free Exercise claims.  *See Kariye*, 2022 U.S. Dist. LEXIS 186915, at *72–73.  The Ninth Circuit's vacatur of *Apache Stronghold v. United States*, 38 F.4th 742 (9th Cir. 2022), does not alter this analysis.  *Contra* Pls.' Br. 22 n.7.  *Navajo Nation* made clear that the definition of "substantial burden" "must be answered by reference to the Supreme Court's pre-*Smith* jurisprudence, including *Sherbert* and *Yoder,* that RFRA expressly adopted."  535 F.3d at 1078.  To the extent later RLUIPA cases adopt a different standard, *Navajo Nation* continues to govern RFRA and Free Exercise Clause cases.

*United States v. Bravo*, 295 F.3d 1002, 1008 (9th Cir. 2002) ("Detention and questioning during routine searches at the border are considered reasonable . . . ."). Plaintiffs cannot plausibly allege being denied a benefit that nobody is afforded.

Second, Plaintiffs again assert that they are "coerced" into altering their religious practices during return travel to the United States because they have allegedly been, on occasion, asked questions about their religion at the border. *See* Pls.' Br. 23. Their allegations have not changed in this regard, *see* Defs.' Br 19–21, and it remains the case that Plaintiffs have alleged "*preventive* measures they adopted to avoid questioning in the future"—"not coerced actions compelled by government officials." *Kariye*, 2022 U.S. Dist. LEXIS 186915, at *67. Even assuming Plaintiffs are coerced to answer religious questions, they do not assert that responding to such questions is contrary to their religious beliefs. *Id.* at *72. Thus, Plaintiffs' Free Exercise and RFRA claims should again be dismissed, on basis of failure to allege a substantial burden on religious exercise alone.

Plaintiffs cannot overcome their failure to plead a substantial burden on their religious practice by claiming that Defendants acted pursuant to a policy that is not "neutral" or "generally applicable."[4] *See* Pls.' Br. 25–28. The Court previously

---

[4] Plaintiffs appear to assert that their allegation of "an official practice, policy or custom of targeting Muslim Americans for religious questioning," in and of itself, adequately alleges a Free Exercise Clause violation by showing a policy that is not neutral or generally applicable. Pls.' Br. 27. Defendants have requested that the Court revisit its determination that these allegations were adequate in light of Defendants' judicially noticeable policy forbidding targeting for the exercise of First Amendment rights. *See* Defs.' Br. 13 n.4. But Plaintiffs' argument fails in any event. They have not alleged that "a government entity *has burdened* [their] *sincere religious practice* pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy*, 142 S. Ct. at 2422 (emphases added). As the Court held, and as demonstrated above, the alleged questioning did not burden Plaintiffs' free exercise of religion. *Accord Cherri*, 951 F. Supp. 2d at 934–35 (dismissing free exercise claims despite plausible allegations of policy or practice where alleged religious

rejected this argument, holding that "[i]n the absence of binding authority holding that a substantial burden is not required," it was bound to follow existing precedent. *Kariye*, 2022 U.S. Dist. LEXIS 186915, at *61 n.2.  In the Ninth Circuit, plaintiffs are required to demonstrate a substantial burden when challenging "non-regulatory or non-compulsory governmental action" under the Free Exercise clause.  *See Am. Fam. Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1124 (9th Cir. 2002); *see also Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1019 (9th Cir. 2020).  Plaintiffs cite to no case abrogating those decisions.  Instead, they reassert an argument both this Court and the Ninth Circuit have dismissed: that recent Supreme Court cases sub silentio "eliminated the requirement that plaintiffs plead a burden on their religious exercise."  *See Cal. Parents*, 973 F.3d at 1019.  The Ninth Circuit, however, reaffirmed the substantial burden requirement in an opinion issued subsequent to all of Plaintiffs' cited cases. *See Sabra*, 44 F.4th at 890.  Moreover, those cases are distinguishable because they involve regulatory or compulsory governmental action that directly burdened religious exercise.[5]  *Accord Cal. Parents*, 973 F.3d at 1019.  In contrast, Plaintiffs here allege no penalty for practicing their religion, deprivation of a governmental

_____

questioning created "a burden on [the plaintiffs'] ability to cross the border quickly, not their ability to practice Islam").

[5] Three of Plaintiffs' cited cases concerned state programs that specifically excluded religious entities.  *See Carson v. Makin*, 142 S. Ct. 1987, 1997 (2022); *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2261 (2020); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 (2017).  Two others involved regulations that singled out religious institutions for worse treatment than secular institutions.  *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020).  *Fulton v. City of Phila.*, 141 S. Ct. 1868 (2021), involved a city conditioning renewal of a contract on a religious group's agreement to act contrary to its beliefs.  *See id.* at 1875, 1878.  And in *Kennedy*, the plaintiff was disciplined for praying.  *See* 142 S. Ct. at 2422.

benefit, or coercion to act contrary to their beliefs.  *See Kariye*, 2022 U.S. Dist. LEXIS 186915, at \*67, 71; *see also Cal. Parents*, 973 F.3d at 1020.

Nor have Plaintiffs alleged the type of "hostility" towards religion that could cause governmental action to violate the Free Exercise clause.  *See Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1731–32 (2018).  The hostility cited in *Masterpiece Cakeshop* was overt: characterizing "a man's faith as 'one of the most despicable pieces of rhetoric that people can use.'" *See id.* at 1729.  Plaintiffs' allegations—which, at most, describe neutral inquiries into Plaintiffs' religious denomination, prayer habits, or attendance at religious services—are in no way comparable.  *See Tingley v. Ferguson*, 47 F.4th 1055, 1086–87 (9th Cir. 2022); *Cal. Parents*, 973 F.3d at 1019–20.  And even if Plaintiffs subjectively interpret being asked questions about their religion as "disapproval of Islam," *see* Am. Compl. ¶¶ 97, 139, 185, ECF No. 61, the Ninth Circuit recently confirmed that the government's alleged action must be "[v]iewed in context."  *Tingley*, 47 F.4th at 1087.  Viewed as such, the facts alleged here do not plausibly show animus toward Muslims, but rather straightforward, factual questions during sporadic border stops of two individuals allegedly on government watchlists over the course of six years, and a random stop that included follow-up questions about religion.

## 2.  Even had Plaintiffs alleged a substantial burden, any questioning was narrowly tailored to advance compelling governmental interests.

Because Plaintiffs have failed to state a prima facie claim under the Free Exercise Clause or RFRA—or any other count, for that matter—the Court need not address whether the alleged questioning would survive strict scrutiny in order to dismiss Plaintiffs' complaint in its entirety, with prejudice.  But even if Plaintiffs had alleged a substantial burden on their religious exercise, dismissal of these claims would still be appropriate because, as the Court previously held, the government's

alleged questioning is the least restrictive means of advancing compelling governmental interests. *See Kariye*, 2022 U.S. Dist. LEXIS 186915, at *75–79.

Plaintiffs now appear to concede that protecting the border and preventing potential terrorist acts are compelling governmental interests. *See* Pls.' Br. 12–13. They instead focus their arguments on the stage of the litigation; allegations that Plaintiffs have no connection to terrorism; and the fit between the alleged questions asked by CBP and compelling governmental interests.

First, Plaintiffs argue that the strict scrutiny inquiry cannot be resolved at the motion-to-dismiss phase. *Id.* at 10–11. Although it is true that where a plaintiff states a claim that triggers strict scrutiny, the government must show that its actions satisfy that standard—essentially an affirmative defense—"dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense." *CFTC v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019). That is the case here.

Second, whether Plaintiffs have any connection to terrorism is of no moment. *See* Defs.' Br. 24–25. Assuming for the purposes of this motion that Plaintiffs Kariye and Mouslli were on a watchlist when they were questioned, and accepting as true *arguendo* that none of Plaintiffs in fact has any ties to terrorism, the allegations nonetheless demonstrate bases for increased scrutiny of Plaintiffs at the border in furtherance of compelling governmental interests:  Kariye and Mouslli's alleged watchlist status, *see* Am. Compl. ¶¶ 90, 131—a reasonable basis for concern about potential ties to terrorism—and Shah's evasive and suspicious behavior during a routine secondary inspection, *see id.* ¶¶ 148, 152, 155, 159–62, 175.  Under these circumstances, it need not be the case that Plaintiffs had any connection to terrorism, or were engaged in any wrongdoing at all, for alleged law-enforcement inquires to be narrowly tailored to fit compelling governmental interests. *See Tabbaa v. Chertoff*, 509 F.3d 89, 103–04 (2d Cir. 2007).

Finally, it is evident from the face of the amended complaint that the questions Plaintiffs were allegedly asked are the least restrictive means of advancing CBP's compelling interests.  Plaintiffs allege that two individuals allegedly on government watchlists were asked individualized and specific questions on nine occasions over the course of six years.  *See* Am. Compl. ¶¶ 90, 131.  Viewed holistically, the allegations most plausibly show that the alleged inquiries were related to the specific circumstances of each inspection, such as, for example, Plaintiffs' purpose of travel or who they associated with while abroad.  *See, e.g.*, *id.* ¶¶ 58, 77.  The allegations regarding Plaintiff Shah similarly demonstrate questions tailored to the specific facts of his secondary inspection.  *See, e.g.*, *id.* ¶¶ 153–57, 167, 175.

Accordingly, if the Court reaches this alternative argument, it should again hold that Defendants' alleged questioning would pass strict scrutiny.

## C.   Plaintiffs Do Not Plausibly Allege a Violation of the First Amendment Right to Freedom of Association.

Plaintiffs base their associational freedom claim on largely the same allegations as in the original complaint, coupled with renewed legal arguments that fail to advance their cause.  *See* Pls.' Br. 28–31.  They provide no reason why the Court should not again dismiss this claim.

What is more, Plaintiffs appear to assume that the exacting scrutiny standard set forth in *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), applies to any compelled disclosure to the government.  *See* Pls.' Br. 28.  The Ninth Circuit, however, recently held that "the exacting scrutiny test does not apply to *all* compelled disclosures of information."  *See Ward v. Thompson*, 2022 WL 14955000, at *1 (9th Cir. Oct. 22, 2022).  *Ward* concluded that compelling an individual via subpoena, as part of an investigation, to disclose information showing who she communicated with was not subject to exacting scrutiny absent some "indication that compelled disclosure . . . would deter protected associational

activity." *Id.* at *2.  This holding is consistent with earlier Ninth Circuit case law providing that "compelled disclosure of membership lists violates the Constitution only when the investigation would *likely impose hardship on associational rights* not justified by a compelling interest, or when the investigation lacks a substantial connection to a subject of overriding and compelling state interest." *United States v. Mayer*, 503 F.3d 740, 748 (9th Cir. 2007) (emphasis added).  Here, Plaintiffs do not allege so much as a chilling effect on their associational activities as a result of the alleged questioning.  The Court should dismiss this claim on that ground alone.

But even if exacting scrutiny were to apply, the alleged conduct easily passes muster.  *See Kariye*, 2022 U.S. Dist. LEXIS 186915, at *83–84.  Exacting scrutiny requires "a substantial relation between the disclosure requirement and a sufficiently important governmental interest," and "narrow[] tailor[ing] to the government's asserted interest." *Ams. for Prosperity Found.*, 141 S. Ct. at 2383 (quoting *Doe v. Reed*, 561 U.S. 186, 196 (2010)).  This is a "less searching review" than strict scrutiny.  *Id.*  For the reasons explained *supra*, the alleged conduct here would survive strict scrutiny.  *See supra* pp. 7–9.  It necessarily follows that it would satisfy exacting scrutiny.  *See Kariye*, 2022 U.S. Dist. LEXIS 186915, at *83.

## D. Plaintiff Shah Does Not Plausibly Allege Retaliation in Violation of His First Amendment Rights.

As with their other claims, Plaintiffs point to no new factual allegations that might revive their retaliation claim; instead, they criticize the Court's holding and rehash the same arguments the Court already rejected.  *See Kariye*, 2022 U.S. Dist. LEXIS 186915, at *86–96.  To survive a motion to dismiss a First Amendment retaliation claim, a plaintiff must plausibly allege that "(1) [they were] engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."

*Id.* at *86 (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)).  Plaintiffs contest that they failed properly to allege the second and third elements.

First, Plaintiffs again assert that the circumstances of Shah's inspection would have chilled a person of ordinary firmness from continuing to write in his journal or "assert[] his rights to border officers."  *See* Pls.' Br. 31–32.  They argue that the secondary inspection of Shah was "harrowing" to him, *id.* at 32, but fail to recognize that Shah's subjective experience does not factor into the analysis.  Instead, the inquiry is "generic and objective."  *O'Brien*, 818 F.3d at 933.  The Court previously recognized that Shah's secondary inspection did not differ materially from other secondary inspections that courts deem routine.  *Kariye*, 2022 U.S. Dist. LEXIS 186915, at *90–93.  As the Court noted, the Supreme Court has held that "multi-hour delays at the border" are reasonable," *id.* at *93, and the Ninth Circuit has approved of "[f]urther examination or questioning based on information uncovered in a search," *id.* at *93–94.  The amended complaint alleges that the entire inspection took approximately two hours, Am. Compl. ¶ 169, and the allegations show follow-up questions related to Shah's journal, *see id.* ¶¶ 151–57.  Thus, Plaintiffs have failed to demonstrate governmental action that would chill a person of ordinary firmness.

Second, Plaintiffs argue that even if Shah's inspection was reasonable, it would still be unlawful if it were motivated by retaliatory animus.  But they have not demonstrated that a retaliatory motive precipitated CBP's questioning.  Plaintiffs again rely primarily upon the allegation that an officer informed Shah that he asked questions regarding Shah's religion "because of what we found in your journal," *id.* ¶ 157, where the journal contained "notes regarding his work and religion," *id.* ¶ 175.  The Court reasonably determined that the most plausible explanation for this statement was "that the questions asked were follow-up questions from the routine search."  *Kariye*, 2022 U.S. Dist. LEXIS 186915, at *95.  And indeed, as the Ninth Circuit has acknowledged, asking follow-up questions regarding information learned

during an inspection is a standard part of a law enforcement examination. *See id.* at \*95–96 (citing *United States v. Cotterman*, 709 F.3d 952, 967 (9th Cir. 2013)).

Plaintiffs assert that in reaching its conclusion, the Court improperly drew inferences in Defendants' favor. Pls.' Br. 33. Not so. Instead, the Court properly assumed the veracity of Plaintiffs' well-pleaded factual allegations, and utilized "judicial experience" and "common sense" to determine the more probable explanation for CBP's alleged actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009). The Supreme Court did the same in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), accepting the plaintiffs' allegations of parallel conduct as true, but concluding that the complaint nonetheless "did not plausibly suggest an illicit accord" because the behavior was "more likely explained by[] lawful, unchoreographed free-market behavior." *Iqbal*, 556 U.S. at 680. Plaintiffs provide no basis for the Court to reconsider its previous dismissal of Shah's retaliation claim.

**E.      Plaintiffs Do Not Plausibly Allege an Equal Protection Violation.**

Lastly, Plaintiffs urge the Court to reconsider its dismissal of their Equal Protection claim based on the same allegations. Their arguments do not undermine the Court's original reasoning.

*First*, Plaintiffs again argue that they have adequately pleaded express discrimination. *See* Pls.' Br. 33–34. The allegations do not support this assertion. Express discrimination occurs "when a state actor explicitly treats an individual differently on the basis of race" or a similarly suspect classification, and any such action is subject to strict scrutiny. *Mitchell v. Washington*, 818 F.3d 436, 444 (9th Cir. 2016); *see also Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004). That is not the case here. The complaint does not plausibly allege that CBP singled out Plaintiffs on the basis of their religion. Instead, as the Court correctly concluded, the allegations "raise the inference that Plaintiffs Kariye and Mouslli experienced . . . religious questioning because of their placement on government watchlists." *Kariye*,

2022 U.S. Dist. LEXIS 186915, at *102.  Similarly, the allegations demonstrate that Plaintiff Shah was subject to "further inspection based on information uncovered during a routine search," which uncovered a journal containing notes about religion. *Id.* at *106–07.  The Court's prior identification of an adequately pleaded policy or practice does not save Plaintiffs' claim.  Even assuming the Court does not alter that determination (and the Court should), the well-pleaded factual allegations demonstrate questioning of Plaintiffs not explicitly because they were Muslim, but as a result of their alleged watchlist status, *see* Am. Compl. ¶¶ 90, 131–32, and in relation to subjects like their purpose of travel and travel habits, *see* ¶¶ 56–58, who they associated with while abroad, *see id.* ¶ 77, and items they chose to carry across the border, *see id.* ¶¶ 151–57, 167, 175.

*Second*, Plaintiffs provide no basis for the Court to reconsider its conclusion that they have not adequately pleaded discriminatory intent.[6]  *See* Pls.' Br. 34–35; *see also Kariye*, 2022 U.S. Dist. LEXIS 186915, at *102, *106–07.  They plead no new facts that would suggest that Defendants' intent was discriminatory.  *See Cal. Parents*, 973 F.3d at 1018.  Instead, they point to the same conclusory allegations as before.  *See* Am. Compl. ¶¶ 25, 97, 139, 189.  These are insufficient to state a claim under the Equal Protection Clause.  *See Thorton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *see also Joyce v. City & Cnty. of S.F.*, 846 F. Supp. 843, 858–59 (N.D. Cal. 1994).

---

[6] The cases Plaintiffs cite are distinguishable and, Defendants submit, wrongly decided in this regard.  *See* Pls.' Br. 34.  Two lack allegations that the plaintiffs were on watchlists, and unlike here, do not allege facts that would lead to questions about religion.  *See Janfeshan v. CBP*, 2017 WL 3972461, at *10 (E.D.N.Y. Aug. 21, 2017); *Cherri*, 951 F. Supp. 2d at 937.  *El Ali v. Barr*, 473 F. Supp. 3d 479, 517 (D. Md. 2020), includes allegations that the plaintiffs were purportedly on watchlists because of information they provided about their "religious and cultural practices."

Plaintiffs also contest the basis for CBP's alleged questions, asserting that the alleged questions here "bear no relationship to the detection of terrorism."  Pls.' Br. 34.  This assertion is both unsupported and beside the point.[7]  Even assuming that Plaintiffs Kariye and Mouslli both were watchlisted, that such alleged status was erroneous, and that the contents of Shah's journal were entirely benign, questions precipitated by watchlist status, travel history, or an item discovered during an inspection are still not motivated by discriminatory intent.  Nor is detecting terrorism the only valid reason a law enforcement officer might ask questions about religion.  And it is not Defendants' burden to—nor would it be possible for Defendants to— explain any law enforcement purpose underlying any alleged questions.  Plaintiffs are required to plausibly allege discriminatory intent, and they have failed to do so.  Instead, the most plausible reading of the alleged facts, assumed to be true for Rule 12 purposes is that watchlist status, and not religious affiliation, motivated CBP's questions of Plaintiffs Mouslli and Kariye, and that the religious writings in Plaintiff Shah's journal prompted follow-up questions about religion.  *See Kariye*, 2022 U.S. Dist. LEXIS 186915, at *102, *106–07.

*Finally*, even if Plaintiffs had stated a prima facie case under the Equal Protection Clause, the alleged acts satisfy strict scrutiny.  *See supra* pp. 7–9.

## CONCLUSION

For the foregoing reasons, and for the additional reasons set forth in Defendants' motion to dismiss, the amended complaint should be dismissed with prejudice.

---

[7] Plaintiffs base this argument on sweeping, generalized allegations like "[r]eligiosity of any kind . . . is not predictive of violence or terrorism," Am. Compl. ¶ 36, and unsupported pronouncements like "Muslim travelers' personal religious information is not germane to any legitimate purpose that Defendants may assert," *id.* ¶ 38.  The Court is not required to accept as true such conclusory allegations.

Dated: February 27, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Civil Division, Federal Programs Branch

 */s/ Leslie Cooper Vigen*
LESLIE   COOPER   VIGEN   (D.C.   Bar
No. 1019782)
LAUREL H. LUM (N.Y. Bar. No. 5729728)
SAMUEL A. REBO (D.C. Bar No. 1780665)
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0727
Email:  leslie.vigen@usdoj.gov

*Counsel for Defendants*