UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

   Deborah Lewman                                    N/A
     Deputy Clerk                                Court Reporter

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:

     Not Present                                    Not Present

**PROCEEDINGS: ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [68]**

Before the court is Defendants Alejandro Mayorkas, Secretary of the Department of Homeland Security, in his official capacity; Tae D. Johnson, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; Steve K. Francis, Acting Executive Associate Director of Homeland Security Investigations, in his official capacity; and Troy Miller's, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity (collectively, "Defendants") Motion to Dismiss ("Motion" or "Mot.") Plaintiffs Abdirahman Aden Kariye, Mohamad Mouslli, and Hameem Shah's (collectively, "Plaintiffs") Amended Complaint.  (Dkt. 68.)  Plaintiffs' First Amended Complaint ("FAC") seeks injunctive relief, declaratory relief, and attorneys' fees and costs for violations of the First Amendment, Fifth Amendment, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*  (Dkt. 61.)

The court held a hearing on the Motion on March 23, 2023.  (Dkt. 72.)  At the conclusion of the hearing on the Motion, the court took the matter under submission.  (*Id.*)  Based on the state of the record, as applied to the applicable law, the court **GRANTS** the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

## I.    Background

### a.  Summary of FAC's Allegations

Plaintiff Abdirahman Aden Kariye is a U.S. citizen who lives in Bloomington, Minnesota.  (FAC ¶ 8.)  Plaintiff Kariye is Muslim and serves as an imam at a local mosque.  (*Id.*)  Plaintiff Mohamad Mouslli is a U.S. citizen who lives in Gilbert, Arizona.  (*Id.* ¶ 9.)  Plaintiff Mouslli is Muslim and works in commercial real estate.  (*Id.*)  Plaintiff Hameem Shah is a U.S. citizen who lives in Plano, Texas.  (*Id.* ¶ 10.)  Plaintiff Shah is Muslim and works in financial services.  (*Id.*)

Defendants are the heads of the U.S. Department of Homeland Security ("DHS") and its agencies: U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE"), of which Homeland Security Investigations ("HSI") is a subcomponent.  (*Id.* ¶ 11.)  Defendant Alejandro Mayorkas is the Secretary of DHS and has authority over all DHS policies and practices, including those challenged in this lawsuit, and is named in his official capacity.  (*Id.* ¶ 12.)  Defendant Troy Miller is the Acting Commissioner of CBP and has authority over all CBP policies and practices, including those challenged in this lawsuit, and is named in his official capacity.  (*Id.* ¶ 13.)  Defendant Tae Johnson is Acting Director of ICE and has authority over all ICE policies and practices, including those challenged in this lawsuit, and is named in his official capacity.  (*Id.* ¶ 14.)  Defendant Steve K. Francis is the Acting Executive Associate Director of HSI and has authority over all HSI policies and practices, including those challenged in this lawsuit, and is named in his official capacity.  (*Id.* ¶ 15.)

Plaintiffs allege at border crossings and international airports in the United States, Defendants' border officers frequently subject travelers who are Muslim, or whom they perceive to be Muslim, to questioning about their religion.  (*Id.* ¶ 16.)  In May 2011, after the American Civil Liberties Union ("ACLU") and other organizations submitted complaints to DHS, the DHS Office for Civil Rights and Civil Liberties disclosed that it had opened an

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

investigation into CBP questioning "of U.S. citizens and legal residents who are Muslim, or appear to be Muslim, about their religious and political beliefs, associations, and religious practices and charitable activities protected by the First Amendment and Federal law." (*Id.* ¶ 17.) In a letter to the ACLU dated May 3, 2011, the DHS Office for Civil Rights and Civil Liberties stated that it had received "a number of complaints like yours, alleging that U.S. Customs and Border Protection (CBP) officers have engaged in inappropriate questioning about religious affiliation and practices during border screening." (*Id.*)

The DHS Office for Civil Rights and Civil Liberties issued a memorandum on May 3, 2011 (the "May 3, 2011, Memorandum"), to the CBP Commissioner stating that it had received "numerous accounts from American citizens, legal permanent residents, and visitors who are Arab and/or Muslim, alleging that officials from U.S. Customs and Border Protection (CBP) repeatedly question them and other members of their communities about their religious practices or other First Amendment protected activities, in violation of their civil rights or civil liberties." (*Id.* ¶ 18.)

The May 3, 2011, Memorandum included descriptions of border officers' questioning of Muslims about their religious beliefs and practices at various ports of entry across the United States. (*Id.* ¶ 19.) In July 2012, the DHS Office for Civil Rights and Civil Liberties informed the ACLU and other organizations that it had suspended the investigation because of a lawsuit challenging the practice. (*Id.* ¶ 20.) That litigation is still pending. (*Id.*) In 2019, CRCL acknowledged that DHS received over two dozen complaints about CBP questioning. (*Id.* ¶ 21.) As of 2020, CRCL was reviewing numerous allegations of CBP questioning at ports of entry. (*Id.* ¶ 22.)

Plaintiffs allege religious questioning of Muslim Americans at ports of entry continues today and Defendants' written policies permit border officers to question Americans about their religious beliefs, practices, and associations. (*Id.* ¶ 24.) ICE requires officers who work at ports of entry to carry a sample questionnaire to guide their interrogations of travelers, which

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                     Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

includes questions about a traveler's religious beliefs, practices, and associations. (*Id.*) CBP has a policy that allows it to collect and maintain information about an individual's religious beliefs, practices, and associations in numerous circumstances. (*Id.*) On information and belief, CBP views the collection and retention of Plaintiffs' responses to religious questioning as authorized by its policy. (*Id.*) Defendants have a policy and/or practice of intentionally targeting selected Muslims (or individuals perceived to be Muslim) for religious questioning. (*Id.* ¶ 25.) Plaintiffs allege that while Defendants' border officers routinely and intentionally single out Muslim Americans to demand answers to religious questions, travelers perceived as practicing faiths other than Islam are not routinely subjected to similarly intrusive questioning about their religious beliefs, practices, and associations. (*Id.*)

The religious questioning of Muslims typically takes place in the context of "secondary inspection," a procedure by which CBP detains, questions, and searches certain travelers before they are permitted to enter the country. (*Id.* ¶ 26.) Plaintiffs allege the secondary inspection environment is coercive because: (1) border officers carry weapons, identify themselves as border officers or wear government uniforms, and command travelers to enter and remain in the secondary inspection areas; (2) travelers are not free to leave those areas until officers give them permission; (3) secondary inspection areas are separated from the public areas of airports and ports of entry; (4) border officers typically take travelers' passports, routinely conduct physical searches and/or searches of travelers' belongings, and use the secondary inspection environment to compel Muslim American travelers to answer questions about their religious beliefs, practices, and associations. (*Id.* ¶ 27.) Plaintiffs allege Muslim American travelers have no meaningful choice but to disclose their First Amendment-protected beliefs and activity in response to border officers' inquiries. (*Id.* ¶ 28.)

Defendants have a policy and/or practice of retaining traveler's responses to questioning about their religious beliefs, practices, and associations. (*Id.* ¶ 29.) CBP officers are required to create a record of every secondary inspection at an airport or land crossing. (*Id.*) CBP officers routinely document travelers' responses to questions asked during secondary inspections,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

═══════════════════════════════════════════════════════════════

including Muslim Americans' responses to questions about their religious beliefs, practices, and associations. (*Id.*)  When HSI agents are involved in or otherwise present during secondary inspection, they also routinely create and maintain records of the secondary inspection. (*Id.*)  Border officers input the records of secondary inspections into DHS databases, including a DHS database called TECS, which functions as a repository for the sharing of information among tens of thousands of federal, state, local, tribal, and foreign law enforcement, counterterrorism, and border security agencies. (*Id.* ¶ 30.)  TECS users include personnel from various federal agencies; TECS data is also accessible to officers from over 45,000 state and local police departments and retained for up to seventy-five years. (*Id.*)

Alternatively, Plaintiffs allege even if Defendants do not engage in a policy and/or practice of singling out Muslims for religious questioning, Defendants have a policy and/or practice of subjecting travelers of faith to questioning. (*Id.* ¶ 31.)  Defendants also have a policy and/or practice of retaining travelers' responses for decades and making the responses available to law enforcement departments through TECS. (*Id.*)

Plaintiffs allege being Muslim and practicing Islam are protected religious beliefs and activity and these religious beliefs and practices do not indicate that an individual has or is engaged in any immigration or customs-related crime or that an individual has or is engaged in any other unlawful activity. (*Id.* ¶¶ 32-37.)  Plaintiffs allege Muslim travelers' personal religious information is not germane to any legitimate purpose that Defendants may assert. (*Id.* ¶ 38.)  Plaintiffs allege American history and tradition protect religious belief and ensure freedom from religious discrimination, and there is no American history or tradition of questioning U.S. citizens about these topics and retaining that information for decades. (*Id.* ¶¶ 39-53.)

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                          Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

### i.   Questioning of Plaintiffs by Defendants' Border Officers

#### 1.   Plaintiff Kariye

Plaintiff Kariye is a U.S. citizen and an imam at a mosque in Bloomington, Minnesota. (*Id.* ¶ 54.)  CBP officers have questioned Plaintiff Kariye about his Muslim faith on at least five occasions.  (*Id.* ¶ 55.)  On each occasion the environment was coercive: CBP officers wearing uniforms and carrying weapons commanded Plaintiff Kariye to enter and remain in an area separated from other travelers, usually a windowless room, took Plaintiff Kariye's belongings from him, searched his electronic devices, and questioned him at length.  (*Id.*)

#### a.   First Questioning Incident: September 12, 2017

On September 12, 2017, Plaintiff Kariye arrived home to the United States from Saudi Arabia, where he had participated in the Hajj, a sacred religious pilgrimage to Mecca.  (*Id.* ¶ 56.)  Upon his arrival at the Seattle-Tacoma International Airport, Plaintiff Kariye was detained for secondary inspection by two CBP officers in a small, windowless room for approximately two hours.  (*Id.* ¶ 57.)  During the first incident, a CBP officer questioned Plaintiff Kariye about his religious beliefs, practices, and associations, including questions about which mosque he attends and whether he had been on the Hajj before.  (*Id.* ¶ 58.)  Plaintiff Kariye answered these questions because he was not free to leave without the permission of a CBP officer and felt that he had no choice but to answer based on the circumstances of his detention.  (*Id.* ¶ 59.)  A CBP officer took notes during Plaintiff Kariye's detention, including while Plaintiff Kariye was responding to CBP's questions.  (*Id.* ¶ 60.)

#### b.   Second Questioning Incident: February 3, 2019

On February 3, 2019, CBP asked Plaintiff Kariye questions related to his religion during a secondary inspection at the Peace Arch Border Crossing near Blaine, Washington.  (*Id.* ¶ 61.)

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

Plaintiff Kariye was returning to the United States by car from a trip to Vancouver, where he had been on a vacation with friends. (*Id.*) Two CBP officers detained Plaintiff Kariye for approximately three hours. (*Id.*) The officers told Plaintiff Kariye that he would not be free to leave unless he answered their questions. (*Id.*) During the detention, a CBP officer questioned Plaintiff Kariye about his religious beliefs, practices, and associations, including questions about Plaintiff Kariye's involvement with a charitable organization affiliated with Muslim communities, how he fundraised for this charity, and whether his fundraising involved visiting mosques. (*Id.* ¶ 62.)

Plaintiff Kariye answered the CBP officer's questions about his religious charitable beliefs and activities because he was not free to leave without the permission of a CBP officer and felt that he had no choice but to answer based on the circumstances of his detention. (*Id.* ¶ 63.) A CBP officer took notes during Plaintiff Kariye's detention, including while Plaintiff Kariye responded to CBP's questions about his religious beliefs, practices, and associations. (*Id.* ¶ 64.)

### c. Third Questioning Incident: November 24, 2019

On November 24, 2019, CBP asked Plaintiff Kariye questions related to his religion during a secondary inspection in a CBP preclearance area at Ottawa International Airport in Canada. (*Id.* ¶ 65.) Plaintiff Kariye was returning to the United States after attending a wedding in Canada. (*Id.*) Plaintiff Kariye was flying to Detroit, Michigan, and then to Seattle, Washington. (*Id.*) A CBP officer detained Plaintiff Kariye for approximately one hour in a small, windowless room. (*Id.*)

During the detention, the CBP officer questioned Plaintiff Kariye about his religious associations. (*Id.* ¶ 66.) The CBP officer questioned Plaintiff Kariye about a youth sports league that he helped to run. (*Id.*) Although Plaintiff Kariye had not informed the officer that he was Muslim, the officer asked whether the sports league was "for black and white kids, or is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

it just for Muslim kids?" (*Id.*) Plaintiff Kariye understood the question as an acknowledgment of his Islamic faith and an attempt to ascertain what kinds of religious activities he participated in. (*Id.*) Plaintiff Kariye answered the questions because he was not free to leave without the permission of a CBP officer and felt that he had no choice but to answer based on the circumstances of his detention. (*Id.* ¶ 67.) The CBP officer took notes during Plaintiff Kariye's detention, including while Plaintiff Kariye responded to CBP's questioning about his religious beliefs and associations. (*Id.* ¶ 68.)

### d. Fourth Questioning Incident: August 16, 2020

On August 16, 2020, CBP officers asked Plaintiff Kariye questions related to his religion during a secondary inspection at the Seattle-Tacoma International Airport. (*Id.* ¶ 69.) Plaintiff Kariye was returning to the United States from a vacation with a friend. (*Id.*) Plaintiff Kariye had traveled from Turkey to Seattle, Washington, via the Netherlands. (*Id.*) CBP officers had photographs of Plaintiff Kariye that they used to identify him when he came off the jet bridge. (*Id.*) Multiple CBP officers detained Plaintiff Kariye for several hours in a small, windowless room. (*Id.*) To the best of Plaintiff Kariye's recollection, one of the officers, a supervisor, was named "Abdullah Shafaz" or something close to it. (*Id.*)

During the detention, CBP officers questioned Plaintiff Kariye about his religious beliefs, practices, and associations. (*Id.* ¶ 70.) These questions included:

a. What type of Muslim are you?
b. Are you Sunni or Shi'a?
c. Are you Salafi or Sufi?
d. What type of Islamic lectures do you give?
e. Where did you study Islam?
f. How is knowledge transmitted in Islam?
g. Do you listen to music?

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

      h.  What kind of music do you listen do?
      i.  What are your views on Ibn Taymiyyah?

(*Id.*)

      Plaintiff Kariye understood the questions about music and Ibn Taymiyyah as designed to elicit information about the nature and strength of his religious beliefs and practices. (*Id.* ¶ 71.) During the detention, a CBP officer threatened Plaintiff Kariye multiple times with retaliation by saying that, if Plaintiff Kariye did not cooperate, CBP would make things harder for him. (*Id.* ¶ 72.) The officer also said that Plaintiff Kariye was welcome to challenge the legality of the detention, but if he did so publicly or went to the media, CBP would make things harder for him during his future travels. (*Id.*)

      Plaintiff Kariye answered the CBP officers' questions because he felt he was not free to leave without the permission of a CBP officer and had no choice but to answer. (*Id.* ¶ 73.) A CBP officer took notes during Plaintiff Kariye's detention, including while Plaintiff Kariye responded to CBP's questions about his religious beliefs, practices, and associations. (*Id.* ¶ 74.) After several hours of detention, two of the CBP officers who had detained Plaintiff Kariye escorted him to a separate room, where they performed a thorough, full-body pat-down search, even though the CBP officers had no basis to suspect Plaintiff Kariye of carrying contraband or weapons, and they had already been in close proximity to him during his detention. (*Id.* ¶ 75.) After the pat-down, the officers permitted Plaintiff Kariye to leave. (*Id.*)

**e.  Fifth Questioning Incident: December 31, 2021**

      On December 31, 2021, a plainclothes CBP officer asked Plaintiff Kariye questions related to his religion during a secondary inspection at the Minneapolis-Saint Paul Airport. (*Id.* ¶ 76.) Plaintiff Kariye was returning to the United States from a trip to Somalia, Kenya, and the United Arab Emirates, where he had traveled for vacation and to visit family. (*Id.*) The officer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                        Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

detained Plaintiff Kariye for approximately an hour and a half.  (*Id.*)  During the detention, the CBP officer questioned Plaintiff Kariye about his religious beliefs, practices, and associations, including whether he had met a particular friend at a mosque.  (*Id.* ¶ 77.)  The officer then said, "I assume you're a Muslim, aren't you?"  (*Id.*)

Plaintiff Kariye answered these questions because he was not free to leave without the permission of a CBP officer and felt that he had no choice but to answer.  (*Id.* ¶ 78.)  A CBP officer took notes during Plaintiff Kariye's detention, including while Plaintiff Kariye responded to CBP's questions.  (*Id.* ¶ 79.)  During each of these five religious questioning incidents, Plaintiff Kariye alleges his travel and identification documents were valid, and he was not transporting contraband.  (*Id.* ¶ 80.)

**f.  Plaintiff Kariye's General Allegations**

Plaintiff Kariye alleges he is a law-abiding citizen with no criminal record and no ties to terrorist activity and was improperly placed on the U.S. government's master watchlist based on error or misplaced suspicion.  (*Id.* ¶¶ 81-83.)  Plaintiffs allege government errors are common in placing individuals on the government watchlist, the government has failed to properly maintain the watchlist, and individuals who seek to challenge their placement on the watchlist are not informed of the reason for their placement.  (*Id.* ¶¶ 84-89.)

Plaintiff Kariye was previously on the government watchlist, and Defendants removed him from the list on or around May 2022 in response to this litigation.  (*Id.* ¶ 90.)  Plaintiffs allege the religious questioning is substantially likely to recur because Plaintiff Kariye has "experienced travel issues consistent with placement on the U.S. government watchlist" for years, such as his boarding pass being marked with "SSSS" indicating "Secondary Security Screening Selection" and being subject to secondary inspection.  (*Id.* ¶¶ 91-92.)  Plaintiff Kariye intends to continue to travel internationally in the near future and alleges when he does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                     Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

so, upon his return home to the United States, he is at substantial risk of again being questioned by CBP officers about his religious beliefs, practices, and associations.  (*Id*. ¶ 93.)

Plaintiff Kariye alleges religious questioning by CBP harms him and impedes his religious practice.  (*Id*. ¶¶ 94-95.)  On information and belief, DHS and CBP maintain records about Plaintiff Kariye's religious beliefs, practices, and associations and Defendants' retention of such information in government systems causes Plaintiff Kariye ongoing distress and harm. (*Id*. ¶ 96.)  Plaintiff Kariye alleges CBP's questioning about his religious beliefs, practices, and associations is insulting and humiliating and conveys the stigmatizing message that the U.S. government views adherence to Islamic religious beliefs and practices as inherently suspicious and that Muslim Americans are not entitled to the full constitutional protections afforded to other Americans.  (*Id*. ¶ 97.)

Plaintiff Kariye alleges CBP's religious questioning places pressure on him to modify or curb his religious expression and practices, contrary to his sincere religious beliefs, such as by modifying his religious dress, modifying his prayer practice, and avoiding carrying religious texts when traveling back into the United States.  (*Id*. ¶¶ 98-102.)  Plaintiff Kariye is proud to be a Muslim, and his sincere religious beliefs direct him to wear a kufi in public, pray in a particular manner, and study various religious texts.  (*Id*. ¶ 103.)  Plaintiff Kariye alleges it causes him distress to forgo wearing his kufi, modify his prayer practice, and avoid carrying religious texts when he travels, but, because of CBP's questioning, Plaintiff Kariye takes these measures when traveling back into the United States to avoid additional scrutiny and religious questioning by CBP.  (*Id*.)

Plaintiff Kariye alleges he is subjected to unnecessary religious questioning by CBP and is forced to choose between outward displays of religiosity and avoiding additional religious questioning, which constitutes a substantial burden on his religious practice.  (*Id*. ¶ 104.) Plaintiff Kariye alleges CBP's religious questioning makes him feel anxious, humiliated, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                        Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

stigmatized as a Muslim American, including by causing acute distress that distracts him from work and from his relationships with family members.  (*Id.* ¶ 105.)

### 2. Plaintiff Mouslli

Plaintiff Mouslli is a U.S. citizen who is Muslim.  (*Id.* ¶ 106.)  He lives in Gilbert, Arizona, with his wife and three children, all U.S. citizens.  (*Id.*)  Plaintiff Mouslli works in commercial real estate.  (*Id.*)  On the last four occasions that Plaintiff Mouslli traveled internationally, CBP officers have asked him questions related to his religion upon his return to the United States.  (*Id.* ¶ 107.)  Plaintiff Mouslli alleges on each occasion the environment was coercive: CBP officers wearing uniforms and carrying weapons commanded Plaintiff Mouslli to enter and remain in an area separated from other travelers, took Plaintiff Mouslli's belongings from him, searched his electronic devices, and questioned him at length.  (*Id.*)

### a. First Questioning Incident: August 9, 2018

Plaintiff Mouslli alleges on or about August 9, 2018, CBP officers asked Plaintiff Mouslli questions related to his religion during a secondary inspection at the border crossing near Lukeville, Arizona.  (*Id.* ¶ 108.)  Plaintiff Mouslli was returning to the United States by car from a trip to Mexico, where he had been on vacation with a friend.  (*Id.*)  After CBP officers checked Plaintiff Mouslli's passport, several officers surrounded the car.  (*Id.* ¶ 109.)  The officers forced Plaintiff Mouslli to remain in the car for approximately 30 minutes, after which the officers brought him into the station.  (*Id.*)  In total, CBP officers detained Plaintiff Mouslli for approximately six to seven hours.  (*Id.*)  CBP officers questioned Plaintiff Mouslli about his religious beliefs, practices, and associations, including whether he is a Muslim and whether he is Sunni or Shi'a.  (*Id.* ¶ 110.)  Plaintiff Mouslli answered these questions because he was not free to leave without the permission of a CBP officer and felt that he had no choice but to answer.  (*Id.* ¶ 111.)  A CBP officer took notes during Plaintiff Mouslli's detention, including

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

while Plaintiff Mouslli responded to CBP's questions about his religious beliefs, practices, and associations.  (*Id.* ¶ 112.)

### b.  Second Questioning Incident: August 6, 2019

On or about August 6, 2019, CBP officers again asked Plaintiff Mouslli questions related to his religion during a secondary inspection at Los Angeles International Airport ("LAX"). (*Id.* ¶ 113.)  Plaintiff Mouslli was returning to the United States from a trip to Dubai and the Netherlands to visit family.  (*Id.*)  The officers detained Plaintiff Mouslli for approximately one and a half to two hours, along with his minor son who had joined him for the trip.  (*Id.*)  The CBP officers questioned Plaintiff Mouslli about his religious beliefs, practices, and associations, including whether he attends a mosque and how many times a day he prays.  (*Id.* ¶ 114.) Plaintiff Mouslli answered these questions because he and his son were not free to leave without the permission of a CBP officer and he felt that he had no choice but to answer.  (*Id.* ¶ 115.)  A CBP officer took notes during Plaintiff Mouslli's detention, including while Plaintiff Mouslli responded to CBP's questions about his religious beliefs, practices, and associations. (*Id.* ¶ 116.)

### c.  Third Questioning Incident: March 11, 2020

On March 11, 2020, CBP officers asked Plaintiff Mouslli questions related to his religion during another secondary inspection at LAX.  (*Id.* ¶ 117.)  Plaintiff Mouslli was returning to the United States from a trip to Dubai to visit family.  (*Id.*)  The officers detained Plaintiff Mouslli for approximately one and a half to two hours.  (*Id.*)  The CBP officers questioned Plaintiff Mouslli about his religious beliefs, practices, and associations, once again demanding to know whether he attends a mosque and whether he is Sunni or Shi'a.  (*Id.* ¶ 118.)  Plaintiff Mouslli answered these questions because he was not free to leave without the permission of a CBP officer and felt that he had no choice but to answer based on the circumstances of his detention. (*Id.* ¶ 119.)  A CBP officer took notes during Plaintiff Mouslli's detention, including while

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

Plaintiff Mouslli responded to CBP's questions about his religious beliefs, practices, and associations. (*Id.* ¶ 120.) Because of the delay from the secondary inspection, including CBP's religious questioning, Plaintiff Mouslli missed his connecting flight from LAX to Phoenix, and he had to rent a car at additional expense to drive home to Arizona. (*Id.* ¶ 121.)

### d.  Fourth Questioning Incident: June 5, 2021

On or about June 5, 2021, CBP officers again asked Plaintiff Mouslli questions related to his religion during a secondary inspection at LAX. (*Id.* ¶ 122.) Plaintiff Mouslli was returning to the United States from a trip to Dubai to visit family. (*Id.*) The officers detained him for approximately one and a half to two hours, along with his minor daughter who had joined him for the trip. (*Id.*) CBP officers questioned Plaintiff Mouslli about his religious beliefs, practices, and associations, including whether he goes to a mosque and whether he prays every day. (*Id.* ¶ 123.)

Plaintiff Mouslli answered these questions because he and his daughter were not free to leave without the permission of a CBP officer and he felt that he had no choice but to answer. (*Id.* ¶ 124.) He was also worried about extending the detention, given the presence of his daughter. (*Id.*) A CBP officer took notes during Plaintiff Mouslli's detention, including while Plaintiff Mouslli responded to CBP's questions about his religious beliefs, practices, and associations. (*Id.* ¶ 125.) Plaintiff Mouslli alleges during each of these four religious questioning incidents, his travel and identification documents were valid and he was not transporting contraband. (*Id.* ¶ 126.)

### e.  Plaintiff Mouslli's General Allegations

Plaintiff Mouslli alleges he is a law-abiding citizen with no criminal record and no ties to terrorist activity and was improperly placed on the U.S. government's master watchlist based on error or misplaced suspicion. (*Id.* ¶¶ 127-30.) Plaintiff Mouslli alleges CBP's religious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

questioning is substantially likely to recur because Plaintiff Mouslli has "experienced travel
issues consistent with placement on the watchlist" for years, such as his boarding pass being
marked with "SSSS" indicating "Secondary Security Screening Selection" and being subject to
secondary inspection. (*Id.* ¶ 132.) Plaintiff Mouslli intends to continue to travel internationally
in the near future and alleges when he travels, he is at substantial risk of again being questioned
by CBP officers about his religious beliefs, practices, and associations upon his return to the
United States. (*Id.* ¶¶ 133-36.)

Plaintiff Mouslli alleges religious questioning by CBP harms him and impedes his
religious practice. (*Id.* ¶ 137.) On information and belief, DHS and CBP maintain records
about Plaintiff Mouslli's religious beliefs, practices, and associations and Defendants' retention
of such information in government systems causes Plaintiff Mouslli ongoing distress and harm.
(*Id.* ¶ 138.) Plaintiff Mouslli alleges CBP's questioning about his religious beliefs, practices,
and associations is insulting and humiliating and conveys the stigmatizing message that the U.S.
government views adherence to Islamic religious beliefs and practices as inherently suspicious
and that Muslim Americans are not entitled to the full constitutional protections afforded to
other Americans. (*Id.* ¶ 139.)

Plaintiff Mouslli alleges CBP's religious questioning places pressure on him to modify or
curb his religious expression and practices in a way that is contrary to his sincere religious
beliefs, such as by modifying his prayer practice. (*Id.* ¶¶ 140-41.) Plaintiff Mouslli is proud to
be a Muslim and his sincere religious beliefs direct him to pray in a particular manner. (*Id.*
¶ 142.) Plaintiff Mouslli alleges it causes him distress to modify his prayer practice but because
of CBP's questioning, Plaintiff Mouslli takes these measures when traveling back into the
United States to avoid calling attention to his religion and incurring additional scrutiny and
religious questioning by CBP. (*Id.*)

Plaintiff Mouslli alleges he is subjected to unnecessary religious questioning by CBP and
is forced to choose between outward displays of religiosity and avoiding additional religious

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                          Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*
═══════════════════════════════════════════════════════════════

questioning, which constitutes a substantial burden on his religious practice. (*Id*. ¶ 143.)
Plaintiff Mouslli alleges CBP's religious questioning has made and continues to make him feel
anxious and distressed because of the invasive and personal nature of religious questioning and
the stigma of being targeted because he is Muslim. (*Id*. ¶ 144.)

### 3.  Plaintiff Shah

#### a.  First Questioning Incident: May 7, 2019

Plaintiff Shah is a U.S. citizen and Muslim who works in financial services. (*Id*. ¶ 145.)
Plaintiff Shah lives in Plano, Texas. (*Id*.)  On May 7, 2019, CBP officers asked Plaintiff Shah
questions related to his religion during a secondary inspection at LAX. (*Id*. ¶ 146.)  Plaintiff
Shah was returning to the United States from a trip to Serbia and Bosnia for vacation. (*Id*.)
After Plaintiff Shah passed through primary inspection without incident, a CBP officer
("Officer 1") stopped him in the baggage retrieval area and asked him to accompany him for a
search. (*Id*. ¶ 147.)  To the best of Mr. Shah's recollection, Officer 1's last name was
"Esguerra" or something close to it. (*Id*.)  Plaintiff Shah responded that he did not wish to be
searched. (*Id*. ¶ 148.)  Plaintiff Shah alleges Officer 1 replied that, because Plaintiff Shah was
at the border, he did not have the option to refuse. (*Id*.)  Officer 1 escorted Mr. Shah to a
secondary inspection area. (*Id*. ¶ 149.)  There, Officer 1 and a second officer ("Officer 2")
began to search Plaintiff Shah's belongings. (*Id*.)  To the best of Plaintiff Shah's recollection,
Officer 2's last name was "Gonzalez" or something close to it. (*Id*.)  Plaintiff Shah alleges the
environment was coercive because both officers were wearing uniforms and carrying weapons
and they commanded Plaintiff Shah to enter and remain in an area separate from travelers not
subject to secondary inspection. (*Id*. ¶ 150.)

Officer 2 reviewed a notebook that Plaintiff Shah had been carrying in his backpack—a
personal journal that Plaintiff Shah had kept for years and included notes about his religious
beliefs and practices, as well as notes on non-religious topics. (*Id*. ¶ 151.)  Plaintiff Shah told

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                        Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

Officer 2 that the notebook was a personal journal and asked him not to read it, but Officer 2 persisted.  (*Id.* ¶ 152.)  Officer 2 pointed out that many of the notes in Plaintiff Shah's journal were related to religion and asked why and where Plaintiff Shah had taken the notes and whether he had traveled in the Middle East.  (*Id.* ¶ 153.)  Officer 1 told Plaintiff Shah that they were trying to make sure Plaintiff Shah was a "safe person."  (*Id.*)  Plaintiff Shah answered Officer 1's questions because he was not free to leave without the permission of a CBP officer and reasonably felt that he had no choice but to answer.  (*Id.* ¶ 154.)

The officers told Plaintiff Shah that they were going to search his phone and laptop.  (*Id.* ¶ 155.)  In response, Plaintiff Shah said that he did not consent to the search of his electronic devices and asked to see a supervisor.  (*Id.*)  Officer 1 left to get the supervisor; Officer 2 stayed behind.  (*Id.*)  While he and Plaintiff Shah were alone, Officer 2 asked Plaintiff Shah a series of questions about his religious beliefs, practices, and associations.  (*Id.* ¶ 156.)  The officer's questions included the following:

    a)  What religion are you?
    b)  How religious do you consider yourself? Your family?
    c)  What mosque do you attend?
    d)  Do you attend any other mosques?
    e)  Do you watch Islamic lectures online or on social media?

(*Id.*)

When Plaintiff Shah asked Officer 2 why he was asking these questions, the officer responded, "I'm asking because of what we found in your journal."  (*Id.* ¶ 157.)  Plaintiff Shah answered Officer 2's questions because he was not free to leave without the permission of a CBP officer and felt that he had no choice but to answer.  (*Id.* ¶ 158.)  Later, Officer 1 returned with the supervisor.  (*Id.* ¶ 159.)  To the best of Plaintiff Shah's recollection, the supervisor's last name was "Lambrano," or something close to it.  (*Id.*)  Plaintiff Shah told the supervisor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

that he did not consent to a search of his electronic devices.  (*Id.*)  Plaintiff Shah stated that he
wanted to stand up for his constitutional rights.  (*Id.*)  The supervisor informed Plaintiff Shah
that his reluctance to allow inspection of his devices had made the officers more suspicious of
him.  (*Id.* ¶ 160.)  Plaintiff Shah asked to speak with an attorney immediately.  (*Id.* ¶ 161.)
Officer 1 responded by asking, "Why? You're not under arrest."  (*Id.*)

Plaintiff Shah then told the supervisor that he no longer wished to enter the United States
and wanted to return to the transit area so that he could leave the country and go back to
Europe.  (*Id.* ¶ 162.)  The supervisor responded that Plaintiff Shah could not take his devices
with him because they had been seized.  (*Id.*) The supervisor gave Plaintiff Shah two options:
(1) unlock his phone, in which case the officers would inspect the device in Plaintiff Shah's
presence; or (2) refuse to unlock his phone, in which case the officers would hold Plaintiff
Shah's phone and laptop for further examination and return them to him at a later date.  (*Id.*)
Mr. Shah felt that he had no meaningful choice, so he unlocked his phone.  (*Id.* ¶ 163.)  Officer
2 took the phone, wrote down the International Mobile Equipment Identity and serial numbers,
and manually searched through the phone without letting Plaintiff Shah see the screen.  (*Id.*)
Officer 1 told Plaintiff Shah he needed to continue looking through Plaintiff Shah's journal
using a computer, and he left the secondary inspection area with the journal.  (*Id.* ¶ 164.)
Plaintiff Shah again objected to the search of his phone and his journal.  (*Id.* ¶ 165.)  About
twenty to thirty minutes after Officer 1 had left, he returned with Plaintiff Shah's journal; he
was accompanied by an officer or agent in plain clothes ("Officer 3").  (*Id.* ¶ 166.)  To the best
of Plaintiff Shah's recollection, Officer 3's name was "Ali," or something close to it.  (*Id.*)  On
information and belief, Officer 3 was an HSI agent.  (*Id.*)

Officer 3 asked Plaintiff Shah about aspects of his religious associations that Plaintiff
Shah had recorded in his personal journal.  (*Id.* ¶ 167.)  Specifically, Officer 3 asked Plaintiff
Shah about the identity of a local imam in the Phoenix area.  (*Id.*)  Plaintiff Shah answered
Officer 3's questions about the imam because he was not free to leave without the permission of
a CBP officer and felt that he had no choice but to answer.  (*Id.* ¶ 168.)  Approximately two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                              Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

hours after he was taken to secondary inspection, the officers returned Plaintiff Shah's passport and allowed him to leave.  (*Id.* ¶ 169.)

After leaving secondary inspection, Plaintiff Shah opened his phone and could see that Officer 2 had viewed private text messages, WhatsApp messages, internal files, emails, call history, Google maps history, Google Chrome, Airbnb, and photos of family members spanning ten years, some of which were stored in the cloud but must have been cached on the device. (*Id.* ¶ 170.)  Plaintiff Shah believes that Officer 2 viewed these apps and files because Plaintiff Shah has a habit of closing apps or files after he uses them, meaning Officer 2 must have viewed everything that was open at the time he returned the phone to Mr. Shah.  (*Id.*)  The fact that Officer 2 viewed this content made Mr. Shah feel extremely distressed and uncomfortable. (*Id.* ¶ 171.)

Plaintiff Shah alleges border offices subjected him to longer-than-necessary detention, more extensive and intrusive questioning, and more invasive searches as retaliation for the religious beliefs in his journal and his statements to officers invoking his rights.  (*Id.* ¶ 172.) Plaintiff Shah alleges if the officers had not been acting with retaliatory motive, they would have detained Mr. Shah for a shorter period of time and would not have conducted such extensive and intrusive questioning and searches.  (*Id.* ¶ 173.)  Plaintiff Shah's travel and identification documents were valid, and he was not transporting contraband.  (*Id.* ¶ 174.)

In response to requests under the Freedom of Information Act and the Privacy Act, CBP has provided Plaintiff Shah with a redacted document stating that his detention and questioning was "Terrorist Related."  (*Id.* ¶ 175.)  This document is labeled "IOIL," which is a type of incident report entered into TECS.  (*Id.*)  The document includes the following description:

During examination of his belongings, subject was very cautious and focused on his journal that was found in his hand carry.  Subject demanded for us not to read his journal because he felt that it was an invasion of his privacy.  [Redacted] Upon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

reading the journal, some notes regarding his work and religion were found. Subject stated he's self-employed working as a financial trader.  Subject didn't want to elaborate on the type of work he does but just mentioned that he is able to work remotely.  Subject's notes regarding his religion (Islam) seemed to be passages from an individual he calls [redacted].  Subject stated that he is the Imam at the Islamic Center of the North East Valley located in Scottsdale, AZ.  Subject mentioned that he also goes to another mosque but refused to provide the name.  Subject claimed he's a devote [sic] Sunni Muslim.

(*Id.*)

### b. Plaintiff Shah's General Allegations

Plaintiff Shah alleges he is a law-abiding citizen with no criminal record and no ties to terrorist activity and none of the contents of his journal related to violence or terrorism.  (*Id.* ¶¶ 176-78.)  Plaintiff Shah alleges CBP's religious questioning is substantially likely to recur because Mr. Shah's previous detention and questioning was memorialized in a TECS entry labeled "Terrorist Related."  (*Id.* ¶ 180.)  Plaintiff Shah alleges none of his statements or actions have any relation to terrorism and he does not know why the detention was labeled as "Terrorist Related."  (*Id.* ¶ 181.)

Plaintiff Shah alleges religious questioning by CBP harms him and impedes his religious practice.  (*Id.* ¶¶ 182-83.)  On information and belief, DHS and CBP maintain records pertaining to Plaintiff Shah's religious beliefs, practices, and associations from border officers' questioning of Plaintiff Shah.  (*Id.* ¶ 184.)  Defendants' retention of copies of his journal and phone causes Plaintiff Shah ongoing distress and harm.  (*Id.*)  Plaintiff Shah alleges CBP's questioning about his religious beliefs, practices, and associations is insulting and humiliating. (*Id.* ¶ 185.)  Plaintiff Shah also alleges CBP's questioning conveys the stigmatizing message that the U.S. government views adherence to Islamic religious beliefs and practices as

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

_____

inherently suspicious and that Muslim Americans are not entitled to the full constitutional protections afforded to other Americans.  (*Id.*)

Plaintiff Shah alleges CBP's religious questioning places pressure on him to modify or curb his religious expression and practices in ways that are contrary to his sincere religious beliefs, such as by leaving his journal at home when traveling internationally.  (*Id.* ¶¶ 186-87.) Plaintiff Shah alleges he is subjected to unnecessary religious questioning by CBP and is forced to choose between outward displays of religiosity and avoiding additional religious questioning, which constitutes a substantial burden on his religious practice.  (*Id.* ¶ 188.)  Plaintiff Shah alleges he feels violated and humiliated by the border officers' religious questioning and searches and remains concerned about the information Defendants retained about his journal, phone, and personal religious beliefs, practices, and associations.  (*Id.* ¶ 189.)

### b. Procedural Background

On October 12, 2022, the court granted Defendant's Motion to Dismiss the Complaint. (Dkt. 58.)  On November 14, 2022, Plaintiffs filed the FAC.  (Dkt. 61.)  On December 27, 2022, Defendants filed the Motion to Dismiss the FAC.  (Dkt. 68.)  On February 10, 2023, Plaintiffs opposed the Motion.  (Dkt. 70.)  On February 27, 2023, Defendants filed a Reply.  (Dkt. 71.) On March 23, 2023, the court heard the Motion to Dismiss the FAC and took the matter under submission.  (Dkt. 72.)

## II.   Request for Judicial Notice

Under Federal Rule of Evidence 201, the court can judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  The court cannot take judicial notice of facts subject to reasonable dispute.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                       Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th
Cir. 2002)

        Defendants request that the court take judicial notice of two documents: (1) a
memorandum from Kevin K. McAleenan to All DHS Employees regarding First Amendment
Protected Activities dated May 17, 2019 ("McAleenan Memo"); and (2) CBP Standards of
Conduct, CBP Directive 51735-013B dated Dec. 9, 2020 ("CBP Standards of Conduct").  (Dkt.
69.)  The court finds that judicial notice of the documents is proper because they are
government agency documents.  *See Itzhaki v. U.S. Liab. Ins. Co.*, 536 F. Supp. 3d 651, 655
(C.D. Cal. 2021) (citation omitted) ("Courts may take judicial notice of government documents
available from reliable sources."); *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F.Supp.3d 1362,
1381 (C.D. Cal. 2014) ("Under Rule 201, [a] court can take judicial notice of public records and
government documents available from reliable sources on the Internet, such as websites run by
governmental agencies.").  Accordingly, the court **GRANTS** Defendants' Requests for Judicial
Notice of the McAleenan Memo and CBP Standards of Conduct.

## III.   Legal Standard

        Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a
claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to
dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to
relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed
factual allegations," a plaintiff must provide "more than labels and conclusions" and "a
formulaic recitation of the elements of a cause of action" such that the factual allegations "raise
a right to relief above the speculative level."  *Id.* at 555 (citations and internal quotation marks
omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (reiterating that "recitals of the
elements of a cause of action, supported by mere conclusory statements, do not suffice").

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                         Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

═══════════════════════════════════════════════════════════════════

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Baca*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681. But "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 at U.S. 678).

In *Sprewell v. Golden State Warriors*, the Ninth Circuit described legal standards for motions to dismiss made pursuant to Rule 12(b)(6):

> Review is limited to the contents of the complaint. *See Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *See id.* The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *See Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987). Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

266 F.3d 979, 988 (9th Cir. 2001).

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                              Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

═══════════════════════════════════════════════════════════════

## IV.   Discussion

### A.   Plaintiffs Have Sufficiently Alleged the Existence of an Official Practice, Policy or Custom of Targeting Muslim Americans for Religious Questioning

The court first considers whether Plaintiffs have sufficiently alleged the existence of an official practice, policy or custom to have standing to assert the claims in the FAC.  *See Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (a plaintiff must demonstrate "the harm alleged is directly traceable to a written policy" or that "the harm is part of a pattern of officially sanctioned . . . behavior" to have standing) (citation and internal quotation marks omitted) (*overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005)).

The FAC presents two alternative theories as to what constitutes Defendants' allegedly illegal official practice, policy or custom: (1) Defendants have a policy and/or practice of intentionally targeting Muslims for religious questioning" and as part of this religious questioning, retain the coerced responses to Defendants' questioning, (FAC ¶¶ 25, 29); or (2) Defendants have a policy and/or practice of subjecting *all* travelers of faith to questioning about their religious beliefs, practices, and associations during secondary inspections and retain such information, (*id.* ¶ 31).  The FAC further alleges such conduct is permitted by Defendants' written policies, which "permit border officers to question Americans about their religious beliefs, practices, and associations" and "collect and maintain information about an individual's religious beliefs, practices, and associations in numerous circumstances."  (*Id.* ¶ 24).

The parties' briefing does not sufficiently demonstrate the relevant standard for determining the existence of an official practice, policy, or custom.  The court previously found that under *Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010), there are two ways for a plaintiff to establish an official practice, policy or custom:

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy. . . .  Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.

*Id*. at 971 (citations and internal quotation marks omitted).

The court previously found that Plaintiffs sufficiently alleged the existence of an official practice, policy or custom of targeting Muslim Americans for religious questioning based on allegations of ten separate incidents of questioning, but Plaintiffs did not sufficiently allege the existence of a written policy permitting such targeting.  (Dkt. 58 at 30-32.)  *See Askins v. U.S. Dep't of Homeland Sec.*, 2013 WL 5462296, at *7 (S.D. Cal. Sept. 30, 2013) (finding a "pattern of official sanctioned behavior" in violation of the Fourth Amendment where plaintiffs alleged two instances of CBP officers searching and seizing the persons and property of individuals at two separate ports of entry for taking photographs), *amended on other grounds*, 2015 WL 12434362 (S.D. Cal. Jan. 29, 2015); *Cherri v. Mueller*, 951 F. Supp. 2d 918, 933-34 (E.D. Mich. 2013) (plaintiffs sufficiently alleged an official policy, custom and practice where plaintiffs alleged they were asked the same questions about their religious practices and beliefs on multiple occasions, the Complaint attached a DHS memorandum regarding law enforcement questioning of religion at the border, DHS informed plaintiffs' counsel that the agency had received a number of similar complaints, and DHS wrote a memorandum on the topic).

In this case, the FAC alleges Plaintiffs were subjected to religious questioning on ten different occasions and DHS and CBP retain records about each Plaintiff.  (*See generally* FAC; *id*. ¶¶ 96, 138, 184.)  The FAC further alleges multiple instances of DHS disclosing that it was investigating instances of reported religious questioning of Muslim individuals, acknowledging receipt of such complaints, creating memoranda on the issue, and continuing to review allegations of religious questioning at ports of entry as recently as 2020.  (*Id*. ¶¶ 17-22.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                  Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

Taking these allegations as true, the FAC alleges that Plaintiffs not only experienced religious questioning on ten different occasions and had their responses recorded, but that DHS has acknowledged receiving numerous complaints about religious questioning at the border, issued memoranda on the subject, and acknowledged the existence of an internal investigation into border officers' questioning of Muslims regarding their religious practices.  Therefore, the court finds that Plaintiffs have sufficiently alleged the existence of an official practice, policy or custom of targeting Muslim Americans for religious questioning and retaining their responses based on Defendants' pattern of behavior.  *See Cherri*, 951 F. Supp. 2d at 933-34 (holding plaintiffs sufficiently alleged an official policy, custom and practice based on similar facts).

However, the court finds Plaintiffs have not sufficiently alleged the existence of an official practice, policy or custom of Defendants subjecting *all* travelers of faith to religious questioning and retaining their responses to such questions.  Apart from the allegation that such a policy exists, the FAC does not include sufficient factual allegations regarding other travelers of faith being subject to religious questioning.  (*See generally* FAC.)

Accordingly, the court finds that Plaintiffs have sufficiently alleged the existence of an official practice, policy or custom of targeting Muslim Americans for religious questioning based on a pattern of officially sanctioned behavior for Plaintiffs to have standing to assert the causes of action in the Complaint.  The court's discussion below is limited to Plaintiffs' first basis for an official practice, policy or custom—that Defendants are targeting Muslims for religious questioning.  (*Id.* ¶ 25.)

## B. First Claim (Violation of the First Amendment Establishment Clause)

The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion."  U.S. Const. amend. I.  "This clause applies not only to official condonement of a particular religion or religious belief, but also to official disapproval or hostility towards religion."  *Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco*, 277 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

1114, 1120-21 (9th Cir. 2002); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) ("In our Establishment Clause cases we have often stated the principle that the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general."); *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1396 (9th Cir. 1994) ("The government neutrality required under the Establishment Clause is thus violated as much by government disapproval of religion as it is by government approval of religion.").

As the court noted in its previous order, the Supreme Court established a new standard for evaluating Establishment Clause claims in *Kennedy v. Bremerton School District*, 142 S. Ct. 2407 (2022).  Under *Kennedy*, "[i]n place of *Lemon* and the endorsement test, this Court has instructed that the Establishment Clause must be interpreted by reference to historical practices and understandings."  *Id.* at 2428 (citation and internal quotation marks omitted).  The Ninth Circuit has recognized that *Kennedy*, by abrogating the *Lemon* test, set forth a new standard for analyzing Establishment Clause claims.  *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022) (citations and internal quotation marks omitted) ("Instead of relying on the *Lemon* test, lower courts must now interpret the Establishment Clause by reference to historical practices and understandings . . . Going forward, the line that courts and governments must draw between the permissible and the impermissible has to accord with history and faithfully reflect the understanding of the Founding Fathers.").

As was the case previously, Plaintiffs urge the court to apply two alternative standards: (1) the test for denominational neutrality set forth in *Larson v. Valente*, 456 U.S. 228 (1982); or (2) the coercion test set forth in *Everson v. Board of Education*, 330 U.S. 1, 15-16 (1947) and *Lee v. Weisman*, 505 U.S. 577, 587-88 (1992).  (Opp. at 7-10.)  The court finds neither alternative standard applies here.  (*See id.* (citing cases that pre-date *Kennedy*).)  As the court discussed in its prior Order, *Lemon*—not the alternative standards proposed by Plaintiffs—was "the *dominant* mode of Establishment Clause analysis" in the Ninth Circuit prior to its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

abrogation. *Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1149 (9th Cir. 2018) (emphasis added).[1]

Therefore, the court finds that *Kennedy* sets forth the relevant standard for analyzing Establishment Clause violations.  142 S. Ct. at 2428; *see also Freedom From Religion Found.*, 896 F.3d at 1149.  Given the recency of the decision, the court observes that there is limited case law interpreting and applying the *Kennedy* standard.  Based on the limited case law regarding the *Kennedy* standard, the court considers historical practices regarding the government's authority to question individuals at the border, per the Supreme Court's instruction to interpret the Establishment Clause "by reference to historical practices and understandings."  142 S. Ct. at 2428; *see also Sabra*, 44 F.4th at 888 ("Instead of relying on the *Lemon* test, lower courts must now interpret the Establishment Clause by 'reference to historical practices and understandings.' . . . Going forward, 'the line that courts and governments must draw between the permissible and the impermissible has to accord with history and faithfully reflect the understanding of the Founding Fathers.'") (citation and internal quotation marks

_____

[1] The court finds neither of Plaintiffs' proposed alternative standards applicable in analyzing their Establishment Clause claim.  As stated above, Establishment Clause claims must now be evaluated under *Kennedy*.  First, as to the *Larson* test, the court finds no statute or law at issue here that would make this test applicable, and Plaintiffs have not otherwise identified one.  *See Hernandez v. Comm'r*, 490 U.S. 680, 695 (1989) ("*Larson* teaches that, when it is claimed that a denominational preference exists, the initial inquiry is whether the law facially differentiates among religions.").  Second, as to the coercion test, Plaintiffs allege they were subjected to coercive conditions during secondary inspection, forced to answer border officers' questions, penalized for being Muslim, and coerced into "not fully practicing their faith."  (Opp. at 20.)  Under *Lee* and *Everson*, the government is prohibited from "coerc[ing] anyone to support or participate in religion or its exercise," *Lee*, 505 U.S. at 587 or "forc[ing] him to profess a belief or disbelief in any religion," *Everson*, 330 U.S. at 15.  Plaintiffs do not sufficiently show how these alternative tests, even if applicable, are satisfied based on the allegations of the FAC.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

omitted); *Kane v. de Blasio*, 2022 WL 3701183, at *10 (S.D.N.Y. Aug. 26, 2022) (applying
*Kennedy* test to an Establishment Clause challenge to New York's vaccine mandate and
reviewing the "long history of vaccination requirements in this country and in this Circuit");
*Freedom from Religion Foundation, Inc. v. Mack*, 49 F.4th 941, 951 (5th Cir. 2022) (internal
quotation marks omitted) (applying *Kennedy* test to an Establishment Clause challenge to a
Texas judge's use of prayer in court's opening ceremony with "particular attention paid to
historical practices").

     The court finds substantial legal authority supports the government's historically broad
authority to implement security measures at the border.  In *United States v. Montoya de
Hernandez*, 473 U.S. 531 (1985), the Supreme Court explained the plenary authority of the
Executive Branch at the border:

          Since the founding of our Republic, Congress has granted the Executive plenary
          authority to conduct routine searches and seizures at the border, without probable
          cause or a warrant, in order to regulate the collection of duties and to prevent the
          introduction of contraband into this country. . . .  [The] Court has long recognized
          Congress' power to police entrants at the border . . . .  Consistent[], therefore, with
          Congress' power to protect the Nation by stopping and examining persons entering
          this country, the Fourth Amendment's balance of reasonableness is qualitatively
          different at the international border than in the interior.  Routine searches of the
          persons and effects of entrants are not subject to any requirement of reasonable
          suspicion, probable cause, or warrant . . . .  These cases reflect longstanding concern
          for the protection of the integrity of the border.

473 U.S. at 537-38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

The Supreme Court has repeatedly emphasized that such plenary authority is rooted in historical practices and understanding of the government's authority at the border.  In *United States v. Ramsey,* 431 U.S. 606 (1977), the Supreme Court explained:

> That searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border, should, by now, require no extended demonstration . . . .  Border searches, then, from before the adoption of the Fourth Amendment, have been considered to be "reasonable" by the single fact that the person or item in question had entered into our country from outside.  There has never been any additional requirement that the reasonableness of a border search depended on the existence of probable cause.  This longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless "reasonable" has a history as old as the Fourth Amendment itself.  We reaffirm it now.

431 U.S. at 616-19.

Additionally, the court finds substantial authority holding that maintaining border security is a compelling government interest.  *See Haig v. Agee*, 453 U.S. 280, 307 (1981) ("It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation.") (citation and internal quotation marks omitted); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) ("Everyone agrees that the Government's interest in combating terrorism is an urgent objective of the highest order."); *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."); *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 980 (9th Cir. 2012) ("On the other side of the scale, the government's interest in national security cannot be understated."); *Tabbaa v. Chertoff*, 509 F.3d 89, 103 (2d Cir. 2007) ("It is undisputed that the government's interest in protecting the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                  Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

nation from terrorism constitutes a compelling state interest."); *Carroll v. United States*, 267 U.S. 132, 154 (1925) ("Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in.").

In light of the case law holding that the government has plenary authority at the border and that maintaining border security is a compelling government interest, the court finds that "reference to historical practices and understandings" weighs against finding an Establishment Clause violation based on religious questioning at the border. *Kennedy*, 142 S. Ct. at 2428. Plaintiffs' allegations to the contrary—that American history and tradition protect religious belief—do not sufficiently address historical practices and understandings at the border. (FAC ¶¶ 39-53.)

Accordingly, Plaintiffs have not sufficiently alleged an Establishment Clause violation, and thus the court **GRANTS** the Motion as to Plaintiffs' Establishment Clause claim (Count 1).

### C. Second Claim (Violation of the First Amendment Free Exercise Clause)

The Free Exercise Clause of the First Amendment of the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. "The right to freely exercise one's religion, however, does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 879 (1990)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                              Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

"[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. Neutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Church of the Lukumi Babalu Aye*, 508 U.S. at 531. "A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id*. at 531-32. But "[f]acial neutrality is not determinative. The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination." *Id*. at 534. "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality" because "[t]he Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Id*.

Plaintiffs alleging a Free Exercise claim must "allege a substantial burden on their religious practice or exercise." *Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1016 (9th Cir. 2020). "The free exercise inquiry asks whether government has placed a substantial burden on the observation of a *central* religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) (emphasis added). Thus, "[t]he Free Exercise Clause of the First Amendment protects only 'the observation of a central religious belief or practice.'" *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1076 (9th Cir. 2008) (quoting *Hernandez*, 490 U.S. at 699).[2]

---

[2] Plaintiffs argue the language describing a substantial burden in *Navajo Nation* must be understood in light of *Jones v. Slade*, 23 F.4th 1124 (9th Cir. 2022) and *Ohno v. Yasuma*, 723 F.3d 984 (9th Cir. 2013). (Opp. at 22.) Neither case alters the court's analysis. *Jones* analyzes the meaning of "substantial burden" under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. and explicitly notes that this statutory standard is "more generous to the religiously observant than the Free Exercise Clause." 23 F.4th at 1139. *Ohno* reiterates the same standard discussed by the court above—that a "substantial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                     Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

### a. Plaintiffs Have Not Sufficiently Alleged a Substantial Burden[3]

### i. Plaintiffs' Alleged Burden Is a Subjective Chilling Effect

The parties again dispute whether the protective measures taken by Plaintiffs constitute a substantial burden or are merely a "subjective chilling effect." (Mot. at 19-22; Opp. at 21-25.) Defendants cite to *Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994) and *Dousa v. U.S. Dep't of Homeland Sec.*, 2020 WL 434314, at *5 (S.D. Cal. Jan. 28, 2020) for the proposition that a plaintiff is not substantially burdened in their religious practice when they voluntarily refrain from religious activity. (Mot. at 19-22.) The court reviews both cases below.

In *Vernon*, the Ninth Circuit considered whether the plaintiff, the Assistant Chief of Police of the Los Angeles Police Department ("LAPD"), experienced a substantial burden when the LAPD investigated "whether [plaintiff's] religious views were having an impermissible

_____

burden must place more than an inconvenience on religious exercise" and must have a "tendency to coerce individuals into acting contrary to their religious beliefs" or "exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." 723 F.3d at 1011.

[3] Plaintiffs argue in the alternative that they are not required to plead a substantial burden for two reasons: (1) the Supreme Court has not recently applied such a requirement to Free Exercise claims; and (2) Plaintiffs have alleged a practice, policy, or custom of targeting Muslim Americans that is not a neutral or generally applicable policy and is thus only subject to strict scrutiny analysis. (Opp. at 25-28.) As to Plaintiff's first argument, in the absence of binding authority holding that a substantial burden is not required to assert a Free Exercise claim, the court continues to follow existing precedent. As to Plaintiffs' second argument, the court discusses why Plaintiffs' Free Exercise claim would fail even if Plaintiffs had sufficiently alleged a substantial burden in Section IV(C)(b), *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                               Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

effect on his on-duty police department performance." *Id*. at 1388.  The plaintiff in *Vernon*
alleged that the investigation "chilled [him] in the exercise of his religious beliefs," because he
"fear[ed] that he can no longer worship as he chooses, consult with his ministers and the elders
of his church, participate in Christian fellowship and give public testimony to his faith without
severe consequences." *Id*. at 1394.  The plaintiff in *Vernon* thus argued that the investigation
"interfered with [his] freedom to worship in the way [he] want[s] without repercussions." *Id*.
The Ninth Circuit held that, based on the record, the investigation "resulted in no disciplinary
action being taken" and that the plaintiff had admitted "in his deposition testimony that no one
has specifically told him that he cannot [consult with his church elders]." *Id*. at 1395.  As a
result, the Ninth Circuit held that plaintiff "failed to show any concrete and demonstrable
injury" because a substantial burden could not be based on "mere subjective chilling effects
with neither a claim of specific present objective harm [n]or a threat of specific future harm."
*Id*. (citation and internal quotation marks omitted).

In *Dousa*, the district court considered whether the plaintiff, a pastor who was allegedly
subjected to government "surveillance, detention, and harassment" for her activities ministering
to asylum seekers at the U.S.-Mexico border, had a cognizable Free Exercise claim.  2020 WL
434314, at *1.  Plaintiff alleged she suffered three distinct harms from the government's
activities: (1) the government revoked, or at least attempted to revoke, her border crossing card
("SENTRI" card), hindering her ability to enter the United States; (2) the government detained
and interrogated her on January 2, 2019; and (3) the government monitored her domestic
activities.  *Id.* at *3.  Plaintiff argued the cumulative effect of these harms was that she was
"dissuaded from traveling to Mexico and ministering to refugees, something her religious
beliefs compel her to do" and that she felt "compelled to warn penitents about the possibility of
government surveillance, chilling her ability to provide pastoral counseling and absolution."  *Id.*

The *Dousa* court held that because the challenged government action was "neither
regulatory, proscriptive [n]or compulsory," "the [threshold] question is not necessarily whether
the Government action is neutral and generally applicable, but rather 'whether it substantially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                       Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

burdens a religious practice and either is not justified by a substantial state interest or is not
narrowly tailored to achieve that interest.'" *Id.* at *7 (quoting *Am. Family Ass'n*, 277 F.3d at
1123-24). Analyzing this threshold question, the court held that plaintiff's alleged harms did
not rise to the level of a substantial burden because plaintiff's decision to refrain from providing
religious counseling were "subjective chills." *Id.* at *8. Based on evidence of plaintiff's
continued ability to travel and use her Global Entry privileges, the court held that plaintiff did
not face a "present objective harm or a threat of specific future harm" and that "any harms felt
are not the direct result of government action, but rather a result of her decision to limit her
religious practices for her own subjective reasons." *Id.* However, the court clarified that "if the
Government had revoked [the plaintiff's] SENTRI card (and [the plaintiff] could show that the
revocation was the result of her engaging in protected activity), the Court would have no
problem finding a substantial burden" because the revocation "would effectively amount to a
government sanction, and it would undoubtedly make it more difficult for her to travel and to
practice her sincerely held beliefs." *Id.*

    In this case, Plaintiffs allege that they were intentionally targeted for religious
questioning on ten occasions, and information about their religious beliefs, practices, and
associations was collected and is now maintained in government databases. (*See* FAC ¶¶ 54-
105 (Plaintiff Kariye alleges he was subjected to religious questioning on five occasions from
September 12, 2017, to December 31, 2021); *id.* ¶¶ 106-44 (Plaintiff Mouslli alleges he was
subjected to religious questioning on four occasions from August 9, 2018, to June 5, 2021); *id.*
¶¶ 145-89 (Plaintiff Shah alleges he was subjected to religious questioning on one occasion on
May 7, 2019).) Plaintiffs further allege the questioning is substantially likely to recur and
Plaintiffs have suffered emotional distress from these experiences. (*Id.*)

    Plaintiffs also allege they have modified their religious practices during international
travel because of their experiences. Plaintiff Kariye alleges he now "modifies or eliminates
certain religious practices central to his faith to avoid calling attention to his faith," including
"no longer wear[ing] his kufi at the airport or the border," "refrain[ing] from . . . physical acts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

of prayer at the airport and the border," and "avoid[ing] carrying religious texts while traveling back into the United States." (*Id.* ¶¶ 98-102.) Plaintiff Mouslli alleges he "refrains from these physical acts of prayer at the airport and the border." (*Id.* ¶ 141). Plaintiff Shah alleges "the next time he travels internationally, he intends to leave his journal at home." (*Id.* ¶ 186.)

The court finds that the ongoing harms alleged by Plaintiffs here—their modifications to religious practices during international travel—hew closely to the harms alleged in *Vernon* and *Dousa* and can similarly be categorized as subjective chilling effects insufficient to constitute a substantial burden under the Free Exercise Clause. *See Vernon*, 27 F.3d at 1395 (substantial burden could not be based on "mere subjective chilling effects with neither a claim of specific present objective harm [n]or a threat of specific future harm"); *Dousa*, 2020 WL 434314, at *8 (no substantial burden where "any harms felt are not the direct result of government action, but rather a result of her decision to limit her religious practices for her own subjective reasons").

Plaintiffs describe their actions as *preventative* measures they adopted to avoid questioning in the future, not coerced actions compelled by government officials. (*See* FAC ¶¶ 98-102 (Plaintiff Kariye alleges he "modifies or eliminates" certain practices to avoid additional scrutiny); *id.* ¶ 141 (Plaintiff Mouslli alleges he "refrains from these physical acts of prayer at the airport and the border"); *id.* ¶ 186 (Plaintiff Shah alleges "the next time he travels internationally, he intends to leave his journal at home").)

As in *Dousa*, the court finds that "any harms felt are not the direct result of government action, but rather a result of [plaintiff's] decision to limit [their] religious practices for [their] own subjective reasons." 2020 WL 434314, at *8; *see also Am. Fam. Ass'n*, 277 F.3d at 1124 ("[W]hen the challenged government action is neither regulatory, proscriptive [n]or compulsory, alleging a subjective chilling effect on free exercise rights is not sufficient to constitute a substantial burden."). Therefore, the court finds that the protective measures alleged by Plaintiffs constitute a subjective chilling effect rather than a substantial burden.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                          Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

### ii.    Plaintiffs Do Not Plausibly Allege They Were Deprived of a Government Benefit or Coerced to Act Contrary to their Religious Beliefs

Although Plaintiffs again urges the court to find a substantial burden pursuant to the reasoning of *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008), the court finds *Navajo Nation*'s reasoning dictates the opposite outcome.  (Opp. at 22.)  In *Navajo Nation*, the Ninth Circuit considered whether the "use of artificial snow for skiing on a portion of a public mountain sacred in [the plaintiffs'] religion" violates RFRA and other unrelated statutes.  *Id.* at 1062-63.  The harm alleged was to the plaintiffs' "subjective spiritual experience," "[t]hat is, the presence of the artificial snow on the Peaks is offensive to the Plaintiffs' feelings about their religion and will decrease the spiritual fulfillment Plaintiffs get from practicing their religion on the mountain."  *Id.* at 1063.  Under these facts, the Ninth Circuit explained that "a government action that decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion is not what Congress has labeled a 'substantial burden'—a term of art chosen by Congress to be defined by reference to Supreme Court precedent—on the free exercise of religion."  *Id.*  The Ninth Circuit further explained that a substantial burden is "imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit . . . or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."  *Id.* at 1070.  "Any burden imposed on the exercise of religion short of that described by *Sherbert* and *Yoder* is not a 'substantial burden' within the meaning of RFRA."  *Id.*  The court finds that because the Ninth Circuit's analysis in *Navajo Nation* is explicitly grounded in binding Supreme Court precedent in *Sherbert* and *Yoder*, it does not warrant a departure from the analysis above.

The court finds Plaintiffs have not adequately alleged that they were "forced to choose between following the tenets of their religion and receiving a government benefit" under *Sherbert* or "coerced to act contrary to their religious beliefs" under *Yoder*.  *Id.* at 1070.   In *Sherbert*, the Supreme Court held that South Carolina could not deny unemployment benefits to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                            Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

a claimant, a member of the Seventh-Day Adventist Church, who refused jobs that required the claimant to work on the Sabbath Day of her faith. 374 U.S. at 398. In *Yoder*, the Supreme Court held that respondents' criminal convictions for violating Wisconsin's compulsory school-attendance law were invalid under the Free Exercise Clause based on respondents' belief that their children's compulsory attendance at high school violated the Amish religion and way of life. 406 U.S. at 206-09.

In this case, Plaintiffs have not plausibly alleged they were deprived of a government benefit or coerced to act contrary to their religious beliefs. First, under *Sherbert*, Plaintiffs argue they were deprived of the benefit of being allowed to reenter the United States without protracted questioning. (Opp. at 22.) Plaintiffs do not sufficiently explain how such a benefit falls within the type of "government benefit" discussed in *Sherbert*. (*See generally* Opp.) To the contrary, case law regarding the government's authority at the border suggests no such benefit exists. *See Flores-Montano*, 541 U.S. at 155 n.3 (2004) ("Respondent points to no cases indicating the Fourth Amendment shields entrants from inconvenience or delay at the international border . . . We think it clear that delays of one to two hours at international borders are to be expected."); *Haig*, 453 U.S. at 306 ("[T]he freedom to travel abroad . . . is subordinate to national security and foreign policy considerations; as such, it is subject to reasonable governmental regulation. The Court has made it plain that the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States.") (emphasis in original).

Second, under *Yoder*, Plaintiffs argue they are coerced to "choose between outward displays of religiosity and avoiding additional religious questioning" and thus refrain from physical acts of prayer, religious attire, carrying religious texts, and carrying a personal journal when traveling internationally. (Opp. at 22-23.) However, the Ninth Circuit has described the coercion contemplated by *Yoder* as an individual being "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation*, 535 F.3d at 1075. In this case, the FAC does not sufficiently describe what, if any, civil or criminal sanctions

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

_____

Defendants threatened.  *See, e.g.*, *Warsoldier v. Woodford*, 418 F.3d 989, 995-96 (9th Cir. 2005) (finding a substantial burden under RLUIPA where an inmate who refused to cut his hair in violation of his religious beliefs was "subjected to a series of punishments designed by CDC to coerce him into compliance" including confinement to his cell, being forced to work additional duty hours, and being expelled from prison classes).

Accordingly, the court finds that the FAC does not plausibly allege Plaintiffs were deprived of the government benefit of reentering the United States without protracted questioning or that they were coerced to act contrary to their religious beliefs.  In summary, the court finds that Plaintiffs have not sufficiently alleged a substantial burden to sustain their Free Exercise Claim.

> **b. Even if Plaintiffs Sufficiently Alleged a Substantial Burden, the Court would find the Questioning is Narrowly Tailored to Advance a Compelling Government Interest**

Alternatively, Defendants argue that even if Plaintiffs had sufficiently alleged a substantial burden, "the questioning alleged here is the least restrictive means of advancing a compelling government interest."  (Mot. at 23-25 (discussing Plaintiffs' Free Exercise Clause and RFRA claims).)  The court agrees that even if Plaintiffs had sufficiently alleged a substantial burden, based on the FAC's allegations and the record before the court, the record supports Defendants' questioning is a narrowly tailored means of advancing a compelling government interest.

"[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."  *Church of the Lukumi Babalu Aye*, 508 U.S. at 531.  "A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest."  *Id*. at 531-32.  "The free exercise inquiry asks whether

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                         Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez*, 490 U.S. at 699.

Defendants identify the compelling interest here as the government's interest in "protecting its borders and investigating and preventing potential acts of terrorism." (Mot. at 23.) Defendants cite several cases supporting the proposition that the government has a compelling interest in this area. (*Id.* (citing *Haig*, 453 U.S. at 307 ("It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation.") (citation and internal quotation marks omitted); *Humanitarian L. Project*, 561 U.S. at 28 ("Everyone agrees that the Government's interest in combating terrorism is an urgent objective of the highest order."); *Flores-Montano*, 541 U.S. at 152 ("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."); *Al Haramain Islamic Found.*, 686 F.3d at 980 ("On the other side of the scale, the government's interest in national security cannot be understated."); *Tabbaa*, 509 F.3d at 103 ("It is undisputed that the government's interest in protecting the nation from terrorism constitutes a compelling state interest.").  Plaintiffs do not sufficiently address whether the government's purported interest in this area constitutes a compelling interest. (*See generally* Opp.)  Accordingly, the court's analysis below concerns whether Plaintiffs' questioning was narrowly tailored to achieve such an interest.

The court notes that case law holding that the government's action was *not* narrowly tailored typically addresses governmental conduct broader in scope than the questioning alleged here. *Cf. Shelton v. Tucker*, 364 U.S. 479, 488 (1960) (law not narrowly tailored where statute required teachers to list "the church to which he belongs, or to which he has given financial support," "his political party, and every political organization to which he may have contributed over a five-year period" and "every conceivable kind of associational tie—social, professional, political, avocational, or religious"); *id.* ("[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

fundamental personal liberties when the end can be more narrowly achieved.”); *Fulton v. City of Philadelphia, Pa.*, 141 S. Ct. 1868, 1882 (2021) (holding that City of Philadelphia violated Free Exercise Clause where it conditioned a religious agency’s ability to participate in the foster care system on the agency agreeing to certify same-sex couples as foster parents).

Additionally, Plaintiffs’ allegations support the conclusion that the questioning alleged in this case would be a narrowly tailored means of achieving the compelling government interest of maintaining border security.  For example, Plaintiffs Kariye and Mouslli allege they were on the government watchlist for several years preceding the incidents of questioning, but they do not know why they were placed on the watchlist.  (*See* FAC ¶¶ 90-93 (Plaintiff Kariye has been experiencing travel issues consistent with placement on a government watchlist since 2013 but was taken off the watchlist in May 2022, in response to this litigation); *id.* ¶¶ 131-32 (Plaintiff Mouslli has been experiencing travel issues consistent with placement on a government watchlist since 2017).)  Given that the FAC alleges Plaintiffs Kariye and Mouslli were on the government watchlist during the incidents of questioning, the court finds implausible Plaintiffs’ allegations that questioning Plaintiffs “does not help to protect the border or prevent terrorism.” (*Id.* ¶ 210.)[4]  Indeed, the FAC alleges the government watchlist is a terrorist screening tool and

---

[4] To the extent Plaintiffs seek to challenge the legality of the government watchlist, the court observes no such claims are asserted here.  (*See generally* FAC.)  The court notes that the legality of the U.S. government’s Terrorist Screening Database—the government’s watchlist of known or suspected terrorists—has been upheld by several Circuits.  *See Elhady v. Kable*, 993 F.3d 208, 213 (4th Cir. 2021) (describing the database as “the federal government’s consolidated watchlist of known or suspected terrorists” and holding that “any wholesale reworking or significant modification of the program rests within the purview of the democratic branches”); *Abdi v. Wray*, 942 F.3d 1019, 1024 (10th Cir. 2019) (holding no due process claim from placement on the list); *Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017) (holding plaintiffs did not adequately allege their fundamental rights were violated from placement on the list).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                      Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

an individual can be placed on the watchlist based on "reasonable suspicion" that the individual is a known or suspected terrorist.  (*Id.* ¶ 83.)  *See Tabbaa*, 509 F.3d at 106 ("[G]iven the intelligence the government received, subjecting RIS Conference attendees to enhanced processing at the border—including fingerprinting and photographing—was a narrowly tailored means of achieving the government's compelling interest in protecting against terrorism.").

As for Plaintiff Shah, the only Plaintiff not on a government watchlist, the FAC again alleges Plaintiff Shah was returning to the United States from a trip to Serbia and Bosnia, passed through primary inspection without incident, and was initially stopped for a search of his belongings.  (*See* FAC ¶¶ 146-49.)  The incident report of the initial search states that Plaintiff Shah was "very cautious and focused on his journal that was found in his hand carry" and "demanded for us not to read his journal."  (*Id.* ¶ 175.)  Officers then read the journal and found "notes regarding his work and religion."  (*Id.*)  An officer asking about the notes stated that he was trying to make sure that Plaintiff Shah was a "safe person."  (*Id.* ¶ 153.)  When Plaintiff Shah asked officers why they were asking him questions about his religion, the officer stated, "I'm asking because of what we found in your journal."  (*Id.* ¶ 157.)  In response to a request for information regarding the questioning, CBP produced a redacted version of an incident report stating that Plaintiff Shah's detention and questioning was "Terrorist Related."  (*Id.* ¶ 175.)  In summary, the incident report and Plaintiff Shah's account of the incident both indicate Plaintiff Shah initially passed through primary inspection without being stopped, was stopped for a baggage search, and officers read his journal after Plaintiff Shah demanded that they not read it.  (*Id.* ¶¶ 146-75.)  The subsequent questioning was then based on what was "found in [his] journal."  (*Id.* ¶¶ 157, 175.)

In summary, the FAC alleges Plaintiffs Kariye and Mouslli were on government watchlists during the relevant incidents and Plaintiff Shah's questioning was in response to notes written in his journal.  (*See generally* id.)  Even if Plaintiffs had sufficiently alleged a

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                  Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

substantial burden, the court finds that Plaintiffs have not sufficiently addressed how
Defendants' questioning was not narrowly tailored to further a compelling government interest.
The court therefore concludes Plaintiffs have not plausibly alleged their Free Exercise Claim.
Accordingly, the court **GRANTS** the Motion as to Plaintiffs' Free Exercise Clause claim
(Count 2).

**D. Third Claim (Violation of the First Amendment Right to Free Association)**

"The First Amendment prohibits government from 'abridging the freedom of speech, or
of the press; or the right of the people peaceably to assemble, and to petition the Government
for a redress of grievances.'" *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382
(2021). The Supreme Court "has 'long understood as implicit in the right to engage in activities
protected by the First Amendment a corresponding right to associate with others.'" *Id*. (quoting
*Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). "[T]he freedom of association
may be violated where a group is required to take in members it does not want . . . where
individuals are punished for their political affiliation . . . or where members of an organization
are denied benefits based on the organization's message." *Id*. at 2382. In addition, "[i]t is
hardly a novel perception that compelled disclosure of affiliation with groups engaged in
advocacy may constitute as effective a restraint on freedom of association as [other] forms of
governmental action." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958).

In *Ams. for Prosperity Found.*, the Supreme Court explained the standard of review that
applies to First Amendment challenges to compelled disclosure:

> We have since settled on a standard referred to as "exacting scrutiny." *Buckley v.
> Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam). Under that
> standard, there must be "a substantial relation between the disclosure requirement
> and a sufficiently important governmental interest." *Doe v. Reed*, 561 U.S. 186, 196,
> 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010) (internal quotation marks omitted). "To

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                     Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

withstand this scrutiny, the strength of the governmental interest must reflect the
seriousness of the actual burden on First Amendment rights." *Ibid.* (internal
quotation marks omitted).  Such scrutiny, we have held, is appropriate given the
"deterrent effect on the exercise of First Amendment rights" that arises as an
"inevitable result of the government's conduct in requiring disclosure." *Buckley*,
424 U.S., at 65, 96 S.Ct. 612.

141 S. Ct. at 2373.

Here, Plaintiffs argue that "by compelling Plaintiffs to disclose sensitive associational
information and retaining that information for decades, border officers do not further any valid
government interest, and their questions are not narrowly tailored to the detection of terrorists."
(Opp. at 28.)  According to Plaintiffs, Defendants' religious questioning and the retention of
Plaintiffs' information cannot survive the "exacting scrutiny" standard the Supreme Court set
forth in *Ams. for Prosperity Found*, and the FAC sufficiently alleges that Defendants' questions
are not narrowly tailored and there is no "substantial relation" between the questions and a
compelling interest.  (Opp. at 28-31.)

The parties do not dispute that the relevant governmental interest here is securing the
border and preserving national security.  (*See generally* Mot. and Opp.)  Plaintiffs identify the
harm to their associational rights as Defendants' questioning and the retention of Plaintiffs'
information.  (Opp. at 28.)  Defendants argue the questioning at issue is intertwined with the
government's interest in security at the border.  (Mot. at 27.)

Accordingly, the relevant question before the court is whether Plaintiffs' allegations that
there is no "substantial relation between the disclosure requirement and a sufficiently important
governmental interest" are plausible.  *Reed*, 561 U.S. at 196.  Based on the allegations of the
FAC, the court finds implausible Plaintiffs' allegations that there is no substantial relation
between Defendants' religious questioning of Plaintiffs and collection of information and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

governmental interests of securing the border and preserving national security.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  To the contrary, as discussed above, certain of Plaintiffs' allegations appear to provide an explanation for Defendants' questioning of Plaintiffs.

For example, the FAC alleges Plaintiffs Kariye and Mouslli have been on U.S. government watchlists since 2013 and 2017, respectively.  (*See* FAC ¶¶ 91, 132.)  *Cf. Tabbaa*, 509 F.3d at 94 (affirming district court's grant of summary judgment on plaintiffs' freedom of association claim based on Muslim travelers' experiences of being searched and questioned at the border even where "Plaintiffs had no criminal records, and at no time did CBP have reasonable suspicion that any particular plaintiff had committed a crime or was associated with terrorists").  Additionally, as Defendants argue, questions about Plaintiff Kariye's associations could plausibly be considered questions related to his occupation because he works as an "imam at a mosque," (FAC ¶ 54).  (Mot. at 26-27.)

As for Plaintiff Shah—the only Plaintiff not alleged to be on a government watchlist—the court finds the FAC's allegations that no substantial relation between the disclosure requirement and a sufficiently important governmental interest are not plausible.  *Reed*, 561 U.S. at 196.  As discussed above, Plaintiff Shah's questioning followed a search of his belongings during which Plaintiff "was very cautious and focused on his journal" and "demanded for [officers] not to read his journal."  (FAC ¶ 175.)  Only after this interaction did the officers ask religious questions based on the contents of his journal.  (*See id.* ¶ 157 ("When Mr. Shah asked Officer 2 why he was asking these questions, the officer responded, 'I'm asking because of what we found in your journal.'").)  The FAC further alleges that Plaintiff was selected for secondary inspection after a trip to Serbia and Bosnia and that the report of the interview was later labeled as "Terrorist Related."  (*Id.* ¶¶ 146, 175.)

Even if Plaintiffs had sufficiently alleged a substantial disclosure under the First Amendment, based on the allegations regarding Plaintiffs' questioning, the court would find

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

that Defendants have met their burden to show that the disclosure is narrowly tailored to
advance a compelling government interest.  Because the court would find that the government
has met this more stringent standard, it necessarily follows that the government satisfies the
lower standard of "exacting scrutiny", which requires only that there be a plausible "substantial
relation between the disclosure requirement and a sufficiently important governmental interest."
*Reed*, 561 U.S. at 196.

Accordingly, the court **GRANTS** the Motion as to Plaintiffs' Freedom of Association
claim (Count 3).  *See Tabbaa*, 509 F.3d at 103 ("[T]he [government's] reach was carefully
circumscribed: it applied only to those conferences about which the government had specific
intelligence regarding the possible congregation of suspected terrorists, it was limited to routine
screening measures, and it was confined to those individuals, regardless of their religion, whom
CBP could establish had attended the conferences in question."); *Humanitarian L. Project v.
Reno*, 205 F.3d 1130, 1133 (9th Cir. 2000) (affirming district court's denial of preliminary
injunction to plaintiffs alleging that statute prohibiting contributions of support to foreign
terrorist organizations "infringes their associational rights under the First Amendment").

**E. Fourth Claim (Violation of the First Amendment (Retaliation))**

A plaintiff asserting a First Amendment retaliation claim must allege the following three
elements: "(1) [they were] engaged in a constitutionally protected activity, (2) the defendant's
actions would chill a person of ordinary firmness from continuing to engage in the protected
activity and (3) the protected activity was a substantial or motivating factor in the defendant's
conduct."  *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citation omitted); *see also Blair
v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (listing the same three elements).
Plaintiffs' First Amendment Retaliation claim is only asserted as to Plaintiff Shah and concerns
Defendants' alleged retaliation against him for engaging in protected activity.  (Opp. at 31-33.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

As for the first element, constitutionally protected activity encompasses expression of views, other than categories of speech courts have held to be unprotected by the First Amendment. *See Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571-72 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words."); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) ("Like insurrection, contempt, advocacy of unlawful acts, breach of the peace, obscenity, solicitation of legal business, and the various other formulae for the repression of expression that have been challenged in this Court, libel can claim no talismanic immunity from constitutional limitations."); *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014) (holding in the context of a First Amendment defamation claim that "[t]he protections of the First Amendment do not turn on whether the defendant was a trained journalist, formally affiliated with traditional news entities, engaged in conflict-of-interest disclosure, went beyond just assembling others' writings, or tried to get both sides of a story").

In this case, the court finds that Plaintiff Shah's writing in a personal journal and verbal speech constitute expression of views. *See Kaplan v. California*, 413 U.S. 115, 119-20 (1973) ("As with pictures, films, paintings, drawings, and engravings, both oral utterance and the printed word have First Amendment protection until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution."); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) ("The protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures."). Accordingly, the court finds that Plaintiffs have sufficiently alleged the first element of constitutionally protected activity regarding Plaintiff Shah's writing in his journal and his verbal communications with border officers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                         Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

As for the second element, the test is whether the actions would "chill a person of ordinary firmness from continuing to engage in the protected activity." *O'Brien*, 818 F.3d at 932. The standard is objective. *Id.* at 933. "Whether [a plaintiff] himself was, or would have been, chilled is not the test." *Id.*

In this case, the court finds that Plaintiffs have not sufficiently alleged that a person of ordinary firmness would be chilled from continuing to write in his journal and asserting his constitutional right. The FAC alleges Plaintiff was escorted to a secondary inspection area by two CBP officers who searched his belongings. (FAC ¶¶ 146-50.) The search included review of Plaintiff Shah's personal journal, phone, and laptop. (*Id.* ¶¶ 151, 155). Plaintiff Shah was then asked a series of questions about his religious beliefs, practices, and associations. (*Id.* ¶¶ 156-68). The process of being escorted to secondary inspection, searched, and questioned by CBP officers took approximately two hours. (*Id.* ¶ 169.) Based on the allegations of the FAC as applied to the law regarding border searches, the court finds that Plaintiffs have not sufficiently alleged the second element—that a person of ordinary firmness would be chilled from continuing the protected activity.

In considering whether a person of ordinary firmness would be chilled from considering the protected activity, the court looks to Ninth Circuit and Supreme Court precedent regarding the scope of border searches. In *United States v. Cotterman*, the Ninth Circuit explained the contours of the scope of border searches:

The broad contours of the scope of searches at our international borders are rooted in "the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country." *Ramsey*, 431 U.S. at 616, 97 S. Ct. 1972. Thus, border searches form "a narrow exception to the Fourth Amendment prohibition against warrantless searches without probable cause." *Seljan*, 547 F.3d at 999 (internal quotation marks and citation omitted). Because "[t]he Government's interest in preventing the entry of unwanted persons and effects

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

is at its zenith at the international border," *United States v. Flores–Montano*, 541 U.S. 149, 152, 124 S. Ct. 1582, 158 L. Ed. 2d 311 (2004), border searches are generally deemed "reasonable simply by virtue of the fact that they occur at the border." *Ramsey*, 431 U.S. at 616, 97 S. Ct. 1972.

This does not mean, however, that at the border "anything goes." *Seljan*, 547 F.3d at 1000. Even at the border, individual privacy rights are not abandoned but "[b]alanced against the sovereign's interests." *United States v. Montoya de Hernandez,* 473 U.S. 531, 539, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985). That balance "is qualitatively different . . . than in the interior" and is "struck much more favorably to the Government." *Id.* at 538, 540, 105 S. Ct. 3304. Nonetheless, the touchstone of the Fourth Amendment analysis remains reasonableness. *Id*. at 538, 105 S. Ct. 3304. The reasonableness of a search or seizure depends on the totality of the circumstances, including the scope and duration of the deprivation.

709 F.3d 952, 960 (9th Cir. 2013).

The Ninth Circuit has repeatedly held in the context of Fourth Amendment challenges that initial border searches of electronic devices and personal documents such as letters are reasonable even without particularized suspicion. *See United States v. Seljan*, 547 F.3d 993, 1003 (9th Cir. 2008) ("An envelope containing personal correspondence is not uniquely protected from search at the border."); *United States v. Abbouchi*, 502 F.3d 850, 856 (9th Cir. 2007) ("Customs officers at the Louisville UPS hub did not need reasonable suspicion to search the contents of [a] UPS package [containing immigration documents, handwritten notes, and an identification booklet] because the search took place at the functional equivalent of the border."); *United States v. Tsai*, 282 F.3d 690, 696 (9th Cir. 2002) ([T]he INS looked briefly through [the traveler's] briefcase and luggage. The scope of the search clearly placed it within our cases' definition of a routine border search, requiring neither warrant nor individualized suspicion."); *Cotterman*, 709 F.3d at 960 ("[T]he legitimacy of the initial search of [the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

traveler's] electronic devices at the border is not in doubt.  Officer Alvarado turned on the devices and opened and viewed image files while the [travelers] waited to enter the country."); *United States v. Arnold*, 533 F.3d 1003, 1009 (9th Cir. 2008) (holding that plaintiff "failed to distinguish how the search of his laptop and its electronic contents is logically any different from the suspicionless border searches of travelers' luggage that the Supreme Court and we have allowed" where CBP officers "simply "had [plaintiff] boot [the laptop] up, and looked at what [plaintiff] had inside").

    In this case, the question is not whether Plaintiff Shah's search and questioning violated the Fourth Amendment; instead, the question is whether a person of ordinary firmness would have been chilled from engaging in protected activity in violation of the First Amendment.  But given Ninth Circuit and Supreme Court case law regarding what constitutes a routine border search, the court cannot say that Plaintiff Shah's border search—involving a search of his personal journal, phone, and laptop, being asked a series of questions about his religious beliefs, practices, and associations, and being in secondary inspection for approximately two hours (FAC ¶¶ 146-69)—would chill a person of ordinary firmness.  As discussed above, searches of personal documents and electronic devices are routine.  *Cf. Cotterman*, 709 F.3d at 966 (federal agents performed a "computer strip search" where "[a]fter their initial search at the border, customs agents made copies of the hard drives and performed forensic evaluations of the computers that took days to turn up contraband").  The same is true for multi-hour delays at the border.  *See Flores-Montano*, 541 U.S. at 155 n.3 ("We think it clear that delays of one to two hours at international borders are to be expected.").  Further examination or questioning based on information uncovered in a search is also routine.  *Cotterman*, 709 F.3d at 967 ("In practical terms . . . border officials will conduct further, forensic examinations where their suspicions are aroused by what they find or by other factors. Reasonable suspicion leaves ample room for agents to draw on their expertise and experience to pick up on subtle cues that criminal activity may be afoot."); *United States v. Bravo*, 295 F.3d 1002, 1008 (9th Cir. 2002) ("Detention and questioning during routine searches at the border are considered reasonable within the meaning of the Fourth Amendment.").  *See also Tabbaa*, 509 F.3d at 98-99 ("Plaintiffs complain that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

they were required to answer intrusive questions about their activities at [a religious]
conference, the content of the lectures they attended, and their reasons for attending.  But these
questions are not materially different than the types of questions border officers typically ask
prospective entrants in an effort to determine the places they have visited and the purpose and
duration of their trip.").  Accordingly, the court finds that Plaintiffs have not sufficiently alleged
that Defendants' actions would chill a person of ordinary firmness from continuing to engage in
the protected activity.

As for the third element of causation, the court also finds that Plaintiffs have not
sufficiently alleged that the protected activity was a "substantial or motivating factor in the
defendant's conduct."  *O'Brien,* 818 F.3d at 932.  "To prevail on such a claim, a plaintiff must
establish a 'causal connection' between the government defendant's 'retaliatory animus' and the
plaintiff's 'subsequent injury.'"  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation
omitted).  "It is not enough to show that an official acted with a retaliatory motive and that the
plaintiff was injured—the motive must cause the injury."  *Id.*  The connection "must be a 'but-
for' cause, meaning that the adverse action against the plaintiff would not have been taken
absent the retaliatory motive."  *Id.*

In this case, Plaintiff Shah alleges that when he asked the CBP officer why the officer
was asking these questions, the officer responded, "I'm asking because of what we found in
your journal."  (*Id.* ¶ 157.)  Although Plaintiffs argue that officers retaliated against him for
engaging in protected speech, (*see* Opp. at 32-33), the court finds the FAC does not plausibly
allege that officers detained and questioned Plaintiff Shah to retaliate against him.  Instead, the
FAC plausibly alleges that the questions resulted from the information learned in the routine
search rather than as retaliation for Plaintiff Shah maintaining a personal journal or speaking
with border officers.  *See Cotterman*, 709 F.3d at 967 ("In practical terms . . . border officials
will conduct further, forensic examinations where their suspicions are aroused by what they find
or by other factors.").  Accordingly, the court finds that Plaintiffs have not sufficiently alleged
that the protected activity was a substantial or motivating factor in Defendants' conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                          Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

Therefore, the court **GRANTS** the Motion as to Plaintiffs' First Amendment Retaliation claim (Count 4).

**F. Fifth Claim (Violation of the Fifth Amendment Due Process Right to Equal Protection)**

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. I.  "But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive."  *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  The Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."  *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "The Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  "To prevail on an Equal Protection claim, plaintiffs must show that a class that is similarly situated has been treated disparately."  *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017) (citation omitted).

"The first step in equal protection analysis is to identify the state's classification of groups."  *Country Classic Dairies, Inc. v. State of Mont., Dep't of Com. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988).  "The next step in equal protection analysis would be to determine the level of scrutiny."  *Id.*  In *McLean v. Crabtree*, the Ninth Circuit explained the proper application of this two-step analysis:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                              Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

> Analysis of an equal protection claim alleging an improper statutory classification
> involves two steps.  Appellants must first show that the statute, either on its face or
> in the manner of its enforcement, results in members of a certain group being treated
> differently from other persons based on membership in that group . . . . Proof of
> discriminatory intent is required to show that state action having a disparate impact
> violates the Equal Protection Clause . . . . Second, if it is demonstrated that a
> cognizable class is treated differently, the court must analyze under the appropriate
> level of scrutiny whether the distinction made between the groups is justified.

173 F.3d 1176, 1185 (9th Cir. 1999).

Here, Plaintiffs allege Defendants have a policy and/or practice of intentionally targeting
Muslims for religious questioning and as part of this religious questioning, retain the coerced
responses to Defendants' questioning.  (FAC ¶¶ 24-25, 29.)  Plaintiffs further allege Defendants
have a policy and/or practice of subjecting *all* travelers of faith to questioning about their
religious beliefs, practices, and associations during secondary inspections and retain such
information.  (*Id.* ¶¶ 24, 31.)

The court analyzes Plaintiffs' Fifth Amendment Due Process claim under the same lens
as a Fourteenth Amendment Equal Protection claim.  *See Weinberger*, 420 U.S. at 638 n.2.  The
first step is to "identify the state's classification of groups."  *Country Classic Dairies*, 847 F.2d
at 596.  Here, Plaintiffs identify the government's classification as being based on religion.
(FAC ¶¶ 25, 31.)  Under the first step of the analysis, religion is a suspect class.  *See City of
New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("Unless a classification trammels
fundamental personal rights or is drawn upon inherently suspect distinctions such as race,
religion, or alienage, our decisions presume the constitutionality of the statutory discriminations
and require only that the classification challenged be rationally related to a legitimate state
interest."); *Al Saud v. Days*, 36 F.4th 949, 953 (9th Cir. 2022) ("Religion is a suspect class.").
Plaintiffs have sufficiently alleged that they "as members of a certain group [are] being treated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                              Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

differently from other persons based on membership in that group." *McLean*, 173 F.3d at 1185.
Specifically, Plaintiffs allege that although border officers are permitted to question all
Americans about their religious beliefs, practices, and associations, Defendants are "targeting
selected Muslims (or individuals perceived to be Muslim) for religious questioning." (*See* FAC
¶ 25.)

The court interprets Plaintiffs' claims as challenging both alleged decisions:
(1) Defendants' decision to bring Plaintiffs into secondary inspection; and (2) Defendants'
decision to ask Plaintiffs religious questions during secondary inspection. (Opp. at 33-35.)
However, the court finds that Plaintiffs have not sufficiently alleged a plausible factual basis for
inferring that either experience—being pulled into secondary inspection or asked religious
questions—were undertaken because of Plaintiffs' religion. In other words, without this causal
link, the court finds that Plaintiffs' Equal Protection claim fails to plausibly allege a necessary
element. *See McLean*, 173 F.3d at 1185 ("Appellants must first show that the statute, either on
its face or in the manner of its enforcement, results in members of a certain group being treated
differently from other persons based on membership in that group . . . . Proof of discriminatory
intent is required to show that state action having a disparate impact violates the Equal
Protection Clause."). The court addresses the allegations regarding each Plaintiff below.

a. **Plaintiffs Kariye and Mouslli Have Not Sufficiently Alleged Equal Protection
Claims**

The FAC alleges Plaintiffs Kariye and Mouslli only began experiencing issues with travel
after they were placed on government watchlists. (*See id.* ¶¶ 90-91 (Plaintiff Kariye alleges he
began experiencing issues consistent with placement on a government watchlist beginning in
2013), *id.* ¶ 132 (Plaintiff Mouslli alleges the same beginning in 2017).) The FAC further
alleges all nine instances of religious questioning experienced by Plaintiffs Kariye and Mouslli
post-date their alleged placement on government watchlists. (*See id.* ¶¶ 56-60 (first religious
questioning incident of Plaintiff Kariye occurred in September 2017), *id.* ¶ 113 (first religious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

questioning incident of Plaintiff Mouslli occurred in August 2019).) The FAC also links
Plaintiff Kariye and Mouslli's placement on government watchlists to their experiences during
international travel. (*See id.* ¶¶ 90-93 ("For years, Imam Kariye has experienced travel issues
consistent with placement on the U.S. government watchlist . . . He intends to continue to travel
internationally in the near future. When he does so, upon his return home to the United States,
he is at substantial risk of again being questioned by CBP officers about his religious beliefs
practices, and associations."); *id.* ¶¶ 132-38 ("In late 2017, Mr. Mouslli began experiencing
travel issues consistent with placement on the watchlist . . . When Mr. Mouslli travels again
internationally, he is at substantial risk of again being questioned by CBP officers upon his
return home to the United States about his religious beliefs, practices, and associations.").) The
FAC further alleges the government watchlist contains errors but is ultimately used a terrorist
screening database and individuals may be placed on the list based on "reasonable suspicion"
that the individual is a known or suspected terrorist. (*Id.* ¶ 84.)

Accordingly, based on the allegations of the FAC, the court finds that Plaintiffs Kariye
and Mouslli have not plausibly alleged that they experienced secondary inspection and religious
questioning because of Defendants' discriminatory intent regarding their religion. To the
contrary, the court finds that the facts as alleged raise the inference that Plaintiffs Kariye and
Mouslli experienced secondary inspection and religious questioning because of their placement
on government watchlists.

**b. Plaintiff Shah Has Not Sufficiently Alleged an Equal Protection Claim**

As for Plaintiff Shah, the FAC alleges Plaintiff Shah is not on a government watchlist but
still experienced a single instance of religious questioning in May 2019. (*Id.* ¶¶ 147-75.) The
FAC alleges Plaintiff Shah was returning from a trip to Serbia and Bosnia and that after passing
through primary inspection "without incident," an officer "stopped him in the baggage retrieval
area and asked him to accompany him for a search." (*Id.* ¶ 147.) After being escorted to
secondary inspection, officers began to search Plaintiff Shah's belongings. (*Id.* ¶ 149.) One of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

the officers reviewed a notebook that Plaintiff Shah had been carrying in his backpack.  (*Id.*
¶ 151.)  The officer then "pointed out that many of the notes in Mr. Shah's journal were related
to religion," "asked Mr. Shah why and where he had taken the notes and whether he had
traveled in the Middle East," and told Plaintiff Shah that "they were trying to make sure Mr.
Shah was a 'safe person.'"  (*Id.* ¶ 153.)  One of the officers then began asking Plaintiff "a series
of questions about his religious beliefs, practices, and associations."  (*Id.* ¶ 156.)  When Plaintiff
Shah asked the officer why he was asking these questions, the officer responded, "I'm asking
because of what we found in your journal."  (*Id.* ¶ 157.)  The incident report regarding Plaintiff
Shah's detention and questioning was later labeled as "terrorist related."  (*Id.* ¶ 175.)

     The Ninth Circuit has made clear that there must be sufficient factual allegations to
support an inference of discrimination or discriminatory intent.  "Mere indifference to the
effects of a decision on a particular class does not give rise to an equal protection claim. . . and
conclusory statements of bias do not carry the nonmoving party's burden in opposition to a
motion for summary judgment."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir.
2005); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998)
("We have held that § 1983 claims based on Equal Protection violations must plead intentional
unlawful discrimination or allege facts that are at least susceptible of an inference of
discriminatory intent."); *Cal. Parents*, 973 F.3d at 1018 (affirming dismissal of Equal
Protection claims where the complaint alleged that "the Standards and Framework discriminate
against Hinduism by treating it less favorably than other religions" but "[t]he allegations
contain no reference to State Board policy, nor do the allegations describe any materials used in
the classroom from which such a policy could be inferred."); *Jimenez v. Ruelas*, 2007 WL
9723456, at *5 (C.D. Cal. Mar. 31, 2007) ("Here, plaintiff's conclusory statement that he was
discriminated against because of his race, without providing any additional facts to support this
statement, is insufficient to support an equal protection claim."); *Davis v. John*, 485 F. Supp. 3d
1207, 1222 (C.D. Cal. 2020) (finding plaintiff adequately alleged discriminatory intent where
the defendant, a prison official, allegedly "aggressively and angrily ordered the removal of the
Nation of Islam symbol from a multi-denominational chapel and podium although members of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                  Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

other faiths were permitted to display their religion's symbols in that location" and stated that "Black Muslims could not display their religious symbol because both the chapel and podium supposedly were reserved for Christians").

In this case, the court finds that Plaintiff Shah has not plausibly alleged that he experienced secondary inspection and religious questioning because of Defendants' discriminatory intent regarding his religion. First, the court notes that the FAC does not include sufficient allegations regarding why Plaintiff Shah was singled out for secondary inspection. As currently pled, the FAC merely states that Plaintiff Shah passed through primary inspection but was asked in the baggage retrieval area to go to secondary inspection. (FAC ¶¶ 146-47.) Second, the court notes that the FAC alleges the officers involved only began asking questions about Plaintiff Shah's religious practices after reviewing the contents of his personal journal. (*See id.* ¶¶ 152-57.) The journal included notes about his religious beliefs and practices, as well as notes unrelated to religion. (*Id.* ¶ 151.)

As discussed above, border officers are permitted to conduct further inspection based on information uncovered during a routine search. *See Cotterman*, 709 F.3d at 967; *Bravo*, 295 F.3d at 1008. The court finds that the allegations regarding Plaintiff Shah do not sufficiently raise the inference that he was selected for secondary inspection or asked religious questions based on discriminatory intent regarding his religion. *See Iqbal*, 556 U.S. at 680 (a Complaint must "nudg[e] . . . claims of invidious discrimination across the line from conceivable to plausible") (citation and internal quotation marks omitted).

The court finds that Plaintiffs have not sufficiently alleged the first step of an equal protection claim—that there is discriminatory intent causing "members of a certain group [to be] treated differently from other persons based on membership in that group." *McLean*, 173 F.3d at 1185. Accordingly, the court does not reach the second step of the analysis—whether "under the appropriate level of scrutiny . . . the distinction made between the groups is justified." *Id.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                        Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

Therefore, the court **GRANTS** the Motion as to Plaintiffs' Fifth Amendment Due
Process claim (Count 5).

**G. Sixth Claim (Violation of the Religious Freedom Restoration Act)**

Under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb
*et seq.*, the "[g]overnment shall not substantially burden a person's exercise of religion even if
the burden results from a rule of general applicability, except as provided in subsection (b)."  42
U.S.C. § 2000bb-1(a).  Subsection (b) provides that the "[g]overnment may substantially burden
a person's exercise of religion only if it demonstrates that application of the burden to the
person—(1) is in furtherance of a compelling governmental interest; and (2) is the least
restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-
1(b).

"To establish a prima facie RFRA claim, a plaintiff must present evidence sufficient to
allow a trier of fact rationally to find the existence of two elements.  First, the activities the
plaintiff claims are burdened by the government action must be an 'exercise of religion.'"
*Navajo Nation*, 535 F.3d at 1068.  "Second, the government action must 'substantially burden'
the plaintiff's exercise of religion."  *Id.*  "If the plaintiff cannot prove either element, his RFRA
claim fails."  *Id.*  "Conversely, should the plaintiff establish a substantial burden on his exercise
of religion, the burden of persuasion shifts to the government to prove that the challenged
government action is in furtherance of a 'compelling governmental interest' and is implemented
by 'the least restrictive means.'"  *Id.*  "If the government cannot so prove, the court must find a
RFRA violation."  *Id.*

As explained by the Ninth Circuit in *Navajo Nation*, the definition of "substantial
burden" under RFRA is identical to the definitions adopted by the Supreme Court in *Sherbert*
and *Yoder*:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

> Under RFRA, a "substantial burden" is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit (*Sherbert*) or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions (*Yoder*). Any burden imposed on the exercise of religion short of that described by *Sherbert* and *Yoder* is not a "substantial burden" within the meaning of RFRA, and does not require the application of the compelling interest test set forth in those two cases.

*Id.* at 1069-70.

Thus, "the government must establish both a compelling interest and the least restrictive means to withstand a RFRA challenge." *Id.* at 1076. "The additional statutory requirement of a least restrictive means is triggered only by a finding that a substantial burden exists; that is the sole and threshold issue in this case. Absent a substantial burden, the government need not establish a compelling interest, much less prove it has adopted the least restrictive means." *Id.*

Unlike the Free Exercise Clause of the First Amendment, a challenged "exercise of religion" under RFRA includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb–2(4); *id.* § 2000cc–5(7)(A). "RFRA's amended definition of 'exercise of religion' merely expands the scope of what may not be substantially burdened from 'central tenets' of a religion to 'any exercise of religion.'" *Navajo Nation*, 535 F.3d at 1077. This amended definition "does not change what level or kind of interference constitutes a 'substantial burden' upon such religious exercise." *Id.*

### a. Plaintiffs Have Not Sufficiently Alleged a Substantial Burden

Under *Navajo Nation*, "[t]o establish a prima facie RFRA claim, a plaintiff must present evidence sufficient to allow a trier of fact rationally to find the existence of two elements. First, the activities the plaintiff claims are burdened by the government action must be an "exercise of

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

_____

religion. . . Second, the government action must 'substantially burden' the plaintiff's exercise of religion." *Id.* at 1068.  The court assumes—and the parties do not contest—that the activities at issue are an "exercise of religion."  *Id.*  But for the same reasons as discussed above in the court's analysis of Plaintiffs' Free Exercise claim, the court is not persuaded that Plaintiffs have plausibly alleged they were deprived of a government benefit under *Sherbert* or coerced to act contrary to their religious beliefs under *Yoder*.  *See Navajo Nation*, 535 F.3d at 1070.

        In this case, Plaintiffs have not plausibly alleged they were deprived of a government benefit or coerced to act contrary to their religious beliefs.  First, under *Sherbert*, Plaintiffs argue they were deprived of the benefit of being allowed to reenter the United States without protracted questioning.  (Opp. at 22.)  Plaintiffs do not sufficiently explain how such a benefit falls within the type of "government benefit" discussed in *Sherbert*.  (*See generally* Opp.)  To the contrary, case law regarding the government's authority at the border suggests no such benefit exists.  *See Flores-Montano*, 541 U.S. at 155 n.3 ("Respondent points to no cases indicating the Fourth Amendment shields entrants from inconvenience or delay at the international border . . . We think it clear that delays of one to two hours at international borders are to be expected."); *Haig*, 453 U.S. at 306 ("[T]he freedom to travel abroad . . . is subordinate to national security and foreign policy considerations; as such, it is subject to reasonable governmental regulation.  The Court has made it plain that the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States.") (emphasis in original).

        Second, under *Yoder*, Plaintiffs argue they are coerced to "choose between outward displays of religiosity and avoiding additional religious questioning" and thus refrain from physical acts of prayer, religious attire, carrying religious texts, and carrying a personal journal when traveling internationally.  (Opp. at 22-23.)  However, the Ninth Circuit has described the coercion contemplated by *Yoder* as an individual being "coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."  *Navajo Nation*, 535 F.3d at 1075.  In this case, the FAC does not sufficiently allege what civil or criminal sanctions were

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                                      Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*

threatened by Defendants.  (*See* FAC ¶ 72 (Plaintiff Kariye alleges a CBP officer told him that if he did not cooperate, "CBP would make things harder for him.").)  *See, e.g., Warsoldier v. Woodford*, 418 F.3d 989, 995-96 (9th Cir. 2005) (finding a substantial burden under RLUIPA where an inmate who refused to cut his hair in violation of his religious beliefs was "subjected to a series of punishments designed by CDC to coerce him into compliance" including confinement to his cell, being forced to work additional duty hours, and being expelled from prison classes).

Accordingly, the court finds that the Complaint does not plausibly allege Plaintiffs were deprived of the government benefit of reentering the United States without protracted questioning or that they were coerced to act contrary to their religious beliefs, such that Plaintiffs have not sufficiently alleged a substantial burden to sustain their RFRA claim.

**b. Plaintiffs Do Not Sufficiently Demonstrate Whether the Questioning is a Narrowly Tailored Means of Achieving a Compelling Government Interest**

Even if Plaintiffs had adequately alleged a substantial burden, Plaintiffs do not sufficiently demonstrate how Defendants' questioning is not a narrowly tailored means of achieving a compelling government interest.  (*See generally* Opp.)  As discussed above, there is no dispute that the government has a compelling interest in protecting its borders and preventing acts of terrorism.  *See Haig*, 453 U.S. at 307; *Humanitarian L. Project*, 561 U.S. at 28; *Flores-Montano*, 541 U.S. at 152 (2004); *Al Haramain Islamic Found.*, 686 F.3d at 980; *Tabbaa*, 509 F.3d at 103.  Plaintiffs' RFRA claim thus fails for the same reason as their Free Exercise claim—Plaintiffs do not sufficiently show why, even if the religious questioning were to constitute a substantial burden, that burden is not a narrowly tailored means of achieving the government's interest in protecting its borders and preventing acts of terrorism.  (*See generally* Opp.)  Accordingly, the court finds that even if Plaintiffs had sufficiently alleged a substantial burden, they have not plausibly alleged the questioning is not a narrowly tailored means of advancing a compelling government interest.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:22-cv-01916-FWS (GJSx)                    Date: July 19, 2023
Title: Abdirahman Aden Kariye *et al.* v. Alejandro Mayorkas *et al.*
_____

  Accordingly, the court **GRANTS** the Motion as to Plaintiffs' RFRA claim (Count 6).

## V. DISPOSITION

  For the reasons set forth above, Defendants' Motion is **GRANTED**.  Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.  Should Plaintiffs desire to file a Second Amended Complaint that addresses the issues in this ruling, Plaintiffs must file and serve it within **thirty (30) days** of service of notice of ruling.

  **IT IS SO ORDERED.**


         Initials of Deputy Clerk:  djl

_____