COOLEY LLP
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ALEXANDER K. BREHNAN (317776)
(abrehnan@cooley.com)
TAYLOR J. BOYLE (353178)
(TBoyle@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400

JOHN H. HEMANN (165823)
(jhemann@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Ashley Gorski (*pro hac vice*)
(agorski@aclu.org)
American Civil Liberties Union Foundation
125 Broad Street, Floor 18
New York, NY 10004
Telephone: +1 212 549 2500

*Counsel for Plaintiffs*
(See additional counsel listed below)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABDIRAHMAN ADEN KARIYE, MOHAMAD MOUSLLI, and HAMEEM SHAH,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, et al.,<br><br>Defendants. | Case No. 2:22-cv-01916-FWS-GJS<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL RE: LAW ENFORCEMENT PRIVILEGE**<br><br>Date: June 16, 2025<br>Time: 3:00pm<br>Dept: Ctrm 640<br>Judge: Hon. Gail J. Standish<br>Trial Date: November 3, 2026<br>Date Action Filed: March 24, 2022 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF RELEVANT FACTS ..............................................................2

III. LEGAL STANDARD .............................................................................................5

IV. ARGUMENT ..........................................................................................................5

    A. The Ninth Circuit has not recognized a law enforcement privilege......................................................................................................6

    B. The Protective Order obviates any need to recognize a law enforcement privilege. ..........................................................................7

    C. Defendants have not met the requirements necessary for an assertion of the privilege. ............................................................................9

    D. Plaintiffs' need for the withheld material outweighs any public interest in asserting the privilege. ...........................................................11

    E. In the alternative, the law enforcement privilege should be narrowly construed.................................................................................12

V. CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado, Inc. v. Wolf*,
　2020 WL 3487823 (S.D. Cal. June 26, 2020) ............................................... 11, 13

*In re Anthem, Inc. Data Breach Litig.*,
　236 F. Supp. 3d 150 (D.D.C. 2017) ................................................................... 9

*Bernat v. City of Cal. City*,
　2010 WL 4008361 (E.D. Cal. Oct. 12, 2010) ................................................... 13

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*,
　408 F.3d 1142 (9th Cir. 2005) ........................................................................... 10

*Chism v. Cnty. of San Bernardino*,
　159 F.R.D. 531 (C.D. Cal. 1994) ........................................................................ 9

*Conan v. City of Fontana*,
　2017 WL 2874623 (C.D. Cal. July 5, 2017) ....................................................... 8

*Est. of Solis v. Cnty. of Riverside*,
　2024 WL 4783819 (C.D. Cal. Sept. 19, 2024) ............................................. 6, 10

*Gulluni v. Levy*,
　85 F.4th 76 (1st Cir. 2023) ................................................................................ 13

*Hereford v. City of Hemet*,
　2023 WL 6813740 (C.D. Cal. Sept. 14, 2023) ........................................... *passim*

*Ibrahim v. DHS*,
　2009 WL 5069133 (N.D. Cal. Dec. 17, 2009), *vacated on other grounds*, 669 F.3d 983 (9th Cir. 2012) ................................................................ 13

*MacNamara v. City of New York*,
　249 F.R.D. 70 (S.D.N.Y. 2008) ..................................................................... 8, 10

*Roman v. Wolf*,
　2020 WL 6588399 (C.D. Cal. July 16, 2020) ................................................ 9, 10

# TABLE OF AUTHORITIES
## Continued

Page(s)

*In re Sealed Case*,
   856 F.2d 268 (D.C. Cir. 1988) ................................................................. 6, 11

*Stephens Produce Co. v. N.L.R.B.*,
   515 F.2d 1373 (8th Cir. 1975) ........................................................................ 7

*Tornay v. United States*,
   840 F.2d 1424 (9th Cir. 1998) ....................................................................... 5

*In re U.S. Dep't of Homeland Sec.*,
   459 F.3d 565 (5th Cir. 2006) ....................................................................... 12

*United States v. City of L.A.*,
   2023 WL 6370887 (C.D. Cal. Aug. 28, 2023) ......................................... 7, 12

*United States v. Marshall*,
   2010 WL 1409445 (D.S.D. Apr. 1, 2010) .................................................. 12

*United States v. O'Neill*,
   619 F.2d 222 (3d Cir. 1980) .......................................................................... 7

*United States v. Rodriguez-Landa*,
   2019 WL 653853 (C.D. Cal. Feb. 13, 2019) ............................................. 5, 7

*Wagafe v. Trump*,
   334 F.R.D. 619 (W.D. Wash. 2020) ........................................................... 13

*Wood v. Breier*,
   54 F.R.D. 7 (E.D. Wis. 1972) ........................................................................ 7

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-iii-

PLS' MEMO ISO MOTION TO COMPEL
2:22-CV-01916-FWS-GJS

## I. INTRODUCTION

This case challenges Defendants' unconstitutional policy and/or practice of discriminatory religious questioning of Muslim Americans when they return home from abroad. Plaintiffs Imam Abdirahman Aden Kariye, Mohamad Mouslli, and Hameem Shah were singled out by Defendants for such questioning on ten separate occasions during "secondary inspections" at ports of entry across the country.

Plaintiffs bring this motion to compel because Defendants have asserted the "law enforcement privilege," which the Ninth Circuit has not recognized, to redact information from many of the documents produced in discovery. These include reports discussing the questioning of Plaintiffs, which are kept in a government database called "TECS" and are retained for up to 75 years ("TECS Reports"). Defendants have also wrongly invoked this privilege to avoid fully answering interrogatories ("ROGs") and responding to Requests for Production ("RFPs").[1] But even if the law enforcement privilege could generally shield the production of documents (it cannot), it is inapplicable here because the parties agreed to a Protective Order to address the precise types of information that Defendants are now trying to improperly withhold. Even courts that recognize the law enforcement privilege reject its application when the parties enter into protective orders just like the one here. Defendants cannot now try to undo that agreement to shield information

---

[1] Plaintiffs have concurrently filed a separate motion to compel regarding Defendants' failure to produce documents and information in response to Plaintiffs' discovery requests.

that they do not want Plaintiffs to see. Absent the Court's intervention, Defendants will undoubtedly continue to invoke the law enforcement privilege to refuse to disclose discoverable information. Defendants may also try to interfere with depositions by instructing witnesses not to answer questions based on the privilege.

As a result, the Court should (1) hold that the law enforcement privilege is not applicable to this case; and (2) order Defendants to produce unredacted versions of the documents that rely on the privilege, provide complete responses to the interrogatories they objected to on the basis of the privilege, and cease invoking the privilege in this case going forward. In the alternative, if the Court finds that the law enforcement privilege applies here, it should construe the privilege much more narrowly than Defendants urge and order Defendants to remove certain redactions and provide supplemental responses to interrogatories.

## II.    STATEMENT OF RELEVANT FACTS

On March 24, 2022, Plaintiffs filed this lawsuit. ECF No. 1.[2] Defendants soon after raised the need for a comprehensive protective order ("Protective Order"), which the parties extensively negotiated and agreed to on September 13, 2022. ECF No. 53. At Defendants' behest, the Protective Order provided for the disclosure to Plaintiffs of confidential information, including:

> Information that is otherwise sensitive, but unclassified, which the agency determines is not appropriate for public release, and the disclosure of which is reasonably expected to cause harm to law

---

[2] Plaintiffs filed an amended complaint ("Amended Complaint") on November 14, 2022. ECF No. 61.

enforcement interests, which may include records regarding law enforcement activities and operations staffing, priorities, resources, intelligence, methods, and internal investigations, and those portions of internal policies, processes, and training materials that contain information that is law enforcement sensitive, for instance, (a) records that might contain tactical and other information related to law enforcement activities not made available by the Government to the general public that could be adversely used to circumvent law enforcement efforts or (b) information that may be protected from public disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(E), and is not subject to other restrictions on disclosure.

*Id.*, Protective Order § B.d. On April 4, 2023, Defendants responded to Plaintiffs' first set of discovery requests, asserting the "law enforcement privilege" in response to 19 of 21 RFPs and 8 of 12 ROGs. Exs. 1, 2. Also on April 4, 2023, Defendants produced four TECS Reports with heavy redactions.[3] *See e.g.*, Exs. 3, 4. On May 2, 2023, Plaintiffs sent a letter to Defendants, objecting to Defendants' redactions and to their assertions of the law enforcement privilege. Ex. 5.

Soon after the case was reinstated in the District Court,[4] Plaintiffs renewed their opposition to the redactions in the four TECS Reports. Ex. 6 at 41. On a December 17, 2024 call, Defendants confirmed they would stand on their assertions of the law enforcement privilege. Declaration of Alexander Brehnan ("Decl.") ¶ 7. On December 18, Plaintiffs reiterated that the privilege does not apply given that the

---

[3] Given that Defendants' redactions are mostly uniform across TECS Reports, Plaintiffs attach as exhibits a representative example of each type of TECS Report at issue. *See* Exs. 3, 4, 8, 9 & 10.

[4] On September 5, 2023, the District Court entered judgment in favor of Defendants after granting their motion to dismiss. ECF No. 81. The Ninth Circuit reversed the dismissal, *see* ECF No. 89, and the case was reinstated in the District Court on November 26, 2024, *see* ECF No. 90.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

PLS' MEMO ISO MOTION TO COMPEL
2:22-CV-01916-FWS-GJS

Ninth Circuit has not recognized it and the fact that the Protective Order addresses any concerns that the privilege would seek to protect. Ex. 6 at 33.

On February 7, 2025, Defendants made their second production of documents, consisting of 29 TECS Reports, all of which included redactions, many extensive. *See, e.g.*, Exs. 3, 4, 8, 9 & 10. On February 18, 2025, Defendants provided a privilege log covering the first and second productions. Ex. 11. The privilege log listed the Bates number of each document with redactions, cited the law enforcement privilege as the basis for withholding, and provided the same "description of withheld information" for each document that mimicked the language of the Protective Order:

> Portions of TECS records containing information subject to the law enforcement privilege: information relating to law enforcement operations, methods, techniques, and procedures (including inspection methods); and information which would reveal the nature, scope and focus of certain law-enforcement processes, techniques and methods. If disclosed, individuals may be able to discern the meaning of the codes or could infer particular law enforcement interest regarding subjects, which could be detrimental to how CBP conducts its law enforcement operations. . . .

*Id.* In an accompanying email, Defendants explained their view on the applicability of the law enforcement privilege. Ex. 7 at 8. Following Plaintiffs' lengthy refutation of Defendants' arguments, *see id.* at 5-7, Defendants stated that the parties were at a "standstill." *Id.* at 4-5. Plaintiffs agreed. *Id.* at 3.

Defendants' third production, made on March 14, 2025, included 37 redacted TECS Reports. *See, e.g.*, Exs. 3, 4, 8, 9 & 10. Defendants provided an almost identical privilege log, listing the same exact justification from the first log. Ex. 12.

On April 4, Defendants responded to Plaintiffs' second set of discovery requests. Defendants asserted the law enforcement privilege in response to 8 of 12 ROGs and 6 of 7 RFPs. Exs. 13, 14. At an April 11 meet and confer, Defendants confirmed that they were standing by their invocations of the privilege. Decl. ¶ 14; Ex. 15 at 2.[5]

## III.  LEGAL STANDARD

The party asserting a privilege bears the burden of establishing the privilege exists and applies. *See Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1998). The Ninth Circuit has not recognized the law enforcement privilege. *United States v. Rodriguez-Landa*, 2019 WL 653853, at *16 (C.D. Cal. Feb. 13, 2019) ("Neither the Ninth Circuit nor the Supreme Court have recognized a law enforcement privilege. . . . The Court declines to recognize it here."). Even courts that do recognize the privilege have held that it is not absolute, and "[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988) (describing factors courts consider in striking this balance).

## IV.  ARGUMENT

Defendants' assertion of the law enforcement privilege to withhold

---

[5] After the parties' meet and confer, Defendants made three additional productions. Decl. ¶¶ 18, 19 & 20. The productions include TECS Reports, policy documents, and other materials with redactions. Several of the policy documents are almost fully redacted. *Id.* On April 25, 2025, Defendants confirmed that all redactions in these productions were pursuant to the law enforcement privilege. *Id.* ¶ 21.

discoverable information from Plaintiffs is improper. As an initial matter, the Court should decline to recognize such a privilege. Regardless, even if such a privilege exists, it would not apply to this case. The parties negotiated a Protective Order to address the exact concerns Defendants now raise in asserting the privilege. Further, Defendants have not met a single procedural requirement necessary for an invocation of the privilege, nor shown a public interest in withholding the information that outweighs Plaintiffs' need for the material. In the alternative, if the Court were to find that the privilege applies here, its scope is far narrower than Defendants contend.

### A. The Ninth Circuit has not recognized a law enforcement privilege.

Both the Supreme Court and the Ninth Circuit "have yet to recognize or reject a 'law enforcement privilege.'" *Est. of Solis v. Cnty. of Riverside*, 2024 WL 4783819, at *9 (C.D. Cal. Sept. 19, 2024) (quoting *Shah v. Dep't of Just.*, 714 F. App'x 657 n.1 (9th Cir. 2017)); *Hereford v. City of Hemet*, 2023 WL 6813740, at *10 (C.D. Cal. Sept. 14, 2023) (similar).[6] Other circuits have rejected it for the same reasons this Court should decline to recognize it. *See, e.g.*, *United States v. O'Neill*, 619 F.2d 222, 229–30 (3d Cir. 1980) ("We know of no Supreme Court case which provides support for such a broad amorphous Government privilege").[7] The application of a law

---

[6] District courts in this Circuit are split as to whether there is a law enforcement privilege that can shield the production of documents and information. Compare *Rodriguez-Landa*, 2019 WL 653853, at *16 (declining to recognize the privilege), with *United States v. City of L.A.*, 2023 WL 6370887, at *18 (C.D. Cal. Aug. 28, 2023) (recognizing and applying the privilege).

[7] Even the circuits that have recognized the privilege have held it is "a very narrow one" that "cannot be utilized by executive agencies to indiscriminately hide all

enforcement privilege to civil discovery risks "indefinitely frustrat[ing] the operation of the Federal Rules, the liberal discovery practices established by those Rules and—most importantly—the vigorous enforcements of the civil rights statutes." *Hereford*, 2023 WL 6813740, at *18 (citation omitted). Accordingly, this Court should decline to recognize the law enforcement privilege.

### B. The Protective Order obviates any need to recognize a law enforcement privilege.

Nevertheless, the Court may decide this discovery dispute without reaching the question of whether the law enforcement privilege should be recognized. The Court need only look to the parties' Protective Order, which addresses the exact interests Defendants assert in invoking the privilege. Indeed, the parties expressly negotiated the Protective Order to address these concerns. The Protective Order defines as "Confidential" information where "disclosure . . . is reasonably expected to cause harm to law enforcement interests," including regarding "law enforcement ***activities*** and ***operations*** staffing . . . ***intelligence***, ***methods***, [ ] ***internal investigations***, . . . ***internal policies, processes***, ***and training***" that is "law enforcement sensitive" and could be "***used to circumvent law enforcement efforts***."

---

nominally 'investigatory materials' from public scrutiny." *Stephens Produce Co. v. N.L.R.B.,* 515 F.2d 1373, 1377 (8th Cir. 1975). The privilege "should not be lightly invoked by the Government, for by invoking the privilege the case before the court may become a mockery with 'half-informed litigants who sometimes get justice, if at all, by accident.'" *Wood v. Breier*, 54 F.R.D. 7, 11 (E.D. Wis. 1972).

ECF No. 53, Protective Order § B.d (emphasis added).[8] This is essentially the same interest Defendants assert in their privilege logs: that the redacted information relates to "law enforcement ***operations, methods, techniques, and procedures***" and "would reveal ***the nature, scope and focus of certain law-enforcement processes, techniques and methods***." Exs. 11, 12. (emphasis added).[9] The similarities between the Protective Order and the privilege log are not a coincidence.

Courts reject the withholding of discovery pursuant to the law enforcement privilege where, as here, a protective order averts the "the potential harm of disclosure to the public." *Conan v. City of Fontana*, 2017 WL 2874623, at *5 (C.D. Cal. July 5, 2017); *see also MacNamara v. City of New York*, 249 F.R.D. 70, 91 (S.D.N.Y. 2008) (noting that "the risk that disclosure will '[weaken][]' law enforcement programs . . . may be sufficiently addressed through production of these portions of the report pursuant to the Protective Orders."); *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 167 (D.D.C. 2017) ("[D]isclosure of these materials simply does not carry the risks the Government anticipates [because] [f]irst and foremost, all the materials to be disclosed will be covered by the protective order in the underlying litigation.").

---

[8] All of the redacted documents at issue have been marked "confidential" under the Protective Order.

[9] The Protective Order should similarly preclude Defendants' invocation of the privilege to withhold documents in their entirety and to withhold responses to Plaintiffs' ROGs. *See* Exs. 1, 2, 13, 14. With respect to these withholdings, Defendants have not provided *any* justification for their assertion of the privilege.

Thus, with the parties' carefully crafted Protective Order in place, the Court need not decide whether the law enforcement privilege should apply. Because the Protective Order addresses Defendants' concerns, their invocation of the privilege to withhold discovery from Plaintiffs is improper.

### C. Defendants have not met the requirements necessary for an assertion of the privilege.

Even if the Court were to recognize the law enforcement privilege, Defendants' invocation of the privilege must be rejected because they have not complied with the requirements for asserting it. To invoke the privilege:

> (1) there must be a formal claim of privilege by the head of the department having control over the requested information, (2) assertion of the privilege must be based on actual personal consideration by that official, and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

*Roman v. Wolf*, 2020 WL 6588399, at *2 (C.D. Cal. July 16, 2020).

Here, Defendants did not provide a declaration "by the head of the department with control over the requested information." *Hereford*, 2023 WL 6813740, at *11; *see also Chism v. Cnty. of San Bernardino*, 159 F.R.D. 531, 533 (C.D. Cal. 1994). Defendants have not provided a declaration at any point since producing the first redacted TECS Reports **in April 2023**. By the same token, Defendants have provided no evidence that the assertion of the privilege was "based on actual personal consideration by that official." *Roman*, 2020 WL 6588399, at *2.

Even more importantly, Defendants have failed to explain what information falls under the privilege with the required specificity. *See MacNamara*, 249 F.R.D. at 90 ("[I]t is well-settled that . . . the party asserting the privilege must make a substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials," and "mere conclusory or *ipse dixit* assertions" do not suffice.) (cleaned up). Yet Defendants have only provided a single, general statement in describing information redacted from documents—which is repeated throughout their privilege logs—without even attempting to meet the requisite specificity for any of them. *See* Section II *supra*. This is inadequate.

*Estate of Solis*, 2024 WL 4783819, at *9, is instructive. There, defendants' assertions "simply contain[ed] generalities that these types of documents may contain investigative materials," just like here. *Id*. The defendants' claims were generalized to entire documents, rather than being redaction- or page-specific, like here. *Id*. As in *Est. of Solis*, Defendants have not met their burden to invoke the privilege. *Id*.

In asserting the law enforcement privilege in response to Plaintiffs' ROGs and RFPs, Defendants provide even less explanation. Exs. 1, 2, 13 & 14. Such "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

### D. Plaintiffs' need for the withheld material outweighs any public interest in asserting the privilege.

Even if Defendants could overcome their procedural faults in their assertion of the privilege, Plaintiffs' need for the material far outweighs any purported public interest in concealing it. *See In re Sealed Case*, 856 F.2d at 272 (litigant's need for access to privileged information may overcome the government's interest in nondisclosure); *Hereford*, 2023 WL 6813740, at *4 ("The balancing approach in civil rights cases is moderately pre-weighted in favor of disclosure." (citation omitted)).

Simply put, Plaintiffs' need for the redacted material—which concerns their encounters with Defendants—and for complete answers to their interrogatories is great. *Al Otro Lado, Inc. v. Wolf*, 2020 WL 3487823, at *5 (S.D. Cal. June 26, 2020) ("Where 'the potential benefits of disclosure outweigh the potential disadvantages,' the privilege will be 'set aside.'"). Redacted material may reveal crucial information related to Defendants' practice of religious questioning. *Hereford*, 2023 WL 6813740, at *12 (ordering production of documents that could reveal "a pattern" of conduct where plaintiffs alleged "a larger [ ] custom").

Further, Defendants' interests are weak at best. Defendants only contend that the disclosure of the redacted information "*could* be detrimental to how CBP conducts its law enforcement operations" and would enable "interfere[nce] with enforcement proceedings." Exs. 11, 12. (emphasis added). But other than those conclusory assertions, Defendants provide insufficient detail for Plaintiffs and the

Court to assess the strength or weaknesses of any purported interest.

In any event, even if the law enforcement privilege were recognized in this Circuit; even if it had not been adequately addressed by the Protective Order; and even if it may have been applicable at some point, any applicability has since lapsed. Four to eight years have passed since the incidents at issue, and there is no indication that Defendants are investigating Plaintiffs in this matter. *United States v. Marshall*, 2010 WL 1409445, at *4 (D.S.D. Apr. 1, 2010) (finding privilege could not apply "because the investigation of [defendant] is not 'ongoing,' and that a reasonable time has passed following the close of the investigation"); *Hereford*, 2023 WL 6813740, at *17 ("[T]his Court would not allow the indefinite assertion of the ongoing investigation privilege to unreasonably delay the progress of this case and frustrate the interests of justice." (cleaned up)); *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 571 (5th Cir. 2006) ("[T]he law enforcement privilege is bounded by relevance and time constraints" and "lapses after a reasonable period of time."). Plaintiffs' need for the withheld material far outweighs any purported public interest.[10]

### E. In the alternative, the privilege should be narrowly construed.

Even if the Court finds the law enforcement privilege applies, Defendants have asserted it far too broadly, and the Court should order Defendants to considerably

---

[10] In correspondence, Defendants cite *City of L.A.*, 2023 WL 6370887. Ex. 7 at 8. However, in that case, the plaintiff had only a "nominal need" for the information in question—unlike here, where the law enforcement privilege is being used to redact information from documents that are unique records of the incidents central to Plaintiffs' theory.

narrow their redactions. *Bernat v. City of Cal. City,* 2010 WL 4008361, at *6 (E.D. Cal. Oct. 12, 2010) (the law enforcement privilege is evaluated "in light of each particular request"); *Al Otro Lado*, 2020 WL 3487823, at *3 (documents' relevance to a "significant litigation event" overcomes the law enforcement privilege).

*First*, Defendants must disclose the text in the free-text fields of the TECS Reports.[11] *See, e.g.*, Exs. 4, 9, 10. This text is highly probative because it is the only place where Defendants recount their encounters with Plaintiffs.[12] *See Wagafe v. Trump*, 334 F.R.D. 619, 625 (W.D. Wash. 2020) ("The withheld information . . . is directly relevant to Plaintiff's claims and does not appear to be obtainable from alternative sources."); *Ibrahim v. DHS*, 2009 WL 5069133, at *15 (N.D. Cal. Dec. 17, 2009) ("When the records are both relevant and essential to the presentation of the case on the merits, the need for disclosure outweighs the need for secrecy, and the privilege is overcome."), *vacated on other grounds*, 669 F.3d 983 (9th Cir. 2012); *Gulluni v. Levy*, 85 F.4th 76, 85 (1st Cir. 2023) ("The interest of the party seeking disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources.").

*Second*, Defendants must disclose information that would enable Plaintiffs to

---

[11] In the TECS Secondary Inspection Reports, the free-text fields are referred to as "Comments History" and "Referral Reason History." In the TECS Person Query Detail Reports and TECS Electronic Media Reports, the fields are called "Remarks."

[12] To the extent that the text at the top of two other TECS Reports—the CBP Encounter Hit Lists and CBP Secondary Inspection Lists—is related to the Plaintiffs, it too must be disclosed for the same reasons. Exs. 3, 8.

effectively pursue discovery. In the TECS Secondary Inspection Reports, for example, Defendants redacted the fields "Create Incident Log," "Incident Log Report #," and "Create EMR."[13] *See, e.g.*, Ex. 17. Without this information, Plaintiffs cannot determine whether they have received all discovery they are due.

*Third*, Defendants must disclose whether the "Chief Council" [sic] was notified about each incident.[14] *See, e.g.*, Ex. 16. The CBP Chief Counsel serves as the agency's ethics officer.[15] This information is highly relevant in understanding whether Defendants view their religious questioning as routine—and not warranting consultation with the ethics officer—or whether they felt it required consultation.

*Fourth*, Defendants must disclose the portions of the TECS Reports that reveal the reasons Plaintiffs were sent to secondary inspection.[16] This information is highly relevant because it relates to Defendants' basis for questioning Plaintiffs.

*Fifth*, Defendants must disclose all information in the TECS Reports that has been made available to Plaintiffs through Freedom of Information Act requests. *See, e.g.*, Exs. 16, 17. Any justification for the privilege fails when the same information

---

[13] EMR stands for "Electronic Media Report." Plaintiffs are aware of these fields through FOIA-obtained records.
[14] This field is on TECS Person Query Detail Reports, as listed in FOIA records.
[15] *See Chief Counsel*, U.S. Customs & Border Protection, https://www.cbp.gov/about/leadership-organization/chief-counsel.
[16] The relevant fields are: (1) in TECS Secondary Inspection Reports, Referral Reason; Encounter type; Referring Officer Code; Reason for Referral Code; Referral Code; (2) in TECS Person Query Detail Reports, TSDB Encountered; JTTF Response; Referring Officer Code; Reason for Search; and (3) in TECS Electronic Media Reports, Reason for Search. *See, e.g.*, Exs. 4, 9, 10, 16 & 17.

has been disclosed to Plaintiffs by the very same agency.

*Sixth*, Defendants must provide complete answers to all interrogatories and cannot rely on the privilege to truncate their answers. With only blanket assertions, Plaintiffs have no way to determine Defendants' specific rationale for claiming the privilege in response to 16 of 24 interrogatories. Exs. 2, 13. Regardless, as stated above, Plaintiffs' need for the information in the interrogatories—which goes directly to the heart of this case—far outweighs any purported law enforcement concerns.

Defendants' withholdings are extensive. In the event the Court allows any withholdings to remain, Plaintiffs respectfully ask that—at a minimum—the categories of information described above be made available.[17]

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court find Defendants' assertion of the law enforcement privilege improper and order Defendants to re-issue previously produced documents with no (or limited) redactions and to provide complete responses to all interrogatories.

---

[17] Although Plaintiffs contest the application of the privilege more broadly, in the interests of compromise, Plaintiffs are not seeking to compel the disclosure of information in the TECS Reports appearing under the following codes: "Site Id," "CCD Used," "Vehicle Search," "Positive/Negative Inspection," "X-Ray/NII Utilized for this Inspection," "Create PLOR," "EMR Number" (appearing in TECS Secondary Inspection Reports); "Incident Number," "Incident Type," "Approval Status," "Port Code," "Site Code," "Personal Search Performed" (appearing in the TECS Person Query Detail Reports); "Report Number," "Port Code," "Exam Result," "Action," "Action Status," "Additional Information" (appearing in the TECS Electronic Media Reports). *See, e.g.*, Exs. 4, 9, 10, 16 & 17.

Dated: May 15, 2025

COOLEY LLP
JOHN HEMANN (165823)
BRETT H. DE JARNETTE (292919)
ALEXANDER K. BREHNAN (317776)
TAYLOR BOYLE (353178)

By: */s/ Alexander K. Brehnan*
    Alexander K. Brehnan

Ashley Gorski (*pro hac vice*)
(agorski@aclu.org)
ACLU Foundation
125 Broad Street, Floor 18
New York, NY 10004
Telephone: +1 212 549 2500

Mohammad Tajsar (SBN 280152)
(mtajsar@aclusocal.org)
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Telephone: +1 213 977 9500

Daniel Mach (*pro hac vice*)
(dmach@aclu.org)
Heather L. Weaver (SBN 226853)
(hweaver@aclu.org)
ACLU Foundation
915 15th St., NW Ste. 600
Washington, DC 20005
Telephone: +1 202 675 2330

Teresa Nelson (*pro hac vice*)
tnelson@aclu-mn.org
ACLU of Minnesota
P.O. Box 14720
Minneapolis, MN 55415
Telephone: +1 651 645 4097

Attorneys for Plaintiffs
ABDIRAHMAN ADEN KARIYE,
MOHAMAD MOUSLLI, and
HAMEEM SHAH

318141563