COOLEY LLP
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ALEXANDER K. BREHNAN (317776)
(abrehnan@cooley.com)
TAYLOR J. BOYLE (353178)
(TBoyle@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400

JOHN H. HEMANN (165823)
(jhemann@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Ashley Gorski (*pro hac vice*)
(agorski@aclu.org)
American Civil Liberties Union Foundation
125 Broad Street, Floor 18
New York, NY 10004
Telephone: +1 212 549 2500

*Counsel for Plaintiffs*
(See additional counsel listed below)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ABDIRAHMAN ADEN KARIYE, MOHAMAD MOUSLLI, and HAMEEM SHAH,

Plaintiffs,

v.

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, et al.,

Defendants.

Case No. 2:22-cv-01916-FWS-GJS

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Date: June 16, 2025
Time: 3:00pm
Dept: Ctrm 640
Judge: Hon. Gail J. Standish
Trial Date: November 3, 2026
Date Action Filed: March 24, 2022

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. STATEMENT OF RELEVANT FACTS ..... 2

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. Plaintiffs are entitled to certain documents and information related to Plaintiffs' core claims. ..... 5

B. In particular, Plaintiffs are entitled to documents and information from the officers involved in Plaintiffs' secondary inspections. ..... 10

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Bible v. Rio Props., Inc.*, 246 F.R.D. 614 (C.D. Cal. 2007) .......... 5, 7

*Pashaie v. H77LA, LLC*, 2024 WL 4800698 (C.D. Cal. Sept. 9, 2024) .......... 11

*Pleasant v. Miranda*, 2021 WL 829735 (C.D. Cal. Jan. 25, 2021) .......... 12, 13

*Probuilders Specialty Ins. Co. v. Valley Corp.*, 2012 WL 6045753 (N.D. Cal. Nov. 28, 2012) .......... 8

*Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295 (D. Kan. 1996) .......... 8, 9

*United States ex rel. Brown v. Celgene Corp.*, 2015 WL 12731923 (C.D. Cal. July 24, 2015) .......... 5

*Wachuku v. JetBlue Airways Corp.*, 2021 WL 4497157 (C.D. Cal. Apr. 29, 2021) .......... 11

### Statutes

5 U.S.C. § 552a(b)(11) .......... 12

### Other Authorities

Fed. R. Civ. P.
26(b)(2)(B) .......... 6
26(g)(1) .......... 13

Zolan Kanno-Youngs, Hamed Aleaziz, Adam Goldman, & Eileen Sullivan, *Trump Shuts Down 3 Watchdog Agencies Overseeing Immigration Crackdown*, N.Y. Times (Mar. 21, 2025) .......... 7

## I. INTRODUCTION

When Plaintiffs Imam Abdirahman Aden Kariye, Mohamad Mouslli, and Hameem Shah return to the United States from traveling abroad, U.S. border officers routinely single them out as Muslims and ask demeaning questions about their faith, such as "How many times a day do you pray?" and "How religious do you consider yourself?" These types of questions are invasive, irrelevant to border security, and unconstitutional. Plaintiffs, who are U.S. citizens, have been detained and subjected to this religious questioning ten separate times in lengthy "secondary inspections" at ports of entry across the country. Border officers ask these unconstitutional questions pursuant to a broader policy and/or practice of discriminatory religious questioning.

Accordingly, information about religious questioning and secondary inspections—stored in government databases like "TECS," in various DHS offices, and in border officers' work phones—is indisputably relevant to Plaintiffs' claims. Yet Defendants refuse to produce key documents from these sources. For example, Defendants have refused to search for TECS documents concerning the religious questioning of individuals other than Plaintiffs, even though these documents go to the heart of Plaintiffs' claims about Defendants' broader policies and practices. Defendants have also refused to name all border officers who were involved in the ten incidents of religious questioning of Plaintiffs, produce those officers' performance reviews, and search each officer's work phone for communications from before 2023—even though the incidents alleged by Plaintiffs took place before

2023.

For the reasons below, the Court should compel Defendants to produce documents and information responsive to Plaintiffs' requests for production and Plaintiff Kariye's interrogatories. In addition, the Court should order Defendants to preserve and produce third-party complaints and allegations of religious questioning in the possession of the DHS Office for Civil Rights and Civil Liberties ("DHS CRCL"), the DHS office primarily responsible for collecting and investigating such complaints. In March 2025, the new administration shut down DHS CRCL. As a result, it is unclear whether the office's documents are even being preserved.[1]

## II. STATEMENT OF RELEVANT FACTS

On March 24, 2022, Plaintiffs filed this lawsuit, challenging Defendants' religious questioning as violating the right to equal protection, the Free Exercise Clause, the First Amendment right to free association, and the Religious Freedom Restoration Act. Mr. Shah also challenges Defendants' retaliatory actions as a separate First Amendment violation. ECF No. 1. On November 14, 2022, Plaintiffs filed an amended complaint ("Amended Complaint" or "Am. Compl."). ECF No. 61.

On November 15, 2022, Plaintiffs served their first set of written discovery requests on Defendants. Exhibits 1, 2.[2] Plaintiffs' requests for production ("RFPs")

---

[1] Plaintiffs concurrently move to compel information that was redacted in the documents Defendants did produce based on a "law enforcement privilege."

[2] "Exhibit" or "Ex." refers to the exhibits attached to the Declaration of Alexander K. Brehnan filed concurrently with this Motion.

seek, among other things: (1) reports from the TECS database[3] ("TECS Reports") concerning any person's religious questioning during secondary inspection (RFP 14); (2) complaints and allegations related to religious questioning or to retaliation on the basis of religion or the invocation of a constitutional right, including from DHS CRCL (RFPs 11, 18, 19); and (3) complaints about and performance reviews of the officers involved in the religious questioning of Plaintiffs (RFPs 16, 17). Ex. 1. Plaintiffs seek these and other relevant documents in Defendants' possession, custody, or control, including on selected custodians' work phones. Ex. 5 at 3, 6, 8–9; Ex. 12 at 3. Plaintiff Kariye's interrogatories ("ROGs") seek, among other things, the identities of all officers who participated in, were present at, or who supervised the ten secondary inspections involving the religious questioning of Plaintiffs (ROG 7). Ex. 2.

In response, on April 4, 2023, Defendants produced 17 documents. Declaration of Alexander K. Brehnan ("Brehnan Decl.") ¶ 24. On September 5, 2023, the District Court entered judgment for Defendants. ECF No. 81. But on October 4, 2024, the Ninth Circuit vacated the judgment and remanded for further proceedings. ECF No. 89. The mandate issued on November 26, 2024. ECF No. 90. Shortly thereafter, Plaintiffs sought to meet and confer about their outstanding discovery requests. Ex. 5 at 41. For months, from February into April, Plaintiffs repeatedly asked Defendants

[3] The TECS database is the main DHS repository of documents recounting what occurred at secondary inspections.

to commit to dates for production for certain RFPs. Defendants repeatedly refused to do so and only made limited productions. Ex. 7 at 2–3; Ex. 9 at 3–8. Because of these delays, the parties were forced to seek an extension of discovery, which the District Court granted on April 29. ECF No. 104.

Plaintiffs bring the instant motion because Defendants refuse to search critical sources of information bearing directly on Plaintiffs' claims.[4] Defendants have not searched for, let alone produced, any TECS Reports related to non-Plaintiffs subjected to religious questioning. Nor have they produced complaints or allegations of religious questioning lodged with DHS CRCL—one of the main sources of complaints. And they have not produced complaints about, performance reviews of, or communications from the border officers involved in the religious questioning of Plaintiffs.

## III. LEGAL STANDARD

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to answer an interrogatory submitted under Rule 33" or "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). This Court "enjoys broad discretion

[4] Defendants confirmed their refusal to produce the documents and information sought in this motion during the April 11, 2025 meet and confer. Ex. 18 at 2–3. To date, Defendants have produced 245 documents, limited to TECS Reports about the secondary inspections of Plaintiffs, general policy documents and DHS privacy assessments, and complaints and supporting materials about the religious questioning of third parties that were in the possession of the CBP Joint Intake Center. *See* Brehnan Decl. ¶ 24. Most of the documents produced to date—149 out of the 245—were produced after the parties met and conferred on April 11 in advance of filing this motion. *Id.*

when resolving discovery disputes." *United States ex rel. Brown v. Celgene Corp.*, 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015).

## IV. ARGUMENT

### A. Plaintiffs are entitled to certain documents and information related to Plaintiffs' core claims.

Defendants failed to produce documents in response to the following RFPs and ROG that Plaintiffs served in November 2022.

**RFP 14** seeks all documents from the TECS database that concern any person's religious beliefs, practices, or associations and questioning at ports of entry.[5] Ex. 1 at 15:23–17:3. These reports are highly relevant because they speak to Defendants' policy and/or practice of religious questioning, which is at the core of Plaintiffs' claims. *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 619 (C.D. Cal. 2007) ("prior complaints of injury from situations similar to that which caused plaintiff's injury" were relevant to plaintiff's claims).

Defendants do not dispute that TECS Reports about non-Plaintiff travelers are relevant. Rather, Defendants claim that searching the TECS database is unduly burdensome and thus not required because multiple fields in the database—including the fields containing the substantive summaries of border encounters—are "not text-searchable."[6] Ex. 1 at 15:23–17:3. But Defendants flatly refused to consider standard

[5] The Parties negotiated a date range of January 1, 2013 to the present for this RFP. Ex. 5 at 26.

[6] Defendants explained that while the TECS database can be searched on the frontend by name, date of birth, or the like, it could not be searched by keywords on the frontend. Brehnan Decl. ¶ 3.

e-discovery techniques that could facilitate keyword searches of those fields, like certain methods that could be used to query the database from the backend. Valentine Decl. ¶¶ 7–8; Brehnan Decl. ¶ 3; Ex. 5 at 3, 5, 8, 10; Ex. 12 at 4. Nor did Defendants provide any details (as they are obligated to do) corroborating their claim that such a search would be unduly burdensome. Fed. R. Civ. P. 26(b)(2)(B) ("On motion to compel . . . the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."). Plaintiffs even offered for counsel's e-discovery team to meet with government IT personnel to determine the most efficient way to make the TECS database searchable. Brehnan Decl. ¶¶ 2–3; Ex. 5 at 2; Ex. 7 at 1–2, 5; Ex. 8 at 1; Ex. 9 at 8. Defendants declined.[7] Ex. 13 at 3.

The importance of TECS Reports referencing additional incidents of religious questioning outweighs any purported burden on Defendants—a burden that they have not even attempted to mitigate. The Court should require Defendants to employ standard e-discovery practices and render the TECS database text-searchable. Alternatively, the Court should order Defendants to have the TECS database administrator or other knowledgeable technician meet with Plaintiffs' e-discovery experts or vendor to have good-faith discussions on how to make the TECS database text-searchable.

---

[7] Defendants claimed that they could not agree to the meeting due to concerns that the TECS database administrator could divulge sensitive information about the database. Ex. 13 at 3. But Plaintiffs offered to have counsel for both parties on the call to supervise the exchange, if necessary. Brehnan Decl. ¶ 3.

**RFPs 11, 18, 19** seek documents concerning complaints and allegations of (1) religious questioning and (2) retaliation on the basis of religion or the invocation of a constitutional right.[8] Ex. 3 at 13:3–14:5; 19:1–21:5. Similar to the TECS Reports, these complaints and allegations are highly relevant because they relate to non-Plaintiffs who suffered comparable injuries and help illustrate Defendants' policy and/or practice of religious questioning. *Bible*, 246 F.R.D. at 619.

Defendants do not dispute that these documents are relevant, but thus far they have failed to produce them directly from DHS CRCL—a critical source of complaints.[9] *See, e.g.*, ECF No. 61, Am. Compl. ¶¶ 17–22 (In 2011, 2019, and 2020, DHS CRCL said it had received and was investigating complaints "alleging that [border] officers have engaged in inappropriate questioning about religio[n]" during secondary inspection.); Ex. 5 at 28; Ex. 10 at 2–3; Ex. 13 at 2. Indeed, Defendants agreed to search and produce documents from DHS CRCL. Ex. 3 at 16:20–17:3; 19:21–26. But last month, the Trump administration in effect closed the office.[10] Since then, despite multiple inquiries over email and calls, Defendants have been unable to confirm whether responsive documents from DHS CRCL are being preserved—let alone whether and when Defendants will be able to search the office

[8] The Parties negotiated a date range of January 1, 2013 to the present for these RFPs. Ex. 5 at 26.

[9] Defendants have produced some documents from DHS CRCL that had been forwarded to the CBP Joint Intake Center, but that fact does not eliminate Defendants' obligation to produce responsive documents from DHS CRCL itself.

[10] Zolan Kanno-Youngs, Hamed Aleaziz, Adam Goldman, & Eileen Sullivan, *Trump Shuts Down 3 Watchdog Agencies Overseeing Immigration Crackdown*, N.Y. Times (Mar. 21, 2025), https://www.nytimes.com/2025/03/21/us/politics/trump-civil-rights-homeland-security-deportations.html.

for responsive documents. Ex. 10 at 1, 3; Ex. 18 at 1.

Thus, Plaintiffs request that the Court order Defendants to (1) preserve documents under DHS CRCL's possession or control and confirm that they have done so, and (2) produce all responsive documents from DHS CRCL within 30 days after the Court's decision on this motion, to minimize the risk that responsive documents are destroyed.

**ROG 7** asks Defendants to identify each and every one of the "agents, officers, or officials who [(1)] participated in, [(2)] were present at, or [(3)] supervised" any officer involved in Plaintiffs' incidents of religious questioning. Ex. 4 at 10. In an amended response to ROG 7, Defendants listed 12 officers that "participated" in the questioning and referred Plaintiff to additional responsive information in documents that "will be produced." Ex. 6 at 3:1–4:21. Despite Plaintiff Kariye's insistence that the response was deficient, Defendants have repeatedly claimed to have "satisfied" their obligations under ROG 7. Ex. 18 at 2; Ex. 10 at 1. Defendants are wrong.

As an initial matter, Defendants' response is inadequate on its face because they did not provide any information about officers who were "present at" or "supervised" Plaintiffs' incidents of religious questioning. And simply referring Plaintiff to documents that "will be produced" cannot fill that gap. *See Probuilders Specialty Ins. Co. v. Valley Corp.*, 2012 WL 6045753, at *3 n.3 (N.D. Cal. Nov. 28, 2012) (in responding to an interrogatory, a party must "articulate the facts . . . in an explicit, responsive, complete, and candid manner."); *Pulsecard, Inc. v. Discover*

*Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996) ("Under the guise of Fed. R. Civ. P. 33(d) defendants may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories specifically which documents contain the answer. Otherwise they must completely answer the interrogatories without referring to the documents.").

Additionally, Plaintiff cannot rely on Defendants' document productions to divine information. For example, for three of the ten incidents at issue, Defendants have failed to produce the particular type of TECS Report (a "TECS Person Query Detail Report") that identifies the line supervisor at each incident—leaving Plaintiff with no way to obtain that information. Ex. 9 at 9–11; Ex. 19 at 1–2. Further, Plaintiff learned from that discovery that additional categories of supervisory officers—such as a "Watch Commander" and a "Chief Officer"—are involved in secondary inspections, but the produced documents include only the names of individuals in those positions for one of the ten incidents. Ex. 10 at 2–3. Defendants have refused to produce that information for the remaining nine incidents. *Id.* at 1; Ex. 12 at 5; Ex. 18 at 2.

Without Defendants providing the identities of officers in a discovery response, Plaintiff may never obtain that information. Through a diligent review of the documents produced in discovery, Plaintiff determined that an additional nine officers beyond those included in Defendants' amended response to ROG 7 were involved in Plaintiffs' incidents of religious questioning. But Plaintiff still suspects

many additional officers were involved.[11] Further, Defendants have limited searches for responsive documents to only those individuals ***expressly named*** in their amended response to ROG 7—even though Defendants have represented that the identities of additional officers can be found in produced documents. *See* Ex. 6; Ex. 12 at 5; Ex. 16 at 12:2–22.

Thus, Defendants should be ordered to produce a complete written response to Plaintiff Kariye's ROG 7, including the names of all the officers who participated in, were present at, or supervised Plaintiffs' incidents of religious questioning.

**B. In particular, Plaintiffs are entitled to documents and information from the officers involved in Plaintiffs' secondary inspections.**

Defendants also seek to withhold (1) pre-2023 communications and data from the work phones of officers involved in the religious questioning of Plaintiffs, even though the incidents described in the Amended Complaint took place before 2023, and (2) performance reviews and related documents concerning the officers involved in Plaintiffs' religious questioning.

**Communications and Data from Work Phones:** Ignoring the scope of their discovery obligations, Defendants have taken the position that they will not search custodians' work phones for communications that occurred prior to May 1, 2023. Ex. 13 at 1. But Defendants' position is nonsense. Any relevant communications likely

[11] For example, Plaintiffs informed Defendants that they recalled six additional officers present at the questioning who were not identified in ROG 7 or in the productions. Ex. 3 at 10–11. Defendants never confirmed they conducted any investigation to identify the missing officers.

occurred before May 1, 2023 because the ten incidents of religious questioning occurred from 2019 to 2022. ECF No. 61, Am. Compl. ¶¶ 56–80, 108–126; 145–175.[12] *See Pashaie v. H77LA, LLC*, 2024 WL 4800698, at *5 (C.D. Cal. Sept. 9, 2024) ("[F]ederal courts routinely grant motions to compel text messages from cell phones where such communications are directly relevant to the matters in dispute.").

Indeed, Defendants do not dispute the relevance of these pre-May 1, 2023 communications and instead base their refusal on the purported undue burden to manually review communications from that date. Ex. 13 at 1. Defendants' argument is not persuasive. Defendants describe the typical manual document-by-document review as a burden, but they have shown no reason why they cannot employ standard e-discovery techniques to upload data from Defendants' work phones to a review database and conduct the review by search terms or date ranges.

But even if a manual document-by-document review is for some reason the only method available to Defendants, the relevance of contemporaneous communications from the pre-May 2023 period far outweighs any purported burden. *See Wachuku v. JetBlue Airways Corp.*, 2021 WL 4497157, at *12 (C.D. Cal. Apr. 29, 2021) (emphasis in original) (granting motion to compel text messages "which relate[d] to *discrimination or unfair treatment of passengers* [as] relevant" to the

[12] Defendants' position also contradicts their agreement to search for documents in response to Plaintiffs' RFPs for specific time periods. The parties negotiated January 1, 2010 to the present and January 1, 2013 to the present as the relevant period for almost all RFPs. Ex. 5 at 26. The parties negotiated January 1, 2017 to December 31, 2022 for RFPs 16 and 17. Ex. 7 at 2; Ex. 12 at 5.

complaint, even where it would impose burdens on defendants).

Thus, Defendants should be ordered to search for and produce communications from the custodians' work phones for the dates mutually agreed upon by the parties for each of Plaintiffs' RFPs.

**RFPs 16, 17** seek documents related to complaints, disciplinary actions, performance reviews, and commendations concerning the border officers involved in Plaintiffs' incidents of religious questioning.[13] Ex. 3 at 17:19–18:24. Defendants, in their objections, claimed these documents are irrelevant,[14] *id.* at 17:24–18:6; 18:12–24, and continue to dispute the relevancy of at least officers' performance reviews and commendations. *See* Ex. 5 at 4; Ex. 12 at 5.

But these records are undoubtedly relevant. "[I]nvestigations, complaints, performance evaluations, or other records—are directly relevant . . . in that they can show whether Defendants [] were aware of and indifferent to previous relevant conduct." *Pleasant v. Miranda*, 2021 WL 829735, at *6 (C.D. Cal. Jan. 25, 2021). Defendants' commendations or positive reviews for officers involved in religious questioning may well reflect an endorsement of the practice at the heart of this case.

Defendants' response that 12 of the involved officers did not have disciplinary records or complaints for the agreed upon time period is inadequate. Ex. 12 at 5; Ex.

[13] The Parties negotiated a date range of January 1, 2017 to December 31, 2022 for these RFPs. Ex. 7 at 2; Ex. 12 at 5.

[14] Defendants also objected to these RFPs on the basis of privacy concerns. Ex. 1 at 17:24-18:6; 18:12-24. But those concerns are addressed by the Protective Order, *see* ECF No. 53 at 3, and an exception in the Privacy Act. 5 U.S.C. § 552a(b)(11).

16:2–22. The parties know of ***at least 21*** officers involved in the inspections. Ex. 12 at 5; Ex. 13 at 4.[15] In other words, there are at least 9 additional officers who were involved in Plaintiffs' incidents of religious questioning for which Defendants have not provided any information and have not committed to production. Ex. 18 at 2. Indeed, Defendants' search for the 12 officers was itself deficient because Defendants admitted to not yet searching DHS CRCL, *see supra*, nor have they confirmed they have searched other relevant repositories of complaints and allegations.[16] Ex. 12 at 5; Ex. 18 at 1–2; *see* Fed. R. Civ. P. 26(g)(1) (Defendants are obligated to make a "reasonable inquiry" for responsive documents.).

Moreover, Defendants have merely informed Plaintiffs about a lack of disciplinary records and complaints for the 12 officers; they have not provided any information concerning commendations or performance reviews for those 12 officers—and they have not produced any of those documents. *See* Ex. 12 at 5; Ex. 16:2–22. But if border officers involved in discriminatory religious questioning are ***also*** receiving commendations or positive performance reviews, that may well reflect Defendants' view of the policy and/or practice at the heart of this lawsuit. *See, e.g.*, *Pleasant*, 2021 WL 829735, at *6 (personnel files can show whether defendants are "indifferent to" relevant conduct).

[15] Defendants claimed they had searched for these documents for the 12 officers ***listed in their response to ROG 7***. As explained in the section above, it is improper for Defendants to refuse to supplement ROG 7 with this information because it opens the door to potential mischief.

[16] Defendants acknowledge the DHS Traveler Redress Inquiry Program and the Office of Congressional Affairs as two such additional repositories. Ex. 16 at 5:8–6:4, 14:7–15:9; Ex. 10 at 1.

Thus, in response to RFPs 16 and 17, the Court should order Defendants to produce complaints, disciplinary actions, performance reviews, and commendations for ***all*** the border officers involved in the ten incidents of religious questioning.

## V. CONCLUSION

For the foregoing reasons, this Court should compel Defendants to produce the missing documents and information herein identified.

Dated: May 15, 2025

COOLEY LLP
JOHN HEMANN (165823)
BRETT H. DE JARNETTE (292919)
ALEXANDER K. BREHNAN (317776)
TAYLOR BOYLE (353178)

By: */s/ Alexander K. Brehnan*
Alexander K. Brehnan

Ashley Gorski (*pro hac vice*)
(agorski@aclu.org)
ACLU Foundation
125 Broad Street, Floor 18
New York, NY 10004
Telephone: +1 212 549 2500

Mohammad Tajsar (SBN 280152)
(mtajsar@aclusocal.org)
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Telephone: +1 213 977 9500

Daniel Mach (*pro hac vice*)
(dmach@aclu.org)
Heather L. Weaver (SBN 226853)
(hweaver@aclu.org)
ACLU Foundation
915 15th St., NW Ste. 600
Washington, DC 20005
Telephone: +1 202 675 2330

Teresa Nelson (*pro hac vice*)
tnelson@aclu-mn.org
ACLU of Minnesota
P.O. Box 14720
Minneapolis, MN 55415
Telephone: +1 651 645 4097

Attorneys for Plaintiffs
ABDIRAHMAN ADEN KARIYE, MOHAMAD MOUSLLI, and HAMEEM SHAH

317435283