# EXHIBIT 4

FILED REDACTED PURSUANT TO ORDER
OF THE COURT DATED MAY 12, 2025

Exhibit 4
Page 54

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch, Civil Division

LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
Senior Trial Counsel
LAUREL H. LUM (N.Y. Bar. No. 5729728)
SAMUEL A. REBO (D.C. Bar No. 1780665)
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0727
Email: leslie.vigen@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ABDIRAHMAN ADEN KARIYE, *et al.*, | CASE NO. 2:22-CV-1916-FWS-GJS |
| *Plaintiffs*, | **DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF ABDIRAHMAN KARIYE'S FIRST SET OF INTERROGATORIES** |
| v. |  |
| ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security, in his official capacity, *et al.*, | Honorable Fred W. Slaughter **United States District Judge** |
| *Defendants*. |  |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the

Local Rules of the United States District Court of the Central District of California,

1

Exhibit 4
Page 55

1  Defendants, by and through undersigned counsel, submit their Responses and
2  Objections to Plaintiff Abdirahman Kariye's First Set of Interrogatories.

3  Defendants' responses are provided in accordance with Rule 26(b)(1), which
4  permits the discovery of any non-privileged information that is both relevant to any
5  party's claim or defense and proportional to the needs of the case.  Defendants do
6  not, by providing such information, waive any objection to its admissibility on the
7  grounds of relevance, proportionality, accessibility, materiality, or other appropriate
8  grounds.  The inadvertent disclosure by Defendants of information protected by any
9  privilege or protection shall not constitute a waiver of the applicable privilege or
10 protection as to any information or documents disclosed.  Defendants reserve the
11 right to supplement or amend their responses in accordance with Rule 26(e) should
12 additional or different information be discovered or become available.

13 **GENERAL OBJECTIONS**

14 The general objections set forth below apply to each and every discovery
15 request discussed below.  In asserting the Defendants' objections to specific
16 discovery requests, the Defendants may assert an objection that is the same as or
17 substantially similar to one or more of these objections. They may do so because the
18 language of the discovery request itself may signal particular and specific concerns
19 that the discovery request at issue may be objectionable based on the grounds stated.
20 The fact that the Defendants, in their objections to Plaintiffs' individual requests,
21 may specifically reference some of the objections described immediately below, but
22 not others from the same list, does not indicate that they have waived any of these
23 objections as to any of Plaintiffs' requests.

24 1.    Defendants object to any directions, definitions, or instructions
25 contained in the Interrogatories that seek to impose upon them obligations in excess
26 of, or different from, those required by the Federal Rules of Civil Procedure.

27

2

Exhibit 4
Page 56

2.      Defendants object to the Interrogatories to the extent that they request information that is subject to a claim of privilege or that calls for a response that would require disclosure of the mental impressions, conclusions, or legal theories of their attorneys and other representatives concerning this litigation.

3.      Defendants object to any request to the extent that it, whether standing alone or in conjunction with any other request, is vague, overbroad, disproportionate to the needs of the case, or would operate to annoy, embarrass, or unduly burden them, on the ground that such a request exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

4.      Defendants object to any request to the extent it seeks information not relevant to the subject matter involved in the pending action and is not reasonably calculated to lead to the discovery of admissible evidence on the ground that such a request exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

## OBJECTIONS TO DEFINITIONS

1.      Defendants object to the proposed definition of "COMMUNICATION" to the extent it encompasses items outside of Defendants' possession, custody, or control, including information sent or received via personal devices, accounts, websites, or similar means.

2.      Defendants object to the proposed definition of "DOCUMENT" to the extent it calls for the automatic production of draft documents, or the production of nonresponsive documents simply because they are attached to responsive documents.

3.      Defendants object to the proposed definition of "IDENTIFY" to the extent it requires them to provide information that may be protected from disclosure by federal or state law, including but not limited to the Privacy Act (5 U.S.C. § 552a).

3

Exhibit 4
Page 57

4.      Defendants object to the proposed definitions of "DEFENDANTS,"
"PERSON," "YOU," and "YOUR" to the extent these definitions purport to
encompass agencies or component agencies outside the four named Defendants.

**OBJECTIONS TO INSTRUCTIONS**

1.      Defendants object to instruction 3 insofar as it calls for information
beyond the scope of what is required under Federal Rule of Civil
Procedure 26(b)(5)(A), which requires only that a party withholding otherwise
discoverable information as privileged or protected "expressly make the claim" and
"describe the nature of the documents, communications, or tangible things not
produced or disclosed" in a manner that, without revealing privileged or protected
information, "will enable other parties to assess the claim."   Fed. R. Civ.
P. 26(b)(5)(A).   In particular, Defendants object to providing the relationship
between persons making a communication and persons present, and between an
author and an addressee of a document.  Such information is beyond the scope of
what is required under Rule 26(b)(5) and would require additional research to
discern, making the burden of providing such information outweigh any possible
benefit.  Defendants further object to providing the names of all persons to whom a
privileged document was circulated or its contents communicated.  In addition to
being beyond the scope of what is required under Rule 26(b)(5), such information
may not be readily apparent from the face of a document and thus require additional
research to discern.  The burden and expense of providing such information thus
outweighs any possible benefit.

2.      Defendants object to instruction 6 on the ground that the proposed time
period of January 1, 2010 to present is overly broad and not proportional to the needs
of the case.  Defendants intend to include in their responses information concerning
events that occurred between September 12, 2017 and March 24, 2022—a period

4

Exhibit 4
Page 58

beginning with the first secondary inspection of a Plaintiff described in the amended complaint.

**RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES**

**Interrogatory No. 1**

For each of the ten incidents of questioning alleged in the AMENDED COMPLAINT, IDENTIFY every question that DEFENDANTS asked each PLAINTIFF, categorized by incident and DEFENDANT.

**Response**:  Defendants object to this interrogatory insofar as it is directed to the Department of Homeland Security (DHS), Immigrations and Customs Enforcement (ICE), and Homeland Security Investigations (HSI) because, to the best of Defendants' knowledge, none of these agencies participated in the questioning of Plaintiffs described in the amended complaint.  Defendants further object to this interrogatory because it requests information that can be obtained from another source that is more convenient, less burdensome, and less expensive: Plaintiffs themselves.

Subject to and without waiver of the foregoing objections, Customs and Border Protection (CBP) directs Plaintiffs to non-privileged documents related to the ten incidents of questioning alleged in the amended complaint that will be produced in response to Plaintiffs' Requests for Production in accordance with Rule 33(d).

**Interrogatory No. 2**

For each of the ten incidents of questioning alleged in the AMENDED COMPLAINT, DESCRIBE in detail why DEFENDANTS asked each question CONCERNING PLAINTIFFS' religious beliefs, practices, and associations.

**Response:**  Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because, to the best of Defendants' knowledge, none of these agencies participated in the questioning of Plaintiffs described in the amended

5

Exhibit 4
Page 59

complaint. CBP objects to the formulation of this interrogatory because it presumes that CBP in fact asked questions concerning Plaintiffs' religious beliefs, practices, and associations, which Defendants do not concede. CBP objects to providing any response to this interrogatory because it solely seeks information protected by the law enforcement privilege, except to the extent such information is reflected in non-privileged documents that will be produced in response to Plaintiffs' Requests for Production in accordance with Rule 33(d).

**Interrogatory No. 3**

For each of the ten incidents of questioning alleged in the AMENDED COMPLAINT, IDENTIFY and DESCRIBE in detail all DOCUMENTS CONCERNING PLAINTIFFS that contributed, directly or indirectly, to DEFENDANTS' decision to ask each question CONCERNING PLAINTIFFS' religious beliefs, practices, and associations, regardless of the year in which the DOCUMENT was created or the year in which the events discussed in the DOCUMENT took place.

**Response:** Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because, to the best of Defendants' knowledge, none of these agencies participated in the questioning of Plaintiffs described in the amended complaint. CBP objects to the formulation of this interrogatory because it presumes that CBP in fact asked questions concerning Plaintiffs' religious beliefs, practices, and associations, which Defendants do not concede. CBP further objects to providing any response to this interrogatory because it solely seeks information protected by the law enforcement privilege.

6

Exhibit 4
Page 60

**Interrogatory No. 4**

For each of the ten incidents of questioning alleged in the AMENDED COMPLAINT, IDENTIFY all DOCUMENTS containing information CONCERNING PLAINTIFFS that DEFENDANTS obtained as a result of that questioning.

**Response:** Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because, to the best of Defendants' knowledge, none of these agencies participated in the questioning of Plaintiffs described in the amended complaint. Defendants further object to this interrogatory to the extent that it seeks documents that are protected by the law enforcement privilege, deliberative process privilege, or any other applicable privileges or protections from disclosure.

Subject to and without waiver of the foregoing objection, CBP directs Plaintiffs to non-privileged documents related to the ten incidents of questioning alleged in the amended complaint that will be produced in response to Plaintiffs' Requests for Production in accordance with Rule 33(d).

**Interrogatory No. 5**

For each of the ten incidents of questioning alleged in the AMENDED COMPLAINT, DESCRIBE in detail all reasons DEFENDANTS believed they had for retaining information CONCERNING each PLAINTIFF'S religious beliefs, practices, and associations.

**Response:** Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because, to the best of Defendants' knowledge, none of these agencies participated in the questioning of Plaintiffs described in the amended complaint. Defendants further object to this interrogatory because a request for what Defendants "believed" is vague and ambiguous. Defendants object to the formulation of this interrogatory to the extent it implies that Defendants retained

7

Exhibit 4
Page 61

records because they included information about Plaintiffs' religious beliefs, practices, and associations, and not for one of many other reasons to retain records that are entirely unrelated to religion.  Defendants also object to this interrogatory to the extent that it seeks information that is protected by the law enforcement privilege, deliberative process privilege, or any other applicable privileges or protections from disclosure.

Subject to and without waiver of the foregoing objections, Defendants answer as follows: DHS's retention of documents and information is governed by generally applicable rules and policies, including DHS's official policy regarding First Amendment protected activities, Memorandum from Kevin K. McAleenan to All DHS Employees Regarding First Amendment Protected Activities (May 17, 2019), *available at* https://perma.cc/6ZN4-TAKB.  CBP also relies upon the TECS retention policy, U.S. Customs and Border Protection, Privacy Impact Assessment for the TECS System: CBP Primary and Secondary Processing (Dec. 22, 2010), available at https://perma.cc/4BDV-XNTS.

**Interrogatory No. 6**

IDENTIFY and DESCRIBE in detail all databases, systems, and platforms that contain information regarding PLAINTIFFS' religious beliefs, practices, or associations as a result of DEFENDANTS' questioning of PLAINTIFFS, including the length of time for which data is retained by default, and which government agencies (federal, state, and foreign) have access to those databases, systems, and platforms.

**Response:**  Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because, to the best of Defendants' knowledge, none of these agencies participated in the questioning of Plaintiffs described in the amended complaint.  Defendants further object on the ground that this interrogatory is overly

8

Exhibit 4
Page 62

1  broad and disproportionate to the needs of the case to the extent it seeks information
2  that is entirely unrelated to Plaintiffs or the allegations in Plaintiffs' complaint.
3  Defendants further object to this interrogatory as vague and ambiguous insofar as it
4  does not define the terms "databases," "systems," or "platforms." Defendants also
5  object to this interrogatory to the extent it seeks information protected by the law
6  enforcement privilege, deliberative process privilege, or any other applicable
7  privileges or protections from disclosure.

8       Subject to and without waiver of the foregoing objections, CBP answers as
9  follows: Information regarding the secondary inspections described in the amended
10 complaint is contained in TECS, a system of records that includes "temporary and
11 permanent enforcement, inspection, and operational records relevant to the
12 antiterrorism and law enforcement mission of CBP and numerous other federal
13 agencies it supports."[1] *See* U.S. Customs and Border Protection, Privacy Impact
14 Assessment for the TECS System: CBP Primary and Secondary Processing at 2
15 (Dec. 22, 2010), *available at* https://perma.cc/4BDV-XNTS (CBP PIA for TECS).
16 Among other uses, TECS serves as a data repository to support law enforcement
17 "lookouts," border screening, and reporting for CBP's primary and secondary
18 inspection processes. *Id.* Records of all inspections at U.S. ports of entry, including
19 relevant information and results of CBP secondary inspections, are entered into
20 TECS. *Id.* at 4–6. Such records are retained by TECS for a maximum of 75 years.
21 *Id.* at 14.

22      CBP owns and operates TECS; CBP may also share information collected in

23
24 _____

25 [1] TECS is not an acronym; the system is an updated and modified version of the
26 former Treasury Enforcement Communications System. The term "TECS" describes
   both an information-sharing platform encompassing different systems of records,
27 and the above-described system of records. *See* CBP PIA for TECS at 1.

9

Exhibit 4
Page 63

TECS with certain other DHS components that show a need to know the information, consistent with their missions, *id.* at 15–16, and other federal government agencies that have demonstrated a justifiable need for the information, pursuant to a memorandum of understanding with CBP, *id.* at 16–17. CBP also sometimes grants access to TECS records to outside federal, state, local, tribal, and foreign agencies responsible for law enforcement, counterterrorism, and border security. *Id.* at 17. This is done on a need-to-know basis and for a specific purpose consistent with the TECS Privacy Act Statement of Records Notification. *Id.*

**Interrogatory No. 7**

For each of the ten incidents of questioning alleged in the AMENDED COMPLAINT, IDENTIFY the agents, officers, or officials who participated in, were present at, or supervised any PERSON in connection with such questioning.

**Response:** Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because, to the best of Defendants' knowledge, none of these agencies participated in the questioning of Plaintiffs described in the amended complaint. Defendants further object to the use of the term "supervised" as vague and ambiguous because CBP officers have multiple levels of supervision, and it is unclear which supervisors' identities the interrogatory seeks. Defendants also object to this interrogatory as overly broad and disproportionate to the needs of the case insofar as it seeks the identities of "agents, officers, or officials" who did not conduct and were not present at, and therefore would have no reason to have any knowledge about, the questioning alleged in the amended complaint.

Subject to and without waiver of the foregoing objections, CBP directs Plaintiffs to non-privileged documents related to the ten incidents of questioning alleged in the amended complaint that will be produced in response to Plaintiffs' Requests for Production in accordance with Rule 33(d), and provides the following

10

Exhibit 4
Page 64

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

names of CBP officers who participated in the alleged questioning in each of the ten

secondary inspections identified in the amended complaint:

    a.    ████████████[2] CBP Officer, Seattle-Tacoma International Airport.  Officer

████████ participated in the secondary inspection of Plaintiff Kariye on

September 12, 2017, at the Seattle-Tacoma International Airport.

    b.    ████████████ CBP Officer, Port of Blaine, Washington.  Officer ████████

participated in the secondary inspection of Plaintiff Kariye on February 3,

2019, at the Port of Blaine, Peace Arch Bridge.

    c.    ██████████████ CBP Officer, Port of San Diego.  Officer ████████

participated in the secondary inspection of Plaintiff Kariye on November 24,

2019, at Ottawa International Airport Preclearance.

    d.    ██████████████ Supervisory CBP Officer, Seattle-Tacoma International

Airport.  Officer ████████ participated in the secondary inspection of Plaintiff

Kariye on August 16, 2020, at the Seattle-Tacoma International Airport.

    e.    ████████████ CBP Officer.  Officer ████████ participated in the secondary

inspection of Plaintiff Kariye on December 31, 2021, at the Minneapolis - St.

Paul International Airport.

    a.    ████████████ Former CBP Officer.  Former Officer ████████ participated

in the secondary inspection of Plaintiff Mouslli on August 8, 2018, at the

Lukeville Port of Entry.

---

[2] Defendants designate the highlighted names of lower-level law enforcement officers throughout this document as CONFIDENTIAL and subject to the protective order entered in this matter.  *See* ECF No. 53.

11

Exhibit 4
Page 65

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

b. █████████ Supervisory CBP Officer, Calgary Preclearance.  Officer █████████ participated in the secondary inspection of Plaintiff Mouslli on August 6 2019, at the Los Angeles International Airport.

c. Richard Andrade, CBP Officer.  Officer █████ participated in the secondary inspection of Plaintiff Mouslli on March 11, 2020, at the Los Angeles International Airport.

d. █████████ CBP Officer, Los Angeles. Officer █████ participated in the secondary inspections of Plaintiff Mouslli on June 5, 2021 and May 4, 2022, at the Los Angeles International Airport.

e. █████████ CBP Officer, Los Angeles International Airport.  Officer █████████ participated in the secondary inspection of Plaintiff Shah on May 7, 2019, at the Los Angeles International Airport.

f. █████████ CBP Officer, Los Angeles International Airport. Officer █████████ participated in the secondary inspection of Plaintiff Shah on May 7, 2019 at the Los Angeles International Airport.

**Interrogatory No. 8**

IDENTIFY and DESCRIBE in detail all complaints received by DEFENDANTS regarding questioning of Muslim travelers or travelers perceived as Muslim CONCERNING their religion, religious belief, religious practice, or religious association, and any DOCUMENTS created, COMMUNICATIONS made, or actions taken by DEFENDANTS in response to those complaints.

**Response**:  Defendants object to this interrogatory as vague and ambiguous insofar as it does not define the term "complaints."  Defendants further object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks information about informal complaints or information that is entirely unrelated to Plaintiffs or the allegations in Plaintiffs' complaint and could

12

Exhibit 4
Page 66

be read to include informal complaints or allegations.  Defendants also object to this request as overly burdensome to the extent it seeks information from the TECS database, which is not text-searchable and is not a repository for formal or official complaints against CBP, making a search of the scope requested virtually impossible, and the burden of such a search far outweigh any possible benefit.  In addition, Defendants object to this request to the extent that it seeks information that is protected by the law enforcement privilege, deliberative process privilege, attorney client privilege, work product doctrine, or any other applicable privilege or protection from disclosure.  Finally, Defendants object to this request to the extent that it seeks information or documents that are protected from disclosure by federal or state law, including but not limited to, the Privacy Act (5 U.S.C. § 552a).

Subject to and without waiver of the foregoing objections, CBP directs Plaintiffs to the DHS CRCL memorandum entitled "Religious Questioning at Ports of Entry – Multiple Complaints" (Feb. 26, 2019), *available at* https://perma.cc/YKJ7-FDHX.  CBP also directs Plaintiffs to additional non-privileged documents reflecting formal complaints received by Defendants about questioning at ports of entry concerning a traveler's religion, religious beliefs, religious practices, or religious associations that will be produced in response to Plaintiffs' Requests for Production in accordance with Rule 33(d).

**Interrogatory No. 9**

IDENTIFY and DESCRIBE in detail all policies, procedures, guidance, briefings, musters, recommendations, and trainings—formal and informal—CONCERNING DEFENDANTS' questioning of PERSONS at ports of entry.

**Response**:

Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because none of these agencies conduct questioning at ports of entry.

13

Exhibit 4
Page 67

Defendants object to this request as vague and ambiguous insofar as it does not define the terms "policies," "procedures," "guidance," "briefings," "musters," "recommendations," or "trainings." Defendants also object to this request as vague and ambiguous insofar as it does not define an "informal" policy. Defendants further object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks information regarding every one of Defendants' policies, procedures, guidance, briefings, musters, recommendations, or trainings concerning the questioning of persons at ports of entry, the majority of which are entirely unrelated to the allegations in Plaintiffs' complaint and thus irrelevant to this lawsuit. Finally, Defendants object to this request to the extent that it seeks information that is protected by the law enforcement privilege, deliberative process privilege, attorney client privilege, work product doctrine, or any other applicable privilege or protection from disclosure.

Subject to and without waiver of the foregoing objections, CPB directs Plaintiffs to non-privileged, generally applicable, final policy, procedure, guidance, briefing, muster, recommendation, and training documents concerning both questioning of persons at port of entry and religion and/or religious beliefs, practices, and/or associations; or First Amendment protections that will be produced in response to Plaintiffs' Requests for Production in accordance with Rule 33(d).

**Interrogatory No. 10**

IDENTIFY and DESCRIBE in detail all policies, procedures, guidance, briefings, musters, recommendations, and trainings—formal and informal—CONCERNING (a) religion, religious beliefs, religious practices, or religious associations, and (b) the screening, inspection, detaining, or questioning of PERSONS at a port of entry.

14

Exhibit 4
Page 68

**Response**:  Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because none of these agencies conduct questioning at ports of entry.

Defendants object to this request as vague and ambiguous insofar as it does not define the terms "policies," "procedures," "guidance," "briefings," "musters," "recommendations," or "trainings."  Defendants also object to this request as vague and ambiguous insofar as it does not define an "informal" policy.  Defendants further object on the ground that this request is overly broad and disproportionate to the needs of the case to the extent it seeks information regarding the screening, inspection, detaining, or questioning of persons at a port of entry that do not concern First Amendment protections.  Finally, Defendants object to this request to the extent that it seeks information that is protected by the law enforcement privilege, deliberative process privilege, attorney client privilege, work product doctrine, or any other applicable privilege or protection from disclosure.

Subject to and without waiver of the foregoing objections, CBP directs Plaintiffs to responsive, non-privileged, generally applicable, final policy, procedure, guidance, briefing, muster, recommendation, and training documents that concern both (a) First Amendment protections; and (b) the screening, inspection, detaining, or questioning of persons at a port of entry that will be produced in response to Plaintiffs' Requests for Production in accordance with Rule 33(d).

**Interrogatory No. 11**

DESCRIBE the circumstances under which DEFENDANTS may question travelers at a port of entry CONCERNING their religion, religious beliefs, religious practices, and religious associations.

15

Exhibit 4
Page 69

**Response**:  Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because none of these agencies conduct questioning at ports of entry.

Defendants object to this interrogatory as overly broad and disproportionate to the needs of the case to the extent it seeks to require Defendants to describe every conceivable situation in which a traveler might be asked questions concerning religion, religious beliefs, religious practices, or religious associations, including situations that are entirely unrelated to Plaintiffs or the allegations in Plaintiffs' complaint.

Subject to and without waiver of the foregoing objections, CBP directs Plaintiffs to DHS's official policy regarding First Amendment protected activities, Memorandum from Kevin K. McAleenan to All DHS Employees Regarding First Amendment Protected Activities (May 17, 2019), *available at* https://perma.cc/6ZN4-TAKB, and responds as follows:

All travelers, including U.S. citizens, attempting to enter the United States are required to present themselves and their effects for inspection at a port of entry to ensure that they are legally eligible to enter and that their belongings are not being introduced into the United States contrary to law.  CBP considers all available information in determining the actions to take during a border inspection.  There are numerous reasons why CBP questioning at ports of entry may relate to religion. The examples noted here are illustrative, not exhaustive.  For instance, CBP may ask questions regarding religion to corroborate a traveler's stated reason for international travel (for example, if an individual states that he or she was traveling abroad for a purpose relating to religion), or to corroborate a traveler's stated occupation, particularly where that occupation relates to a religious vocation (for example, if a traveler states that he is a Catholic priest, CBP may ask questions regarding Catholicism). CBP may also ask questions regarding religion to determine whether

16

Exhibit 4
Page 70

merchandise the traveler seeks to bring across the border is permissible (for example, if a traveler identifies an item in his or her suitcase as a religious item).

CBP may pursue lines of questioning to determine whether potential administrative or criminal violations exist. Since these topics may have a nexus to the traveler's religion and religious activities, the traveler could perceive that the focus of the interview and examination is religion versus the detection of illicit activity. Moreover, questions regarding religion may follow naturally from the traveler's response to other questions.

If there is generalized intelligence about a particular threat that pertains in some way to religion, for example, the issue raised in *Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007), CBP may ask questions that touch on religious practice.

Additionally, per CBP policy, CBP endeavors to reasonably accommodate travelers who require special consideration due to religious, cultural, or privacy concerns (for example, a personal search of an individual who wears a religious headdress). CBP may ask questions regarding religion to determine whether such accommodations are appropriate. Many CBP facilities have limited private areas. An officer may ask a traveler if, for example, he or she prays 5 times a day to ensure that necessary arrangements are made should the traveler request a private room to pray. This is particularly relevant after long flights or where secondary inspection is expected to last for a longer time.

**Interrogatory No. 12**

DESCRIBE the circumstances under which DEFENDANTS may target a traveler at a port of entry for questioning CONCERNING their religion, religious beliefs, religious practices, and religious associations, at least in part because the traveler is, or is perceived to be, Muslim.

17

Exhibit 4
Page 71

**Response**:  Defendants object to this interrogatory insofar as it is directed to DHS, ICE, and HSI because none of these agencies conduct questioning at ports of entry.

Defendants object to this interrogatory as overly broad and disproportionate to the needs of the case to the extent it seeks to require Defendants to describe every conceivable situation in which a traveler might be asked questions concerning religion, religious beliefs, religious practices, or religious associations to travelers who are, or are perceived to be, Muslim, including situations that are entirely unrelated to Plaintiffs or the allegations in Plaintiffs' complaint.  Defendants also object to this interrogatory as vague and ambiguous because it does not define the term "target" or explain what they believe constitutes targeting "in part" because of a traveler's religion or perceived religion.

Subject to and without waiver of the foregoing objections, CBP responds as follows:  There is no situation in which employees of DHS or any of its component agencies may "target" an individual for questioning solely on the basis of the faith to which they ascribe.  This applies to travelers who are Muslim or perceived to be Muslim, as well as travelers who ascribe to, or are perceived to ascribe to, other faiths.  Information about when DHS employees may ask questions regarding First Amendment protected activities, including the exercise of religion, is available in DHS's official policy regarding First Amendment protected activities: Memorandum from Kevin K. McAleenan to All DHS Employees Regarding First Amendment Protected Activities (May 17, 2019), *available at* https://perma.cc/6ZN4-TAKB.

18

Exhibit 4
Page 72

Dated: April 4, 2023

*As to objections*:

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch, Civil Division

 */s/   Leslie Cooper Vigen*
LESLIE COOPER VIGEN (D.C. Bar No. 1019782)
Senior Trial Counsel
LAUREL H. LUM (N.Y. Bar. No. 5729728)
SAMUEL A. REBO (D.C. Bar No. 1780665)
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0727
Email:  leslie.vigen@usdoj.gov

*Counsel for Defendants*

*As to responses*:

See attached signature page.

19

Exhibit 4
Page 73

**CBP:**

I declare under penalty of perjury that the foregoing factual responses to the Interrogatories on behalf of CBP are true and correct to the best of my information and belief.

Date: _4/3/2023_____          _____
                                                Casey Durst
                                                Executive Director, Operations
                                                Office of Field Operations
                                                U.S. Customs and Border Protection

20

Exhibit 4
Page 74