YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch, Civil Division

ROBERT W. MEYER (NY Bar No. 5942842)
YURI S. FUCHS (CA Bar No. 300379)
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 598-3869
Email: Yuri.S.Fuchs@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

ABDIRAHMAN ADEN KARIYE,
*et al.*,

     *Plaintiffs*,

v.

ALEJANDRO MAYORKAS,
Secretary of the U.S. Department of
Homeland Security, in his official
capacity, *et al.*,

     *Defendants*.

CASE NO. 2:22-CV-1916-FWS-GJS

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO
COMPEL REGARDING LAW
ENFORCEMENT PRIVILEGE**

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................ 1

BACKGROUND ......................................................................................... 2

STANDARD OF REVIEW ........................................................................ 3

ARGUMENT .............................................................................................. 4

    I.     The Law Enforcement Privilege Is Well-Established and
           Broadly Recognized. .................................................................. 4

    II.    Defendants Properly Invoked the Law Enforcement
           Privilege in This Case. .............................................................. 6

    III.   Plaintiffs Cannot Show that Their Need for Withheld
           Material Outweighs the Assertion of the Law Enforcement
           Privilege.................................................................................... 9

         A.    Plaintiffs have not shown—and plainly cannot
                show—a "compelling need" for information that
                they do not specifically describe.................................... 10

         B.    Plaintiffs have not shown a compelling need for the
                specific information and records that they do discuss... 12

CONCLUSION ......................................................................................... 15

i

1

# **TABLE OF AUTHORITES**

2

## **Cases**

3

4
*Ayala v. City of New York*,
   2004 WL 2914085 (S.D.N.Y. Dec. 16, 2004) ....................................................10

5

6
*Commonwealth of Puerto Rico v. United States*,
   490 F.3d 50 (1st Cir. 2007)...................................................................................4

7

8
*Conan v. City of Fontana*,
   2017 WL 2874623 (C.D. Cal. July 5, 2017)........................................................7

9

10
*Dellwood Farms v. Cargill, Inc.*,
   128 F.3d 1122 (7th Cir. 1997) ..............................................................................9

11

12
*Doe 1 v. McAleenan*,
   2019 WL 4235344 (N.D. Cal. Sept. 6, 2019) ...................................................5, 9

13
*DIRECTV, Inc. v. Trone*,
   209 F.R.D. 455 (C.D. Cal. 2002) .........................................................................3

14

15
*Elhady v. Kable*,
   993 F. 3d 208 (4th Cir. 2021) .............................................................................14

16

17
*Est. of Solis v. Cnty. of Riverside*,
   2024 WL 4783819 (C.D. Cal. Sept. 19, 2024) .....................................................5

18

19
*Friedman v. Bache Halsey Stuart Shields, Inc.*,
   738 F.2d 1336 (D.C. Cir. 1984) ...........................................................................4

20

21
*Garcia v. City of Garden Grove*,
   2016 WL 9107424 (C.D. Cal. Oct. 26, 2016)........................................................6

22

23
*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*,
   2011 WL 2518948 (E.D. Cal. June 23, 2011) ................................................3, 11

24
*Hereford v. City of Hemet*,
   2023 WL 6813740 (C.D. Cal. Sept. 14, 2023) .................................................6, 7

25

26
*Hofer v. Mack, Trucks, Inc.*,
   981 F.2d 377 (8th Cir. 1993) ..............................................................................13

27

*In re Anthem, Inc. Data Breach Litig.*,
  236 F. Supp. 3d 150 (D.D.C. 2017)........................................................7

*In re City of New York*,
  607 F.3d 923 (2d Cir. 2010)..................................................... *passim*

*In re Dep't of Investigation of City of New York*,
  856 F.2d 481 (2d Cir. 1988)..................................................................4

*In re Google RTB Consumer Priv. Litig.*,
  2023 WL 2456787 (N.D. Cal. Mar. 10, 2023) .....................................3

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997).............................................................7

*In re Sealed Case*,
  856 F.2d 268 (D.C. Cir. 1988).............................................................9

*In re U.S. Dep't of Homeland Sec.*,
  459 F.3d 565 (5th Cir. 2006) ...............................................................5

*In re United Telecommunications, Inc. Sec. Litig.*,
  799 F. Supp. 1206 (D.D.C. 1992).........................................................9

*Jones v. United States*,
  2014 WL 12853504 (C.D. Cal. Mar. 10, 2014)....................................5

*Kelly v. City of San Jose*,
  114 F.R.D. 653 (N.D. Cal. 1987).......................................................10

*Landry v. F.D.I.C.*,
  204 F.3d 1125 (D.C. Cir. 2000)...........................................................9

*MacNamara v. City of New York*,
  249 F.R.D. 70 (S.D.N.Y. 2008) .......................................................7, 9

*Manning v. Dep't of Justice*,
  234 F. Supp. 3d 26 (D.D.C. 2017).......................................................7

*Maria Del Socorro Quintero Perez, CY v. United States*,
  2016 WL 362508 (S.D. Cal. Jan. 29, 2016).........................................7

iii

*Nat'l Cong. for Puerto Rican Rts. ex rel. Perez v. City of New York*,
  194 F.R.D. 88 (S.D.N.Y. 2000) .................................................................. 11, 12

*Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*,
  2006 WL 3311514 (S.D. Ohio Nov. 13, 2006) ......................................4

*Powell v. Town of Sharpsburg*,
  2008 WL 11378867 (E.D.N.C. June 23, 2008) ......................................6

*Rivera v. NIBCO, Inc.*,
  364 F.3d 1057 (9th Cir. 2004) ...............................................................13

*Roman v. Wolf*,
  2020 WL 6588399 (C.D. Cal. July 16, 2020)........................................8

*Shah v. Dep't of Just.*,
  714 F. App'x 657 (9th Cir. 2017) ...........................................................5

*Shelley v. Cnty. of San Joaquin*,
  2015 WL 3507412 (E.D. Cal. June 3, 2015) ..........................................5

*Solis v. New China Buffet No. 8, Inc.*,
  2011 WL 2610296 (M.D. Ga. July 1, 2011)...........................................8

*Tennison v. City & Cnty. of San Francisco*,
  2005 WL 1639447 (N.D. Cal. July 13, 2005) .......................................11

*Tran v. Gore*,
  2012 WL 5427917 (S.D. Cal. Nov. 7, 2012)..........................................3

*Tri-State Hosp. Supply Corp. v. United States*,
  226 F.R.D. 118 (D.D.C. 2005).................................................................7

*United States v. Arora*,
  2018 WL 3429915 (D.N.M. July 17, 2018)............................................7

*United States v. City of Los Angeles*,
  2023 WL 6370887 (C.D. Cal. Aug. 28, 2023) .......................... 5, 8, 9, 11

*United States v. Lang*,
  766 F. Supp. 389 (D. Md. 1991) .............................................................4

*United States v. Rodriguez-Landa,*
  2019 WL 653853 (C.D. Cal. Feb. 13, 2019) .........................................................5

*United States v. Matish,*
  193 F. Supp. 3d 585 (E.D. Va. 2016) .....................................................4

*Voggenthaler v. Maryland Square,*
  2011 WL 112115 (D. Nev. Jan. 13, 2011).........................................................13

## **Statutes**

5 U.S.C. § 552(b)(7).........................................................2

## **Rules**

Fed. R. Civ. P. 37(a)(3)(B)(iv) .........................................................3

v

# INTRODUCTION

Plaintiffs herein move to compel regarding the law enforcement privilege invoked by Defendants. Specifically, Plaintiffs seek an order from this Court holding that the law enforcement privilege is not applicable to this case, ordering Defendants to produce unredacted versions of documents provided to them, and precluding Defendants from using the law enforcement privilege going forward. ECF No. 118-1 at 2 (hereinafter "Motion" or "Mot."). Plaintiffs are wrong on all fronts.

Contrary to Plaintiffs' assertions, the law enforcement privilege is well-established and broadly recognized. The privilege guards against the disclosure of information that would reveal sensitive law enforcement methods, techniques, or investigations, and the information redacted and protected by Defendants lies within the heartland of that privilege.

Likely recognizing that this privilege does exist, Plaintiffs then argue that they are nonetheless entitled to unredacted versions of materials shielded by the privilege. But Plaintiffs have not described with specificity many of the materials that they seek, and they cannot show a compelling need—as Plaintiffs must—for the limited materials that they do specifically describe to overcome Defendants' law enforcement privilege assertions over the redacted information. The materials over which Defendants have invoked the privilege relate to records from CBP's TECS database, the principal system used by CBP officers at the border to assist with screening and determinations regarding the admissibility of arriving persons. Those records, by necessity, contain law enforcement codes and information bearing on Defendants' law enforcement techniques and processes to carry out their national security and law enforcement missions. Consequently, Defendants have appropriately redacted those codes and information. This is because public disclosure of those codes and information would arm terrorists and adversaries with the knowledge of who would be required to undergo additional screening and who

1

would not. Meanwhile, disclosure of law enforcement techniques would self-evidently allow individuals to circumvent law enforcement in the future. Finally, Plaintiffs' technical arguments for why Defendants have not invoked the privilege are meritless. In particular, Defendants have properly supported their assertion of the law enforcement privilege with declarations, and the parties' stipulated protective order does not lessen or obviate the privilege.

For these reasons, as explained further below, the Court should deny Plaintiffs' Motion.

## BACKGROUND

As relevant to the instant opposition, on September 13, 2022, the parties negotiated and agreed to a protective order regarding the disclosure of confidential information to Plaintiffs. *See* ECF No. 53. The protective order, in establishing good cause, notes that "this action is likely to involve the production of nonprivileged information contained in law enforcement records and communications or produced at a deposition or hearing." *Id.* at 2. The protective order further adds that:

> [S]ome of this *nonprivileged* information is likely law-enforcement sensitive and for official use only, in that it may regard such things as law enforcement activities and operations, internal policies, processes and procedures, and training materials, all of which may be protected from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b)(7), or protected from disclosure under other federal law, or which is generally unavailable to the public because its disclosure could adversely impact such things as a person's privacy or welfare or the conduct of programs or operations essential to the national interest, but which a court may order to be produced.

*Id.* (emphasis added). The protective order, however, does not identify what types or categories of information are nonprivileged. It also does not say that law-enforcement sensitive information is entirely nonprivileged. The protective order also identifies confidential information to be protected as "[i]nformation that is otherwise sensitive, but unclassified, which the agency determines is not appropriate

2

for public release, and the disclosure of which is reasonably expected to cause harm to law enforcement interests." *Id.* at 4. However, the protective order does not exclude such information from a claim of privilege.

Since the outset of discovery, Defendants have consistently asserted the law enforcement privilege over certain materials, both in their responses to Plaintiffs' discovery requests and in privilege logs explaining what materials have been withheld from Plaintiffs. *See, e.g.*, Ex. 1 at 21; Ex. 2. However, Plaintiffs have continued to take the position that this privilege does not exist or is otherwise nullified by the parties' protective order. Mot. at 4. Following an April 11 meet and confer where Defendants reiterated their view that the privilege was applicable, *id.* at 5, Plaintiffs filed the Motion to which Defendants now respond.

## STANDARD OF REVIEW

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). On a motion to compel "[t]he moving party bears the initial burden of showing that its discovery request satisfies the relevancy requirements of Rule 26(b)(1)." *Tran v. Gore*, 2012 WL 5427917, *2 (S.D. Cal. Nov. 7, 2012); *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 2518948, *2 (E.D. Cal. June 23, 2011) (same). Thereafter, the party resisting discovery bears the burden of clarifying, explaining, and supporting its objections. *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002). Should the objecting party raise a claim of privilege and properly support that privilege then this information is protected from disclosure. *In re Google RTB Consumer Priv. Litig.*, 2023 WL 2456787, at *2 (N.D. Cal. Mar. 10, 2023) ("A party claiming that a document or information is privileged or protected from disclosure has the burden to establish that the privilege or protection applies.").

3

**ARGUMENT**

**I.    The Law Enforcement Privilege Is Well-Established and Broadly Recognized.**

At the outset, Plaintiffs advance a maximalist position that the law enforcement privilege does not exist. Plaintiffs' extreme position is not only contrary to logic but has been persuasively rejected by caselaw across the country.

The law enforcement privilege is a common law privilege that "has been recognized in the absence of a statutory foundation." *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 483 (2d Cir. 1988); *see also Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 2006 WL 3311514, at *3 (S.D. Ohio Nov. 13, 2006) (describing the law enforcement privilege as "a common law privilege which has been recognized in both state and federal courts" (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984)). The privilege protects "information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation." *United States v. Matish*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016) (modifications omitted, quoting *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010)). That includes information the disclosure of which would impair "the ability of a law enforcement agency to conduct future investigations[.]" *In re City of New York*, 607 F.3d at 944; *see also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007) (upholding the FBI's assertion of the law enforcement privilege); *United States v. Lang*, 766 F. Supp. 389, 404 (D. Md. 1991) (granting a motion to quash based on law enforcement principles, because the documents "would reveal what the SEC knows about the activity under investigation and what portions of that activity it feels are important").

Indeed, cases across the Ninth Circuit have recognized the importance of the privilege, which is "based on the harm to law enforcement efforts which might arise from public disclosure of investigatory files." *United States v. City of Los Angeles*, 2023 WL 6370887, at *8 (C.D. Cal. Aug. 28, 2023) (collecting cases); *see also, e.g.*, *Doe 1 v. McAleenan*, 2019 WL 4235344, at *7 (N.D. Cal. Sept. 6, 2019); *Shelley v. Cnty. of San Joaquin*, 2015 WL 3507412, at *3 (E.D. Cal. June 3, 2015); *Jones v. United States*, 2014 WL 12853504, at *2 (C.D. Cal. Mar. 10, 2014).

In fact, "the reasons for recognizing the law enforcement privilege are even more compelling" when "the compelled production of government documents could impact highly sensitive matters relating to national security." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006). As the attached declaration of the acting Director of the Threat Screening Center ("TSC"), Steven L. McQueen, McQueen demonstrates, the law enforcement privilege here is essential to "prevent harm to law enforcement interests and *national security*." Ex. 3 ¶ 12 (emphasis added) ("McQueen Decl.").

Against this weight of authority, Plaintiffs cite a single case that rejected the law enforcement privilege's existence without any reasoning or explanation, *see United States v. Rodriguez-Landa*, 2019 WL 653853, at *16 (C.D. Cal. Feb. 13, 2019), and note that the Ninth Circuit has "yet to recognize or reject a 'law enforcement privilege,'" *Shah v. Dep't of Just.*, 714 F. App'x 657, 659 n.1 (9th Cir. 2017). But the overwhelming weight of caselaw above trumps *Rodriguez-Landa*'s ill-considered finding, and even the Ninth Circuit has recognized that "several other circuits ha[d] adopted [a law enforcement] privilege" and so decided to apply the privilege, albeit without definitively holding that the privilege exists. *Id.* Plaintiffs' other cited cases did not reject the privilege's existence and only found that the privilege did not apply in that instance because the defendants there had not carried their burden. *See Est. of Solis v. Cnty. of Riverside*, 2024 WL 4783819, at *9 (C.D.

Cal. Sept. 19, 2024); *Hereford v. City of Hemet*, 2023 WL 6813740, at *17 (C.D. Cal. Sept. 14, 2023).

At bottom, an overwhelming number of courts, both within the Ninth Circuit and around the country, have repeatedly found that the law enforcement privilege exists. *See In re City of New York*, 607 F.3d at 942 (holding that the law enforcement privilege is "grounded in well-established doctrine and is widely recognized by federal courts").

## II. Defendants Properly Invoked the Law Enforcement Privilege in This Case.

Perhaps recognizing that their maximalist position goes too far, Plaintiffs argue in the alternative that, for a potpourri of reasons, even if the law enforcement privilege exists (which it does), the privilege does not apply to this case. None of their arguments for this position are persuasive.

*First*, Plaintiffs argue that the protective order prevents Defendants from asserting the law enforcement privilege. Mot. at 7-8. But the protective order's own terms indicates that it was meant to govern "*non-privileged* information." ECF No. 53 at 2 (emphasis added). This limitation reflects the common-sense notion that privileged material is "not discoverable, regardless of the existence of a protective order prohibiting public disclosure of discovery materials marked 'confidential.'" *Garcia v. City of Garden Grove*, 2016 WL 9107424, at *1 (C.D. Cal. Oct. 26, 2016); *Powell v. Town of Sharpsburg*, 2008 WL 11378867, at *3 (E.D.N.C. June 23, 2008) (similar).

This is particularly true with privileged law enforcement information, which is ill-suited for disclosure under a protective order. "[I]f confidential law enforcement information is disclosed on an 'attorneys' eyes only' basis, the police may never know if their undercover operations have been compromised by an unauthorized disclosure of that information." *In re City of New York*, 607 F.3d at

6

936.[1]

With respect to the information at issue in this case, "release of the law enforcement sensitive information described in this declaration, in any form, even under an attorney's eyes only protective order, poses far too great a risk to national security." McQueen Decl. ¶ 14.; *see, e.g., Manning v. Dep't of Justice*, 234 F. Supp. 3d 26, 36 (D.D.C. 2017) (stating that the Executive Branch's "predictive judgments of harm" from the release of law enforcement information are "entitled to deference" especially where they concern "matters of national security").

*Second*, Plaintiffs assert that Defendants have failed to provide a declaration "by the head of the department with control over the requested information." Mot. at 9 (quoting *Hereford*, 2023 WL 6813740, at *11). But Defendants "had no obligation to formally invoke the privilege in advance of the motion to compel." *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 134 n.13 (D.D.C. 2005); *see also In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("Nor did the White House have an obligation to formally invoke its privileges in advance of the motion to compel."); *Maria Del Socorro Quintero Perez, CY v. United States*, 2016 WL 362508, at *3 (S.D. Cal. Jan. 29, 2016) (finding that government did not waive law enforcement privilege assertion by submitting declaration for the first time in response to a motion to compel); *United States v. Arora*, 2018 WL 3429915, *1-*2

---

[1] Plaintiffs' cited cases that supposedly support the proposition that the privilege cannot be invoked where there is a protective order do not go so far as Plaintiffs represent. *See Conan v. City of Fontana*, 2017 WL 2874623, at *5 (C.D. Cal. July 5, 2017) (rejecting the application of the privilege because "the declaration submitted on behalf of Defendants only provide[d] general assertions of harm"); *MacNamara v. City of New York*, 249 F.R.D. 70, 91 (S.D.N.Y. 2008) (determining disclosure was appropriate after balancing the parties' interests and assuaging concerns with the court's ruling by pointing to the ability to invoke protective orders to limit disclosure); *see also In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 167 (D.D.C. 2017) (same)

(D.N.M. July 17, 2018) (finding that agency official may assert deliberative process privilege at time of response to discovery request and considering substance of agency declaration provided after filing of motion to compel); *Solis v. New China Buffet No. 8, Inc.*, 2011 WL 2610296, *2 (M.D. Ga. July 1, 2011) ("The formal invocation of the [government] privilege, . . . need not come until the Government is faced with a motion to compel."). And Defendants have met any requirements to invoke the privilege by providing the two declarations attached to this opposition to Plaintiffs' motion. *See generally* McQueen Decl.; Ex. 4 ("Holtzer Decl."). Indeed, a rule requiring a declaration contemporaneous to any assertion of the law enforcement privilege would be unworkable, given that the privilege may be invoked in the middle of a deposition. *See City of Los Angeles*, 2023 WL 6370887, at *11 (C.D. Cal. Aug. 28, 2023).

*Third*, Plaintiffs dismiss the privilege explanations provided in Defendants' privilege logs as insufficient to uphold the law enforcement privilege. But of course, assertions of privilege are judged based on the more detailed justifications provided in declarations to support the privilege, not on the shorter descriptions of the privilege provided in privilege logs. Plaintiffs seem to recognize as much, citing cases that evaluate agency declarations filed in support of the law enforcement privilege. *See, e.g.*, *Roman v. Wolf*, 2020 WL 6588399, at *2 (C.D. Cal. July 16, 2020) (considering the justifications provided in a declaration).

Here, Defendants have provided two declarations in support of the law enforcement privilege.[2] *See generally* McQueen Decl.; Holtzer Decl. The

---

[2] To the extent that Plaintiffs might complain that declarations were not provided by the appropriate agency official, they are mistaken. Deputy Director McQueen is currently the acting Director of the TSC, McQueen Decl. ¶ 1, and "multiple other courts have held that the law enforcement/investigative privilege may be invoked by 'an appropriate agency official' instead of a department head."
*(footnote cont'd on next page)*

declaration of Steven L. McQueen, acting Director of the TSC, explains the risk of disclosure—of the information that Plaintiffs seek—to law enforcement, counterterrorism investigations, and intelligence efforts. McQueen Decl. ¶ 10. Similarly, Defendants have also provided the declaration of Executive Director for Operations, at CBP, Christopher R. Holtzer, which explains how individuals could thwart CBP's enforcement efforts if certain information in the TECS records were disclosed. Holtzer Decl. ¶¶ 12-13. These agency declarations provide more than the "mere conclusory or *ipse dixit* assertions" that are insufficient to claim the privilege. *MacNamara v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (quotation omitted).

### III.    Plaintiffs Cannot Show that Their Need for Withheld Material Outweighs the Assertion of the Law Enforcement Privilege.

Once the law enforcement privilege is determined to apply, "the district court must balance the public interest in nondisclosure against 'the need of a particular litigant for access to the privileged information.'" *In re New York City*, 607 F.3d at 948 (quoting *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)); *see also McAleenan*, 2019 WL 4235344, at *3.

And to overcome the privilege, a litigant's need must be "compelling." *Id.*; *see also Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997) (applying a "strong presumption against lifting the privilege"); *In re United Telecommunications, Inc. Sec. Litig.*, 799 F. Supp. 1206, 1208 (D.D.C. 1992) (law enforcement privilege "can be overcome if there is a compelling need for the information"); *McAleenan*, 2019 WL 4235344, at *6 (law enforcement privilege overcome because "plaintiffs have demonstrated a critical need" for the

*City of Los Angeles*, 2023 WL 6370887, at *9; *see also Landry v. F.D.I.C.*, 204 F.3d 1125, 1136 (D.C. Cir. 2000) (permitting declarations by "declarants of "sufficient rank to achieve the necessary deliberateness in assertion of the . . . law enforcement privilege[]").

information). In other words, "[i]t is not enough that the information might be of 'some assistance'" to the party seeking it.[3] *Ayala v. City of New York*, 2004 WL 2914085, at *1 (S.D.N.Y. Dec. 16, 2004).

**A. Plaintiffs have not shown—and plainly cannot show—a "compelling need" for information that they do not specifically describe.**

As noted above, in order to overcome the law enforcement privilege, a party must show a "compelling" need for that information that outweighs the "the public interest in nondisclosure." *In re New York City*, 607 F.3d at 948. This requires the party seeking to overcome the privilege to explain and to describe the specific piece of information that the party seeks and why that party's need for the information is compelling.

Plaintiffs do not meet that standard with boilerplate arguments that they have a significant need "for the redacted material" as a whole, Mot. at 11, or for "complete answers to all interrogatories," *id.* at 15. Plaintiffs do not specifically describe which redactions or interrogatories they are disputing, why any information already provided is (in their view) inadequate, or why their need for more information is compelling" or "critical." *In re New York City*, 607 F.3d at 948. Without any such precise description, it is impossible for any court to determine whether Plaintiffs' need is "compelling" or "critical" or to do any rigorous balancing of the public interest in non-disclosure with Plaintiffs' interest in the information.

Indeed, as Plaintiffs' arguments elsewhere in their Motion demonstrate, they seek different information for different reasons. *See* Mot. at 13-14. But for a court

---

[3] Plaintiffs' language supporting a "balancing approach that is moderately pre-weighted in favor of disclosure," Mot. at 11, comes from a case concerning the "official information privilege," not the law enforcement privilege, *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987). The law enforcement and national security considerations involved here justify a higher bar for disclosure of privileged information.

10

to weigh Plaintiffs' reasons against Defendants' law enforcement and national security interests, Plaintiffs must at a minimum specify the precise information they seek, the reasons they seek it, and why that information cannot be found elsewhere.

Plaintiffs' generic arguments do not even meet their lesser burden on a motion to compel to "both identify specifically the portions of the responses that are inadequate, and explain, at least briefly, what is missing or what kind of information would be necessary to make the response adequate." *Gerawan Farming*, 2011 WL 2518948, at *2. Plaintiffs' *carte blanche* ask to have Defendants to provide complete answers to all interrogatories does not satisfy that requirement.

Similarly unpersuasive is Plaintiffs' argument that the law enforcement privilege is overcome because some of the records date from several years ago and "there is no indication that Defendants are investigating Plaintiffs in this matter." Mot. at 12. As an initial matter, whether any individual is currently under federal investigation is itself privileged. For instance, information—including any found in TECS records—on whether an individual is in the Terrorist Screening Dataset ("TSDS") is law-enforcement privileged. McQueen Decl. ¶¶ 9, 11. But more generally, "[a]n investigation need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed." *City of Los Angeles*, 2023 WL 6370887, at *8; *see also In re City of New York*, 607 F.3d at 944; *Tennison v. City & Cnty. of San Francisco*, 2005 WL 1639447, at *3 (N.D. Cal. July 13, 2005) ("[A]n investigation need not be ongoing in order for the privilege to apply."); *Nat'l Cong. for Puerto Rican Rts. ex rel. Perez v. City of New York*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000).

The specific facts of this case make clear why such an arbitrary time limitation on the law enforcement privilege would be inappropriate. Disclosure of the information discussed in the McQueen Declaration "would arm terrorists with the

11

knowledge" that could allow them to "evade enhanced security screening," regardless the existence of any ongoing investigation. McQueen Decl. ¶ 11. And more generally, public disclosure of law enforcement methods and techniques would allow individuals to circumvent law enforcement, again regardless the existence of any ongoing investigation. *See* Holtzer Decl. ¶¶ 12-13.

In short, the government's interest in keeping these materials redacted remains weighty, and Plaintiffs have not shown that they have a compelling need for the information that Defendants have withheld thus far in the litigation.

### B. Plaintiffs have not shown a compelling need for the specific information and records that they do discuss.

Plaintiffs do discuss some specific information that they seek: 1) the "text in the free-text fields of the TECS Reports"; 2) three specific fields in TECS records: "Create Incident Log," "Incident Log Report #," and "Create EMR"; 3) a separate TECS field concerning "whether the 'Chief Council' was notified"; 4) TECS fields that "reveal the reasons Plaintiffs were sent to secondary inspections"; and 5) information that was disclosed through FOIA but withheld as privileged in this case. Mot. at 13-14. Defendants have determined that, consistent with the law enforcement privilege, they can release to Plaintiffs the TECS field concerning whether the Chief Counsel was notified. Holtzer Decl. ¶ 14. But Plaintiffs provide no "compelling need" for the other information that they seek.

*First*, Plaintiffs argue that "Defendants must disclose the text in the free-text fields of the TECS Reports." Mot. at 13. Plaintiffs argue that "[t]his text is highly probative because it is the only place where Defendants recount their encounters with Plaintiffs." *Id.* But much of these free-text fields are already disclosed to Plaintiffs. *See, e.g.*, ECF No. 108-11 at 3; Ex. 5. As Exhibit 5 attached shows, Defendants have released to Plaintiffs information that is most relevant to their claims regarding religious questioning: the substance of the questions that

Defendants asked Plaintiffs and Plaintiffs' responses.

The information that Defendants did redact under the law enforcement privilege is narrowly tailored and justified by the weighty interest in not disclosing law enforcement sensitive techniques. Holtzer Decl. ¶ 9. Moreover, a subset of the redactions is additionally justified because the information's release "could reasonably be expected to risk circumvention of law and cause harm to national security." McQueen Decl. ¶¶ 9-10. Defendants have thus disclosed to Plaintiffs significant information in these fields that they can use to support their claims—including information that is the most relevant to Plaintiffs' claims—and Plaintiffs do not explain in their Motion why they believe the information already disclosed is insufficient or what their "compelling need" is for more.

*Second*, Plaintiffs argue that "Defendants must disclose" three TECS fields that would "enable Plaintiffs to effectively pursue discovery." Mot. at 13-14. Once again, Plaintiffs are asking for the disclosure of information that is law enforcement privileged. Holtzer Decl. ¶¶ 7-8.

And their rationale for this disclosure is even less compelling as Plaintiffs argue that "[w]ithout this information, Plaintiffs cannot determine whether they have received all discovery they are due." Mot. at 14. This argument is not specific to Plaintiffs' claims and effectively asks for discovery to probe known unknowns without a showing of relevance. That is not how discovery works. In discovery, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Voggenthaler v. Maryland Square*, 2011 WL 112115, at *8 (D. Nev. Jan. 13, 2011) (quoting *Hofer v. Mack*, *Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1993)). And "[d]istrict courts need not condone the use of discovery to engage in fishing expeditions." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (cleaned up).

*Third*, Plaintiffs argue that "Defendants must disclose the portions of the TECS Reports that reveal the reasons Plaintiffs were sent to secondary inspection" and specify several fields that they believe contain this information. Mot. at 14. But this is again tangential to the core issue in the case: whether Defendants allegedly have an official policy or practice of discriminatory religious questioning. Plaintiffs' claims concern "religious questioning during secondary inspections," Am Compl., ECF No. 61 ¶ 206, but they have not claimed that they were discriminatorily *selected* for secondary inspections.

Further, the specific reasons why any individual is sent to secondary inspection lie at the core of the law enforcement privilege. As a general matter, revealing the reasons that CBP referred Plaintiffs to secondary inspection "would enable individuals to alter their patterns of conduct, adopt new methods of operation, and effectuate other countermeasures to circumvent the inspection process and undermine law enforcement techniques, and, consequently, the law." Holtzer Decl. ¶ 12. Further, as explained in the McQueen Declaration, this information "could reasonably be expected to risk circumvention of law and cause harm to national security." McQueen Decl. ¶¶ 9-10. In particular, the information "could allow U.S. adversaries to deduce and/or identify law enforcement sensitive sources and/or methods" and "would also compromise ongoing counterterrorism investigations and intelligence efforts." *Id.* ¶¶ 11, 13. Defendants' law enforcement and national security concerns are thus exceptionally high, and courts have repeatedly approved Defendants' need to withhold this type of information. "Disclosure [of this type of information] would disrupt and potentially destroy counterterrorism investigations because terrorists could alter their behavior, avoid detection, and destroy evidence." *Elhady v. Kable*, 993 F. 3d 208, 2015 (4th Cir. 2021).

*Fourth*, Plaintiffs argue that "Defendants must disclose all information in the TECS Reports that has been made available to Plaintiffs through Freedom of

14

Information Act [FOIA] requests," chiefly noting discrepancies in redactions between materials Plaintiffs received through FOIA and in materials produced in discovery. Mot. at 14. However, to the extent that any redactions were incorrectly applied in prior FOIA materials, Defendants should not be required to repeat the incorrect redactions in discovery and can appropriately provide new redactions in discovery. Holtzer Decl. ¶ 15. In any event, compelled disclosure of duplicative information is pointless here. Plaintiffs already have the materials through FOIA and there is no basis for the Court to require production of the same information again.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel regarding the law enforcement privilege.


Dated: June 2, 2025

                Respectfully submitted,

                YAAKOV M. ROTH
                Acting Assistant Attorney General
                Civil Division

                ANDREW I. WARDEN
                Assistant Branch Director
                Federal Programs Branch, Civil Division

                */s/ Yuri S. Fuchs*
                ROBERT W. MEYER (NY Bar No. 5942842)
                YURI S. FUCHS (CA Bar No. 300379)
                Trial Attorney
                Civil Division, Federal Programs Branch
                United States Department of Justice
                1100 L Street, NW, Washington, D.C. 20005
                Telephone: (202) 305-0872

(202) 598-3869
Email:  Robert.W.Meyer@usdoj.gov
Yuri.S.Fuchs@usdoj.gov

*Counsel for Defendants*