YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch, Civil Division

ROBERT W. MEYER (NY Bar No. 5942842)
YURI S. FUCHS (CA Bar No. 300379)
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 598-3869
Email: Yuri.S.Fuchs@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDIRAHMAN ADEN KARIYE, *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary of the U.S. Department of Homeland Security, in his official capacity, *et al.*,<br><br>   *Defendants*. | CASE NO. 2:22-CV-1916-FWS-GJS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL REGARDING PRODUCTION OF DOCUMENTS** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................ 2

ARGUMENT ..................................................................................................... 4

    I.    Plaintiffs Cannot Mandate that Defendants Engineer a New Search of the TECS Database. ................................................... 4

    II.    Defendants Are Preserving Documents from CRCL ................. 7

    III.    Defendants Have Properly Responded to Plaintiff's Interrogatory No. 7. ...................................................................... 7

    IV.    Defendants Should Not Be Compelled to Search for and Produce Communications from Work Phones Predating May 1, 2023. ............................................................................... 10

    V.    Plaintiffs' Requests for Performance Reviews and Commendations Are Not Proportional ................................... 13

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITES

**Cases**

*Beauchamp v. Fed. Home Loan Mortg. Corp.*,
  2015 WL 13450670 (E.D. Ky. May 7, 2015) ..................................................... 11

*Bible v. Rio Properties, Inc.*,
  246 F.R.D. 614 (C.D. Cal. 2007) ........................................................................ 6

*C.R. Dep't v. Grimmway Enters., Inc.*,
  2025 WL 621594 (E.D. Cal. Feb. 26, 2025) ....................................................... 8

*DIRECTV, Inc. v. Trone*,
  209 F.R.D. 455 (C.D. Cal. 2002) ........................................................................ 4

*Duval v. L. Off. of Andreu, Palma & Andreu, PL*,
  2010 WL 2179763 (S.D. Fla. May 31, 2010) .................................................... 15

*Hancock v. Aetna Life Ins. Co.*,
  321 F.R.D. 383 (W.D. Wash. 2017) .................................................................... 5

*LaRouche v. National Broadcasting Co., Inc.*,
  780 F.2d 1134 (4th Cir. 1986) ........................................................................... 13

*McClintock v. Cooper*,
  2020 WL 3251027 (E.D. Cal. June 16, 2020) ................................................... 14

*Nece v. Quicken Loans, Inc.*,
  No. 8:16-CV-2605-T-23CPT, 2018 WL 1072052 (M.D. Fla. Feb. 27, 2018) .... 12

*Paramount Pictures Corp. v. Replay TV*,
  2002 WL 32151632 (C.D. Cal. 2002) ................................................................. 6

*Pleasant v. Miranda*,
  2021 WL 829735 (C.D. Cal. Jan. 25, 2021) ...................................................... 14

*Probuilders Specialty Ins. Co. v. Valley Corp.*,
  2012 WL 6045753 (N.D. Cal. Nov. 28, 2012) .................................................... 9

*Pulsecard, Inc. v. Discover Card Servs., Inc.*,
  168 F.R.D. 295 (D. Kan. 1996) ........................................................................... 9

*Sicklick v. DirecTV Welfare Benefit Plan*,
  2015 WL 13916209 (C.D. Cal. Jan. 22, 2015) .................................................... 12

*Tran v. Gore*,
  2012 WL 5427917 (S.D. Cal. Nov. 7, 2012) ....................................................... 4

*United States ex rel. Singh v. Paksn, Inc.*,
  2022 WL 18397532 (C.D. Cal. Dec. 5, 2022) ..................................................... 7

*Wachuku v. JetBlue Airways Corp.*,
  2021 WL 4497157 (C.D. Cal. Apr. 29, 2021) ..................................................... 12

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 3

Fed. R. Civ. P. 37(a)(3)(B)(iv) ..................................................................................... 4

# INTRODUCTION

Plaintiffs bring their motion to compel regarding the production of documents seeking a miscellaneous assortment of relief despite the parties' ongoing dialogue and Defendants' productions in discovery. Defendants have engaged with Plaintiffs in constructive dialogue and explained to Plaintiffs what is relevant and what is not unduly burdensome for Defendants to produce in discovery, but Plaintiffs now seek to short-circuit that dialogue and demand the production of various documents and responses. Plaintiffs' demands are not well taken. And when considered in total, Plaintiffs' demands highlight that they are seeking burdensome measures in discovery that are not proportional to Plaintiffs' needs in this case.

Despite Defendants' explanations that the TECS database has limited front-end search capabilities and despite the existing production of records from that database relevant to Plaintiffs' claims, Plaintiffs demand that Defendants make this sensitive law enforcement database text searchable. But that database's capabilities are axiomatically law enforcement privileged. Plaintiffs have already obtained relevant information from this database. Further, overhauling the database to render it searchable for Plaintiffs' litigation demand is unduly burdensome particularly given that Plaintiffs' demand would severely degrade the performance of this sensitive and important database.

Despite the parties' dialogue on what complaints of religious questioning will be produced, Plaintiffs have come into court to demand that complaints from the DHS Office for Civil Rights and Civil Liberties ("DHS CRCL") be preserved and to demand the swift productions of any such complaints. But Defendants can assure Plaintiffs and this Court that responsive complaints from DHS CRCL have been retained and will be searched and produced, as appropriate, on a manageable timetable. Despite Defendants' clear response to Plaintiffs' Interrogatory No. 7, Plaintiffs seek to nitpick that response and claim that they have not been provided

with relevant information regarding the CBP officers present for the incidents alleged in Plaintiffs' First Amended Complaint. But this information has been provided to Plaintiffs. And despite Defendants' explanations of the burden of searching work devices for data predating May 1, 2023 and pulling disciplinary materials of the officers, Plaintiffs insist on obtaining these searches and these materials. Yet once again, these requests are not proportional, and Defendants have offered alternative means for Plaintiffs to obtain information relevant to their claims. For these reasons, the Court should deny Plaintiffs' motion to compel regarding the production of documents.

## BACKGROUND

As recounted in Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Compel Production of Documents, ECF No. 120-1 (hereinafter "Motion" or "Mot."), the operative First Amended Complaint was filed on November 14, 2022, and Plaintiffs then propounded discovery requests to Defendants the day after. Mot. at 2. Since Defendants' second motion to dismiss was then pending, ECF No. 68, Defendants made a commonsense decision to produce a limited set of documents to Plaintiffs in April 2023, Mot. at 3, recognizing that the Court's ruling on that motion might obviate discovery. The Court's ruling on the motion to dismiss initially did obviate the need for discovery, with the Court entering judgment for Defendants. ECF No. 81. However, the Ninth Circuit subsequently vacated the judgment and remanded for further proceedings. ECF No. 90.

Following remand, Defendants have been working constructively with Plaintiffs in discovery. As Plaintiffs themselves acknowledge, Defendants have produced: TECS records regarding the incidents alleged in the Complaint, complaints related to religious questioning by non-Plaintiffs, and other documents regarding CBP's policies. *See* ECF No. 120-3 ¶ 24 ("Brehnan Decl."). Further, Defendants stipulated to continue the pretrial and trial dates to ensure that any delays

2

in discovery—regrettably amplified by emergency litigation being handled by Defendants—would not impinge on Plaintiffs' ability to adequately and fully take discovery. ECF Nos. 100, 104. Defendants have also committed to searching other relevant repositories of complaints such as DHS TRIP for complaints of religious questioning. *See* Ex. 1. And the parties have been progressively negotiating expansive search parameters of Defendants' electronically stored information ("ESI") meant to pull a broad swath of documents from senior officials, custodians from the various DHS component complaint offices, and the CBP officers present during the alleged incidents of religious questioning. Ex. 2.[1] Meanwhile, Defendants have explained their limitations in engaging in other expansive searches requested by Plaintiffs. *See, e.g.*, Pls' Ex. 18 at 2 (explaining the limitations of searching the TECS database). Plaintiffs have nonetheless filed the instant Motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Although discoverable information "need not be admissible," *id.*, discovery requests must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation,

---

[1] The parties are still negotiating the final terms of the search parameters. However, Defendants have already agreed to the search of senior officials, complaint offices, and correspondence from the officers with regards to broad terms, including references to Plaintiffs themselves and general terms related to religion.

production, or inspection" if a party fails to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). On a motion to compel "[t]he moving party bears the initial burden of showing that its discovery request satisfies the relevancy requirements of Rule 26(b)(1)." *Tran v. Gore*, 2012 WL 5427917, *2 (S.D. Cal. Nov. 7, 2012). Thereafter, the party resisting discovery bears the burden of clarifying, explaining, and supporting its objections. *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

## ARGUMENT

### I. Plaintiffs Cannot Mandate that Defendants Engineer a New Search of the TECS Database.

In their Motion and accompanying materials, Plaintiffs acknowledge that: 1) Defendants have provided existing TECS records regarding the Plaintiffs themselves; 2) Defendants have produced and agreed to further produce complaints regarding religious questioning of non-Plaintiffs; and 3) the TECS database has certain fields that can be searched but that the database is not amenable to a keyword search of other fields. *See* Mot. at 5; Brehnan Decl. ¶ 24. Nonetheless, Plaintiffs seek to have this Court compel Defendants to render the TECS database text-searchable on a theory that this database *might* have information relevant to their claims despite the alternative means by which Plaintiffs have and can seek complaints regarding religious questioning. Plaintiffs' request is neither proper nor proportional.

To start, Plaintiffs' request does not actually communicate how Plaintiffs would propose to render the database text searchable. While Plaintiffs' claim that "Defendants flatly refused to consider standard e-discovery techniques that could facilitate keyword searches," Mot. at 6, Plaintiffs did not initially describe those techniques. *See, e.g.*, Pls' Ex. 5 at 3 (Defendants noting a lack of specifics had been provided when the proposal was first raised). Plaintiffs then fall back to a position that "the Court should order to have the TECS database administrator . . . meet with

Plaintiffs' e-discovery experts . . . on how to make the TECS database text-searchable." Mot. at 6. But that request and any directive for CBP to reconfigure the TECS database to satisfy Plaintiffs' demands are not appropriate as the TECS database and its capabilities are law enforcement privileged. Ex. 3 ¶ 18 ("Holtzer Decl."). Making those details available to private parties risks disclosure of sensitive law enforcement details regarding the database and how CBP conducts searches of its systems. *Id.*[2]

Plaintiffs' ask is not proportional either. *Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 390 (W.D. Wash. 2017) ("The court must limit discovery that is not proportional to the needs of the case."). Facilitating keyword searches across the entire TECS database is not supported by the database's capabilities. Holtzer Decl. ¶ 16. To enable these searches, CBP would have to scan the entire database, severely degrading system performance, impacting response times and potentially causing system outages. *Id.* ¶¶ 16-17. To implement Plaintiffs' demand, CBP would thus need to undermine the operation of a law enforcement sensitive database that CBP uses on a constant basis for border security screening. That is self-evidently not proportional. Moreover, Defendants are aware of no case—and Plaintiffs identify no such case—where a court has ever ordered a government defendant to undertake the time and expense of rendering its own database text-searchable. Instead, as courts have long recognized, "[a] party cannot be compelled to create, or cause to be

---

[2] Plaintiffs' offer to have counsel present on a call with TECS database administrators does not lessen this risk, Mot. at 6 n.7, as there is still a risk that law enforcement information regarding the database would be divulged to private parties when, to begin with, CBP only provides *law enforcement* partners with TECS access or records on a need-to-know basis. Holtzer Decl. ¶ 18. While Plaintiffs may argue that any such information gleamed by their e-discovery team could be protected under the Protective Order, the Protective Order does not mitigate against the risk of this particularly sensitive information. Ex. 4 ¶ 14 ("McQueen Decl.").

created, new documents solely for their production." *Paramount Pictures Corp. v. Replay TV*, 2002 WL 32151632, *2 (C.D. Cal. 2002). A corollary of this point rings true here: Defendants cannot be compelled to create or modify a database beyond its existing capabilities and find some way of making the TECS database keyword searchable.

Plaintiffs, citing a case regarding the production of prior complaints, *see* Mot. at 5 (citing *Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 619 (C.D. Cal. 2007)), seem to suggest that TECS reports are chiefly complaints and that the TECS database is a repository for complaints. Neither is true. Rather, TECS is a system of records that includes "temporary and permanent enforcement, inspection, and operational records relevant to the antiterrorism and law enforcement mission of CBP and numerous other federal agencies it supports." U.S. Customs and Border Protection, Privacy Impact Assessment for the TECS System: CBP Primary and Secondary Processing at 2 (Dec. 22, 2010), available at https://perma.cc/4BDV-XNTS. TECS is not a repository of complaints but rather serves as a data repository to support law enforcement "lookouts," border screening, and reporting for CBP's primary and secondary inspection processes. *Id.* And while Plaintiffs suggest that the reports will bear on "Defendants' policy and/or practice of religious questioning," Plaintiffs themselves have identified TECS reports that mention nothing of religious questioning. *See, e.g.*, Ex. 9 to Pls' Mot. to Comp. re Law Enforcement Privilege.

More importantly, TECS is not the only, or even the best, means of seeking complaints regarding religious questioning as to Plaintiffs and non-Plaintiffs. As Plaintiffs acknowledge, Defendants have produced and agreed to further produce complaints regarding religious questioning of non-Plaintiffs. Brehnan Decl. ¶ 24. Moreover, the parties are negotiating ESI searches that may further reveal complaints regarding religious questioning. In short, Plaintiffs' insistence on having

6

CBP reconfigure the TECS database to make it text searchable is not only improper; it is unnecessary given the existence of "less burdensome alternatives," to find complaints of religious questioning bearing on Plaintiffs' allegations of a pattern or policy of religious questioning. *United States ex rel. Singh v. Paksn, Inc.*, 2022 WL 18397532, at *1 (C.D. Cal. Dec. 5, 2022).

## II. Defendants Are Preserving Documents from CRCL

Next, Plaintiffs seek to compel Defendants to: 1) preserve relevant documents held by DHS CRCL; and 2) produce those documents within 30 days. Mot. at 7-8.

The first part is easy. Defendants confirm that they are fulfilling their discovery obligations to preserve possibly relevant material held by DHS CRCL. Ex. 5 ¶ 2 ("Mina Decl."). However, Defendants cannot produce the complaints held by DHS CRCL within 30 days given the very limited staff currently available to prepare and submit responses from DHS CRCL. *Id.* ¶ 3. Specifically, DHS CRCL requires no less than 45 days to collect and provide any responsive, relevant documents held by DHS CRCL given the office's limited resources following a reduction in force at DHS CRCL. *Id.* ¶ 3. This is because DHS CRCL has only a few remaining federal employees at the moment while the majority of CRCL employees are on administrative leave. *Id.* ¶ 3. Plaintiffs' request for an immediate turn-around of documents is not necessary either. The parties recently agreed to extend the deadline for non-expert discovery until January 9, 2026, *see* ECF No. 104 at 2, and Plaintiffs do not explain why, if Defendants confirm that they will preserve responsive documents, there needs to be a deadline for discovery from DHS CRCL as soon as possible. Further, as previously identified, the parties are still negotiating search parameters for the searches of documents from various custodians, including custodians from DHS CRCL. Accordingly, should deny Plaintiffs' request to impose an arbitrary and unreasonably short deadline on discovery from DHS CRCL.

## III. Defendants Have Properly Responded to Plaintiff's Interrogatory No. 7.

7

Plaintiffs next assert that Defendants' response to Plaintiffs' Interrogatory No. 7 is deficient. Mot. at 8-10. Interrogatory No. 7 asked the Government to identify the employees who "participated in, were present at, or supervised" the alleged incidents of religious questioning. Pls' Ex. 4 at 10. But Defendants have reasonably responded to this interrogatory by, subject to any privileges, identifying by name and rank the 12 officers of Defendants who actually questioned Plaintiffs during the alleged incidents of religious questioning and providing documents (the TECS records) that contain the identities of other CBP officers present at those inspections. *See* Defendants' Amended Responses and Objections at 3-4, ECF No. 120-9; ECF No. 120-10 at 8 (noting that TECS records Defendants produced to Plaintiffs identified additional officers).

Plaintiffs argue that Defendants' response is inadequate because it directs Plaintiffs to documents that "will be produced." *See* Mot. at 8. But that line of argument is misplaced because the documents identifying the CBP officers present at or supervising the alleged incidents of religious questioning have already *been produced*. The produced TECS records already contain the names of all CBP officers who were present for the inspections or who were contacted regarding the inspection. Holtzer Decl. ¶ 7.[3] And Defendants can appropriately refer to these records under Rule 33(d) in responding to Interrogatory No. 7, particularly because this limited universe of records makes it self-evident to Plaintiffs the names of the CBP officers present at any secondary inspection. *C.R. Dep't v. Grimmway Enters., Inc.*, 2025 WL 621594, at *7 (E.D. Cal. Feb. 26, 2025).[4]

---

[3] This negates Plaintiffs' speculation that more officers may have been involved in the incidents of religious questioning. Mot. at 9-10.

[4] For this reason, Plaintiffs' cited cases, noting that responses to interrogatories were improper where parties referred "generically" to documents, are
*(footnote cont'd on next page)*

      Plaintiffs otherwise complain that they have not been able to identify every single official who "supervised" the inspections discussed in the complaint. Mot. at 8-9. But Defendants reasonably did not provide those employees' identities in the interrogatory response because supervisory level employees generally would not directly interact with Plaintiffs and are responsible for overseeing the CBP officers that did. Holtzer Decl. ¶ 7; *see* Defendants' Amended Responses and Objections at 3-4 (objecting to producing the identifies of those who "did not conduct and were not present at" the questioning alleged in the complaint). Indeed, taking Plaintiffs' request literally, Plaintiffs would seek to have Defendants supplement Interrogatory No. 7 with everyone in the supervisory chain of the CBP officers that participated in the incidents of questioning. That would mean presumably the identification of the leadership chain within CBP and DHS. But those supervisory employees' identities are not relevant to this case or Plaintiffs' intended purposes—to identify individuals to serve as document custodians and potential deponents regarding the incidents of questioning—and identifying these employees would be burdensome and disproportionate to the needs of this case. Defendants thus appropriately limited their responses to CBP officers who had personally taken part in the incidents of questioning and directed Plaintiffs to documents that otherwise listed officers present at the incidents of questioning.

      Finally, Plaintiffs assert that "Defendants have limited searches for responsive documents to only those individuals expressly named in their amended response to

---

inapposite. Mot. at 8-9. Those cases involved instances where parties responded to interrogatories under Rule 33(d) by referring to a mass production of documents from which it would be difficult to discern the answer to the interrogatory. *See Probuilders Specialty Ins. Co. v. Valley Corp.*, 2012 WL 6045753, at *3 (N.D. Cal. Nov. 28, 2012) (involving an issue where the party "referre[ed] sweepingly and indiscriminately to [a] 19,000 page" document); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996) (noting defendants "made no specific election under Fed. R. Civ. P. 33(d)"). That is not the case here.

ROG 7." Mot. at 10. That is incorrect. As Plaintiffs note, complaints regarding religious questioning have been produced to them, which include complaints of non-Plaintiffs related to interactions that did not include the CBP officers identified in Interrogatory No. 7. *See* Brehnan Decl. ¶ 24. Moreover, in negotiating search parameters, Defendants have been willing to search for documents from senior level officials, custodians from the various DHS component complaint offices, and from all of the CBP officers identified in the TECS records as being present during the alleged incidents of religious questioning. Ex. 2. These searches are reasonable and proportional to the needs of this case. Accordingly, the Court should deny Plaintiffs' motion to compel as to Interrogatory No. 7.

**IV.   Defendants Should Not Be Compelled to Search for and Produce Communications from Work Phones Predating May 1, 2023.**

Next, Plaintiffs have moved to compel communications from the work phones of CBP officers involved in the secondary inspections. Subject to any privileges, Defendants have agreed to search for and produce responsive communications after May 1, 2023. The parties disagree only as to communications from before that date, with Plaintiffs asserting that Defendants must search the work phones of custodians for any data prior to May 1, 2023. Mot. at 10. This request should be denied. Data on work phones before May 1, 2023, is not likely to reveal relevant information, and it would be unduly burdensome for Defendants to search such information.

As a matter of relevance, communications from before May 1, 2023 are not likely to shed significant light on issues relevant to this case because non-supervisory CBP line officers are not issued work phones and only supervisors *may* have cell phones. Ex. 6 ¶ 3 ("Wurst Decl."). And supervisors would have less involvement in secondary inspections than the line officers. Holtzer Decl. ¶ 7. Thus, it is not clear that some custodians would have any relevant communications from work devices if they did not have work devices to begin with.

But even for those officers who would have had work devices, Plaintiffs' ask is not proportional. As Defendants explain in the attached Wurst declaration (and have previously explained to Plaintiffs), any communications by CBP officers on work devices using Microsoft applications would automatically back up to Microsoft 365 and would be produced in any ESI search for the relevant custodians regardless of whether such communications were before or after 2023. Wurst Decl. ¶ 4. And Defendants are already willing to do such searches under the parties' negotiated search parameters. Ex. 2.

However, communications on work devices predating May 1, 2023 were otherwise not separately retained and archived in a centralized data repository, thus the CBP Office of Information and Technology ("OIT") cannot perform centralized keyword searches of text messages and other cell phone date that existed prior to May 2023. Wurst Decl. ¶¶ 4, 7. Instead, in order to pull any such data, Defendants would have to search their records, identify which physical phones that certain officers and employees were using at relevant time periods, identify the location of those physical phones, and then manually go through the phones to search for responsive messages or voicemails and screenshot the responsive messages and separately record the responsive voicemails. *Id.* ¶ 8. Furthermore, any manual pulling of these records would be fruitful *only if* the custodians manually preserved cell phone data predating May 2023 and *only if* the cell phone data was still in existence given that new cell phones are issued to CBP supervisory employees every two to three years. *Id.* ¶¶ 3, 8-9.

This process is as unduly burdensome as it sounds, and so the burden of searching for and producing these communications, if they even exist, would be disproportionate to the needs of this case. Indeed, courts have repeatedly held that such manual searching of documents is unduly burdensome and disproportional to the needs of discovery. *See Beauchamp v. Fed. Home Loan Mortg. Corp.*, 2015 WL

11

13450670, at *2 (E.D. Ky. May 7, 2015) (holding "the minimal relevance of the documents is greatly outweighed by the steep burden it would incur in retrieving them via a manual search of its archives"); *Sicklick v. DirecTV Welfare Benefit Plan*, 2015 WL 13916209, at *5 (C.D. Cal. Jan. 22, 2015) (holding that a "manual review of thousands of claims" was unduly burdensome); *Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 WL 1072052, at *2 (M.D. Fla. Feb. 27, 2018) (discovery request requiring party to "manually search[] several systems for e-mails, text messages, recordings, and other communications" imposed "a burden disproportional to the needs of th[e] action").[5]

Plaintiffs' counterarguments for these burdensome searches are unavailing. Plaintiffs argue that Defendants "have shown no reason why they cannot employ standard e-discovery techniques to upload data from Defendants' work phones to a review database and conduct the review by search terms or date ranges." Mot. at 11. Yet, as Defendants explain herein, data from work phones prior to May 1, 2023, cannot be pulled in a centralized ESI search. Further, data from work phones cannot be manually pulled if the custodians never had a work device or no longer have their prior work device. Plaintiffs otherwise argue that "the relevance of contemporaneous communications from the pre-May 2023 period far outweighs any purported burden." *Id.* But Plaintiffs do not expound on this point, and the relevance of the communications that Plaintiffs seek is far lower than the weighty burden of manual collection. For one, it is speculative that CBP officers would have texted one another regarding the alleged incidents of questioning at issue in this case given the

---

[5] Plaintiffs cite to the case to the case of *Wachuku v. JetBlue Airways Corp.*, 2021 WL 4497157, at *12 (C.D. Cal. Apr. 29, 2021) in support of their arguments that "a manual document-by-document review" is still proper. Mot. at 11. However, *Wachuku* mentioned nothing of manual document review or the kind of burdens specified by Defendants in searching for communications from work phones.

12

multitude of secondary inspections carried out by CBP officers. Ex. 7 ¶ 8 ("Kinnahan Decl."). For another, Defendants have already agreed, in principle, to perform ESI searches for a broad set of terms across the CBP officers including those terms: related to Plaintiffs, relating to any allegations of religious questioning, and for a 3-day window predating and postdating the secondary inspections of Plaintiffs. Ex. 2. These broad searches thus provide a better, less burdensome alternative that militates against granting Plaintiffs' request to compel a manual document-by-document review of communications in work devices. *See LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986) (availability of information from alternative sources is a relevant factor in determining whether district court abused its discretion in denying motion to compel discovery). In sum, this Court should deny Plaintiffs' motion to compel the production of communications and data from work devices predating May 1, 2023.

V. **Plaintiffs' Requests for Performance Reviews and Commendations Are Not Proportional.**

Finally, Plaintiffs seek to compel the production of documents related to complaints, disciplinary actions, performance reviews, and commendations for the officers involved in the alleged incidents of religious questioning. Plaintiffs' request for complaints and disciplinary actions is complete, however, and their remaining demand is not proportional to this case. As Plaintiffs themselves acknowledge, Defendants have already searched for disciplinary incidents and complaints regarding the 12 individuals named in Defendants' response to Interrogatory 7 and found none to produce. Mot. at 12. Moreover, of the "9 additional officers" who Plaintiffs assert "were involved in Plaintiffs' incidents of religious questioning"—i.e., other CBP officers mentioned in the TECs reports for the incidents—Defendants have searched for their disciplinary records and found no records relating to complaints of religious questioning. Kinnahan Decl. ¶ 4. And any issue concerning

the disciplinary actions of the CBP officers would have been captured in a search of the officers' Electronic Official Personnel Folder ("eOPF") that Defendants have already searched. *Id.* ¶ 5.

Meanwhile, Plaintiffs' assertion that Defendants are deficient in not "search[ing] other relevant repositories of complaints and allegations" for the officers is not true. Mot. at 13. Again, Plaintiffs admit that they have already received complaints related to religious questioning. *See* Brehnan Decl. ¶ 24. In addition, Defendants have re-affirmed herein that they are retaining and producing responsive complaints from DHS CRCL, Mina Decl. ¶¶ 2-3, and Defendants have committed to searching other relevant repositories of complaints and allegations such as DHS TRIP for complaints of religious questioning. *See* Exs. 1-2.

At bottom, Plaintiffs' complaint is that Defendants will not produce employment records of the officers generally. But a broader search for records unrelated to religious questioning or discrimination is unjustified. Employment records unrelated to religious questioning are irrelevant and burdensome to obtain.

Plaintiffs claim that employment records are generally relevant because they "show that Defendants [] were *aware of* and indifferent to previous relevant conduct." Mot. at 12 (quoting *Pleasant v. Miranda*, 2021 WL 829735, at *6 (C.D. Cal. Jan. 25, 2021)). But this theory does not justify the production of employment records that do not relate to "relevant conduct"—religious questioning—because records unrelated to religious questioning shed no light on whether the Government was "aware of" any religious questioning alleged here. *See McClintock v. Cooper*, 2020 WL 3251027, at *8 (E.D. Cal. June 16, 2020) ("To the extent plaintiff seeks defendants' disciplinary records regarding matters unrelated to this action, the undersigned finds that these disciplinary records are not relevant.").

Plaintiffs disagree and argue that, even if records do not relate to religious questioning, the fact that border officers "are also receiving commendations or

14

positive performance reviews, that may well reflect Defendants' view of the policy and/or practice at the heart of this lawsuit." Mot. at 13. But that is not so. To begin with, the performance reviews of CBP officers would not mention questioning at secondary inspections—the gravamen of this lawsuit—so such reviews are particularly irrelevant for Plaintiffs' purposes. Kinnahan Decl. ¶ 8. Moreover, annual performance reviews of CBP officers would provide no information about whether a CBP officer questioned travelers about their religion, let alone anything about whether the employee did so according to an official policy. Meanwhile, disciplinary records on another issue likewise are irrelevant to the issues in this case. Plaintiffs cannot justify their expansive ask for employment records on relevance grounds.

      In any event, obtaining additional employment records would be highly burdensome. While disciplinary records of CBP employees are captured in an eOPF that can be searched, items like performance reviews are not stored in eOPF or a centralized, searchable system. *Id.* ¶ 6. Accordingly, Plaintiffs' request for performance reviews of CBP officers would require a manual search by the officers themselves, which would require taking officers off of frontline operations to manually search their files, which could impact overall agency operations. *Id.* ¶ 7; *see also Duval v. L. Off. of Andreu, Palma & Andreu, PL*, 2010 WL 2179763, at *6 (S.D. Fla. May 31, 2010) ("[I]t is unduly burdensome to require a manual search of all accounts to retrieve information that cannot be electronically searched and retrieved."). Thus, Plaintiffs' request would require detracting from the overall mission of CBP so that Plaintiffs can obtain performance reviews that would not mention religious questioning at secondary inspection. That ask is not proportional and should be denied.

## CONCLUSION

      For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel.

Dated: June 2, 2025

                    Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch, Civil Division

*/s/ Yuri S. Fuchs*
ROBERT W. MEYER (NY Bar No. 5942842)
YURI S. FUCHS (CA Bar No. 300379)
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0872
          (202) 598-3869
Email:  Robert.W.Meyer@usdoj.gov
           Yuri.S.Fuchs@usdoj.gov

*Counsel for Defendants*