COOLEY LLP
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
ALEXANDER K. BREHNAN (317776)
(abrehnan@cooley.com)
TAYLOR BOYLE (353178)
(TBoyle@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400

JOHN H. HEMANN (165823)
(jhemann@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Ashley Gorski (*pro hac vice*)
(agorski@aclu.org)
American Civil Liberties Union Foundation
125 Broad Street, Floor 18
New York, NY 10004
Telephone: +1 212 549 2500

*Counsel for Plaintiffs*
(See additional counsel listed below)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABDIRAHMAN ADEN KARIYE, MOHAMAD MOUSLLI, and HAMEEM SHAH,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, et al.,<br><br>Defendants. | Case No. 2:22-cv-01916-FWS-GJS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Judge: Hon. Gail J. Standish<br>Trial Date: November 3, 2026<br>Date Action Filed: March 24, 2022 |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

PLS' REPLY ISO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS;
2:22-CV-01916-FWS-GJS

Plaintiffs seek documents and information that are indisputably relevant to their claims and proportional to the needs of this case. Defendants' attempts to paper over the relevance of Plaintiffs' discovery requests and repeated complaints about the everyday burdens of discovery all fail. The Court should order Defendants to produce the documents and information at issue.[1]

**I. The Court should order Defendants to meet with Plaintiffs' e-discovery experts to render the TECS database text-searchable.**

The TECS database, containing Defendants' own reports of secondary inspections, is a critical repository of documents relevant to Plaintiffs' claims. Defendants, though, argue that TECS only "*might*" have relevant information. Opp. 4, ECF No. 134. But that is belied by common sense and the TECS reports themselves. In particular, the TECS Reports about Plaintiffs make clear that border officers elicit information on religious topics and retain that information in TECS. *See, e.g.*, TECS Report, ECF No. 133-5 (noting that Plaintiff "claimed he's a devote[d] Sunni Muslim" and discussing a religious association). Although Plaintiffs request that Defendants keyword-search the TECS database for reports of relevant, similar incidents involving other travelers, Defendants claim that production of those travelers' **complaints** about this questioning is sufficient. *Cf.* Opp. 6–7. But that is not an adequate substitute. Only a narrow subset of individuals subjected to religious questioning will make the effort—and risk retaliation—to file formal complaints with Defendants, and these complaints are not Defendants' official version of events.

Now, for the first time, Defendants say that they "could" render TECS free-text fields text-searchable, but that running keyword searches directly within the database "would necessitate a full database scan for each query," and that this would

---

[1] Plaintiffs agree that the parties continue to engage in constructive dialogue on discovery. Plaintiffs moved to compel only on issues for which Defendants provided their final position or were unable to confirm document preservation. Plaintiffs appreciate Defendants' new representations that they are preserving DHS CRCL documents, and respectfully request production from CRCL in 45 days.

1  degrade system performance. Holtzer Decl. ¶¶ 16–17, ECF No. 133-4. But this is a
2  red herring, because Plaintiffs do not seek to run that type of query. Instead, following
3  standard e-discovery practices, Defendants can mirror the database and render it
4  keyword-searchable on the backend, *see* Valentine Decl., ECF No. 120-2 ¶ 7, which
5  would not require "a full database scan for each query." Holtzer Decl. ¶ 17. Indeed,
6  "Courts have long recognized that defendants may be required under the Federal
7  Rules to create computer programs to search an existing database for relevant
8  information." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 243 (N.D.
9  Ohio 2017) (collecting cases); *see also Elliot v. Humana, Inc.*, 2024 WL 4468654, at
10 *6 (W.D. Ky. Oct. 10, 2024) ("[C]ourts have held that parties could be ordered to
11 search existing databases previously asserted to be unsearchable, or to design
12 software to do so." (collecting additional cases)); *Mervyn v. Atlas Van Lines, Inc.*,
13 2015 WL 12826474, at *6 (N.D. Ill. Oct. 23, 2015) (ordering a defendant to create
14 "new code" to search a database). The Holtzer Declaration fails to address Plaintiffs'
15 proposal, and its bald claim of "undue burden" in terms of "resources, labor costs and
16 licensing and utilization fees" is unsupported by any specifics. Holtzer Decl. ¶ 17.[2]

17      Defendants also object to even a good-faith discussion with Plaintiffs' e-
18 discovery experts about such methods. Opp. 5 & n.2. They argue that the information
19 related to the TECS database is itself law-enforcement privileged and making details
20 available would risk unauthorized disclosures. Opp. 5. But even assuming that the
21 privilege applies, *contra* Mot., ECF No. 118-1, the parties' Protective Order
22 addresses any such risk. Defendants provide no reason (and there is none) to suspect
23 that unauthorized disclosure would occur, and Plaintiffs are willing to take additional
24 precautions, such as sharing pre-prepared initial questions, or agreeing to an
25 attorneys'-eyes-only Protective Order. Defendants fail to explain why these

---

[2] *Paramount Pictures Corp. v. Replay TV*, 2002 WL 32151632 (C.D. Cal. 2002), is inapposite. *Paramount* says only that a party need not ***create*** responsive information. *Id*. at *2. Here, Plaintiffs only seek relevant information ***that already exists***.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

PLS' REPLY ISO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS;
2:22-CV-01916-FWS-GJS

safeguards would not be sufficient. Opp. 5 n.2.

## II. Defendants must supplement their response to ROG 7.

Defendants contend that supervisors' identities are irrelevant, and need not be included in their ROG 7 response, unless they personally questioned Plaintiffs. Opp. 8-9. Defendants are wrong. Supervisors may encourage, endorse, denounce, or be indifferent to religious questioning, all of which goes to the existence of Defendants' policy and/or practice. To be clear, Plaintiffs are not requesting the identities of "everyone in the supervisory chain" of the CBP officers that questioned Plaintiffs. Opp. 9. Rather, Plaintiffs seek only the identities of direct supervisors of officers present at the questioning of Plaintiffs, and any other supervisors involved in the incidents (including those notified of the incidents), who are undoubtedly relevant as potential custodians or deponents.

Defendants also argue that they have already produced documents identifying those who supervised the incidents of religious questioning. Opp. 8. Not so. For three of the ten incidents, Defendants have failed to produce the type of TECS Report that lists direct supervisors—or any other document identifying these direct supervisors. Mot. 9, ECF No. 120. Defendants further assert that "[t]he produced TECS records already contain the names of all CBP officers who were present for the inspections or who were contacted regarding the inspection." Opp. 8 (citing Holtzer Decl. ¶ 7). But that significantly overstates the Holtzer Declaration's far more modest claim: "The TECS records produced to Plaintiffs would have listed the CBP officers involved in the secondary inspections." Holtzer Decl. ¶ 7. The Holtzer Declaration conveniently ignores the three missing TECS Reports, and whether Defendants have ***in fact*** produced records reflecting all officers "contacted" regarding ***each*** of the ten inspections. Opp. 8.

The case relied upon by Defendants, *Civil Rights Department v. Grimmway Enterprises, Inc.*, 2025 WL 621594 (E.D. Cal. Feb. 26, 2025), only reinforces Plaintiffs' position. There, the Court allowed plaintiff to point to documents in its

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

PLS' REPLY ISO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS;
2:22-CV-01916-FWS-GJS

interrogatory response because (1) the documents had been produced and (2) they "contain[ed] a complete answer to" the interrogatory." *Id.* at *8. But here, Defendants have failed to produce the type of TECS Report that lists the direct supervisor for 30% of the incidents, and there is no indication that the produced TECS Reports contain a complete list of notified officers. *See* TECS Records, ECF Nos. 119-3, 119-7, 119-8, 130-1 (no field requiring a list of all individuals involved in questioning).

### III. Defendants must search for information on work phones predating May 2023.

Defendants argue that data from work devices prior to May 2023 is unlikely to be relevant. Opp. 10. But that is absurd. Each of Plaintiffs' incidents occurred prior to May 2023, and communications contemporaneous with these incidents are highly probative. Even if only supervisors were issued work phones, Opp. 10, the produced TECS Reports confirm that the communications of supervisors—directly involved in some incidents—are equally probative. *See, e.g.*, Mot. 9; TECS Report, ECF No. 133-5 (supervisory CBP officer ("SCBPO") was "notified" about the incident).

Defendants' other primary contention is that the search of phone data before May 2023 would be unduly burdensome, due to manual review. Opp. 11. But because only a limited number of supervisors were involved in the ten incidents, identifying the locations of relevant phones should not be burdensome. Once the phones are located, Defendants could take the customary step of engaging a vendor to upload the data to an electronic search database. *See, e.g.*, *Sicklick v. DirecTV Welfare Benefit Plan*, 2015 WL 13916209, at *5 (C.D. Cal. Jan. 22, 2015).[3]

Finally, Defendants' contention that the parties' anticipated ESI searches of other sources militate against searching of work phones, Opp. 13, makes no sense.

---

[3] Plaintiffs here are not requiring that Defendants conduct a manual review, as plaintiff did in *Nece v. Quicken Loans, Inc.*, 2018 WL 1072052, at *2 (M.D. Fla. Feb. 27, 2018). Opp. 12. Defendants may elect to proceed with an e-discovery vendor, as is routine in litigation, or choose to conduct manual review at their discretion.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

PLS' REPLY ISO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS;
2:22-CV-01916-FWS-GJS

1  Those ESI searches will not capture the contemporaneous text communications made
2  on Defendants' officers' phones. *See Sage Products, LLC v. Chemrite Copac, Inc.*,
3  2021 WL 5299789, at *4 (N.D. Ill. Nov. 12, 2021) ("[A]ny argument that the text
4  messages may be cumulative to emails already produced is purely speculative, as
5  [plaintiff] does not know what is in the unproduced text messages."). There is no ESI
6  "alternative" to contemporaneous text communications concerning the incidents.[4]

### IV. Defendants must produce complaints, performance reviews, and commendations for the officers.

Defendants claim, incorrectly, that "Plaintiffs' request for complaints [about the officers] . . . is complete." Opp. 13. But Defendants have refused to search three key sources for complaints ***about the officers***. *See* Mot. 13 & n.16. Instead, Defendants said they would search these repositories for only complaints ***of religious questioning***, Opp. 14, which is insufficient to respond to RFPs 16 and 17. Defendants also dispute the relevance of positive performance reviews, arguing that the reviews would not reference questioning. Opp. 15. But positive reviews or commendations of officers who engaged in discriminatory religious questioning, show that instead of investigating that questioning, Defendants are indifferent to, or even commend, the practice. Finally, Defendants' burden arguments ring hollow. *See* Opp. 14–15. Plaintiffs do not seek employment records generally; rather, they seek complaints, disciplinary actions, performance reviews, and commendations. Any burden placed on Defendants due to manual review for records, *id.* at 15, is limited by the narrow set of documents at issue and the small number of officers who will be performing such a search. Indeed, "detracting from the overall mission," Opp. 15, is characteristic of litigation and not an undue, or unusual, burden.

### V. Conclusion

Plaintiffs respectfully request that the Court grant their Motion to Compel.

---

[4] The three-factor test in *LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986), Opp. 13, strongly weighs in favor of production here.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

PLS' REPLY ISO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS;
2:22-CV-01916-FWS-GJS

| | | |
|---|---|---|
| Dated: | June 9, 2025 | COOLEY LLP<br>JOHN HEMANN (165823)<br>BRETT H. DE JARNETTE (292919)<br>ALEXANDER K. BREHNAN (317776)<br>TAYLOR BOYLE (353178)<br><br>By: */s/ Alexander K. Brehnan*<br>Alexander K. Brehnan<br><br>Ashley Gorski (*pro hac vice*)<br>(agorski@aclu.org)<br>ACLU Foundation<br>125 Broad Street, Floor 18<br>New York, NY 10004<br>Telephone: +1 212 549 2500<br><br>Mohammad Tajsar (SBN 280152)<br>(mtajsar@aclusocal.org)<br>ACLU Foundation of Southern California<br>1313 West 8th Street<br>Los Angeles, CA 90017<br>Telephone: +1 213 977 9500<br><br>Daniel Mach (*pro hac vice*)<br>(dmach@aclu.org)<br>Heather L. Weaver (SBN 226853)<br>(hweaver@aclu.org)<br>ACLU Foundation<br>915 15th St., NW Ste. 600<br>Washington, DC 20005<br>Telephone: +1 202 675 2330<br><br>Teresa Nelson (*pro hac vice*)<br>tnelson@aclu-mn.org<br>ACLU of Minnesota<br>P.O. Box 14720<br>Minneapolis, MN 55415<br>Telephone: +1 651 645 4097<br><br>Attorneys for Plaintiffs<br>ABDIRAHMAN ADEN KARIYE,<br>MOHAMAD MOUSLLI, and<br>HAMEEM SHAH |

319984002

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

PLS' REPLY ISO MOTION TO COMPEL
PRODUCTION OF DOCUMENTS;
2:22-CV-01916-FWS-GJS