BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director
Federal Programs Branch, Civil Division

JAMES BICKFORD (NY Bar No. 5163498)
ROBERT W. MEYER (NY Bar No. 5942842)
Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0872
Email: Robert.W.Meyer@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDIRAHMAN ADEN KARIYE, *et al.*, <br><br>     *Plaintiffs*, <br><br> v. <br><br> KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, *et al.*, <br><br>     *Defendants*. | Case No. 2:22-cv-1916-FWS (PVCx) <br><br> **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE AND SUPPLEMENT THE COURT'S ORDER OF AUGUST 29, 2025** <br><br> Hearing Date: January 7, 2026 <br> Time: 10:00 a.m. <br> Judge: Hon. Pedro V. Castillo |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................5

A.    Claims and Procedural Background ................................................5

B.    Discovery Requests .........................................................................5

C.    Custodial ESI Discovery: August and September ..........................6

D.    Custodial ESI Discovery: November and December ...................10

ARGUMENT ....................................................................................................12

A.    Defendants should not be required to front-load all of their search, retrieval, and transfer of ESI, but should be allowed to continue conducting piecemeal searches and reviewing the results. .............................................14

B.    Defendants should not be ordered to produce separate "hit count" reports for approximately 80 different custodians. .....................................................16

C.    If the Court orders Defendants to conduct a particular search, it should modify Plaintiffs' search parameters and impose meaningful limiting terms.............................................................................................................18

D.    The Court should not order the filing of joint status reports regarding custodial ESI discovery.....................................................................................20

CONCLUSION..................................................................................................20

# INTRODUCTION

Although the search for electronically-stored information (ESI) responsive to Plaintiffs' requests for production has been a persistent source of disagreement, Defendants understand their obligation to conduct a reasonable search for ESI that is both responsive to Plaintiffs' requests for production and relevant to this case. Defendants are working diligently to fulfill that obligation, despite Plaintiffs' insistence that Defendants conduct their search in ways obviously destined to lead to frustration and delay. Plaintiffs' motion is another attempt to impose search terms that extend far beyond any reasonable likelihood of relevance to their claims or responsiveness to their requests for production, and an unduly burdensome search protocol that will substantially impede Defendants' ability to search for and produce relevant, responsive, and non-privileged ESI. Their motion should be denied.

This case is about Plaintiffs' allegations that U.S. Customs and Border Protection (CBP) officers unlawfully inquired into their religious practices and beliefs as they were reentering the country after travel abroad, and related allegations that Defendants had a policy or practice of such inquiries. Plaintiffs' requests for production therefore focused on Plaintiffs themselves, the CBP officers who questioned them, and allegations of religious discrimination by CBP officers at ports of entry more broadly. Some of Plaintiffs' proposed ESI search parameters also tracked those subjects. One search string included Plaintiffs' names, another

Defs.' Opp. to Pls.' Mot. to Enforce
Case No. 2:22-cv-1916-FWS (PVCx)

included the names of the CBP officers who questioned Plaintiffs, and a third included a handful of anti-Islamic slurs that could be relevant to allegations of discriminatory intent. Those ESI searches are now proceeding smoothly: their parameters are no longer in dispute between the parties, and Defendants are successfully retrieving and reviewing the documents returned by the searches.

What remains in dispute here is Plaintiffs' insistence that Defendants conduct ESI searches for more than fifty religious terms, ranging from generalities such as "faith" to particular Islamic holidays and practices. Plaintiffs have made no meaningful attempt—or at least, no effective one—to focus these religious search parameters on the subject of their claims and requests for production: inquiries by CBP officers at ports of entry. Instead, Plaintiffs unreasonably demand that Defendants search for and review a wide range of ESI that simply makes reference to these terms, regardless of the context or relevance to this case. For example, any use of the word "religion" produces a hit for many custodians, whether or not the document has any relationship to questioning at ports of entry; for others, the search parameters require that one of several terms including "CBP" appear somewhere in the neighborhood of the religious term. Since most of the custodians at issue were CBP employees at the times relevant to this case, that limiting term effectively imposes no limit at all.

Defs.' Opp. to Pls.' Mot. to Enforce
Case No. 2:22-cv-1916-FWS (PVCx)

Defendants estimate that these religious search parameters, and other disputed search terms related to the First Amendment, would identify many hundreds of thousands of documents.  For five representative CBP custodians, the disputed search parameters return more than 50,000 documents, and Plaintiffs have requested that Defendants search approximately 60 CBP custodians.  That volume of documents is unduly burdensome to review and disproportionate to the needs of this case, even if the documents were likely to be responsive to Plaintiffs' discovery requests or relevant here.  But relevance, rather than burden, is Defendants' principal objection to these disputed search parameters, which are so badly drafted that the vast majority of the documents they identify are almost certainly unresponsive to Plaintiffs' requests for production, and irrelevant to their claims.

Even Plaintiffs do not argue that their disputed parameters describe a reasonable search for ESI that Defendants should be required to review.  To the contrary, they only contend that those parameters should be a starting point for "the typical discovery process of coming to a reasonable set of documents for review through negotiation over review priorities."  Mot. at 13.  Defendants are quite eager to arrive at a reasonable set of documents for review, and have been attempting to do so for many months now.  But Plaintiffs have refused to engage in such a negotiation unless Defendants first 1) retrieve all documents identified by Plaintiffs' unreasonable search parameters; 2) produce dozens of separate "hit count" reports,

Defs.' Opp. to Pls.' Mot. to Enforce
Case No. 2:22-cv-1916-FWS (PVCx)

so that Plaintiffs can 3) revise their search parameters and demand additional reports,

all before Defendants begin their substantive review of ESI.

Plaintiffs' insistence on this particular conferral procedure has been the chief

impediment to the parties' negotiations over the scope of Defendants' ESI searches,

placing unmanageable burdens on Defendants and preventing them from reviewing

ESI until those burdens have been carried.  Retrieving large volumes of irrelevant

documents and uploading them into review platforms consumes time and effort; so

does generating separate reports for dozens and dozens of custodians.  Plaintiffs

already have more than enough information to negotiate the scope of a reasonable

search for responsive ESI.

Defendants have begun to make progress in their substantive review of ESI

by identifying search parameters to which they do not object and proceeding to

review the documents returned by those parameters.  Absent court order to the

contrary, Defendants will continue to do so while the parties complete their

negotiations over the ultimate scope of ESI discovery in this matter.  Defendants

should not be ordered to waste time and effort providing Plaintiffs with additional

reports when they could be doing the substantive work of document review.  It is

ultimately Defendants' obligation to conduct a reasonable search for relevant and

responsive ESI, whether or not the parties can reach an agreement on the scope of

that search.  Plaintiffs' motion would impede Defendants from satisfying that obligation, and should be denied.

## BACKGROUND

### A.    Claims and Procedural Background

Plaintiffs are three Muslim Americans who allege that, in a series of ten encounters with U.S. Customs and Border Protection (CBP) at ports of entry from 2017 through 2021, they were subject to unlawful questioning about their religious practices and beliefs.  Plaintiffs allege that this questioning violated the First and Fifth Amendments, as well as the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*, and that it was part of a pattern or practice of such violations.

Plaintiffs' complaint was filed in March 2022, ECF No. 1, dismissed and amended later that year, ECF Nos. 58 & 61, then dismissed again in July 2023, ECF No. 73.  After Plaintiffs appealed, the Ninth Circuit reversed and issued its mandate in November 2024.  ECF Nos. 89 & 90.

### B.    Discovery Requests

Plaintiffs have propounded requests for production which, as relevant here, seek documents concerning:

- Plaintiffs and the incidents of questioning described in the amended complaint;

- CBP officers involved in those incidents, and other CBP officials; and

Defs.' Opp. to Pls.' Mot. to Enforce
Case No. 2:22-cv-1916-FWS (PVCx)

- The questioning, screening, inspection, and detaining of people at ports of entry, including inquiries related to religion or religious associations, considerations of First Amendment protections, retaliation for constitutionally protected activity, and investigations into such questioning or alleged incidents of retaliation.

*See* ECF No. 120-4.

## C. Custodial ESI Discovery: August and September

After the Ninth Circuit reinstated Plaintiffs' amended complaint, the parties began to discuss the parameters of Defendants' search for ESI responsive to Plaintiffs' requests for production, in an effort to avoid future disputes about the reasonableness of Defendants' search. *See generally* ECF No 182-2. Plaintiffs identified approximately eighty custodians whose ESI they specifically requested that Defendants search, in many cases for a time period stretching back to January 2010—more than seven years before the earliest incident alleged in the complaint. Plaintiffs asked that Defendants use several strings of search terms, including: a) Plaintiffs' names; b) the names of CBP officers involved in the alleged incidents; c) anti-Islamic slurs; d) more than eighty religious terms; and e) for some custodians, terms related to the First Amendment or civil rights. *See* ECF No. 182-4 at 20–27.

The strings of religious search terms varied by custodian. For some custodians, any appearance of such general roots as "religio!", "faith!", "Christian!", "minister!", or "church!" would produce a hit, whether or not the document had any

6

relevance to questioning at ports of entry.[1]  *Id.* at 25.  For other custodians, the terms "religio!" or "faith!" would produce a hit if "CBP" (or another term) also appeared somewhere in the document—as it does, of course, in practically every document generated by CBP.  *Id.* at 23.  And for some custodians, and some religious terms, two limiting words were required to produce a hit—but even then, the search would return any document that (for example) contained "CBP," "question!", and the religious term at issue anywhere in the document.  *Id.*  There was no requirement that any of the limiting terms appear anywhere near the religious terms.

It was therefore obvious from the face of these search strings that they would produce large quantities of documents entirely unrelated to this case.  For many custodians, and many terms, the search parameters made no effort at all to specify a relevant context: that is, something having to do with questioning at ports of entry.  And even where the search parameters made some such effort, the limiting terms were so weak as to be almost completely ineffective.  The breadth and generality of the religious terms themselves was also quite obvious.

Nonetheless, in mid-August of this year, Defendants agreed to run these searches for ESI, and discuss the results with Plaintiffs.  After a status conference on this issue, the Court ordered Defendants to: 1) immediately produce all ESI

---

[1] An exclamation point indicates a search for all variations on the root term, so that "religio!" will return documents containing "religious," "religion," "religiosity," etc.

discovery they currently have on hand; 2) complete all remaining ESI discovery within 45 days; and 3) produce ESI discovery on a rolling basis. Minute Order of Aug. 29, 2025. Defendants did not have any ESI discovery on hand when that order issued, but they continued to run ESI searches according to Plaintiffs' requested search parameters.

Most of the custodians identified by Plaintiffs are current or former employees of CBP. That agency's searches according to Plaintiffs' initial parameters were destined to return many millions of documents—more than its computer systems could reliably retrieve and export. *See* Decl. of Elaine Dismuke ¶ 17 ("Dismuke Decl."). Plaintiffs nonetheless insisted that Defendants provide "hit count" data about how many documents *each term* retrieved for *each custodian*, before Plaintiffs would be willing to negotiate a more reasonable scope of ESI document review. *See, e.g.*, ECF No. 182-4 at 6. This approach to ESI discovery was a substantial impediment to Defendants, who must export the documents from their native systems and transfer them into a discovery review platform before they can provide the requested "hit count" data—a significant technical challenge given the extraordinarily large volume of records identified by Plaintiffs' search terms. When it became apparent that CBP would be unable to transfer the millions of documents identified by Plaintiffs' search parameters all at once, CBP chose to retrieve ESI from

Defs.' Opp. to Pls.' Mot. to Enforce
Case No. 2:22-cv-1916-FWS (PVCx)

five representative custodians, so that it could meet and confer with Plaintiffs on the results of those searches. *See* Dismuke Decl. ¶ 17.c

At the same time, the Department of Homeland Security (DHS) searched for ESI in the custody of its Secretaries, Acting Secretaries, and officials from its Office of Civil Rights and Civil Liberties. Those searches returned nearly 109,000 documents totaling more than 1.5 million pages, which similarly could not be analyzed in any meaningful way before they were downloaded and transferred to a discovery review platform. ECF No. 182-4 at 11.

Once Defendants could begin to review the DHS documents, it became obvious that the searches involving religious terms were poorly constructed to identify material that was responsive to Plaintiffs' requests for production, or relevant to this litigation. Any document that mentioned "CBP" on one page and "religious communities" or "faith-based groups" somewhere else in the document produced a hit; so did every document that discussed an "officer," a "question" of any sort, and a "church." Defendants described these issues to Plaintiffs in the correspondence that Plaintiffs have filed with the Court. *Id.* at 12 (noting that one search "sweeps in a wide range of documents unrelated to this case: an agenda from an event featuring someone from the Lutheran Immigration and Refugee Service, mentions of outreach to religious communities by other DHS components, prepared remarks that refer to a funeral at a church, and so on"); *id.* (noting that another search

9

appears to "capture[] mostly innocuous references to engagement with religious communities or leaders, usually by DHS components other than CBP").

In September, the parties conferred repeatedly by phone and email over the status of the ESI searches. Defendants provided hit count data for the DHS documents, in response to which Plaintiffs made modest changes to their requested searches for the DHS custodians (but not the CBP custodians). Defendants ran the modified searches and again produced hit count data, but the modified searches still returned tens of thousands of documents from the DHS custodians alone. Defendants told Plaintiffs that it was "essential to begin the substantive review of these documents," rather than continuing to exchange hit count data, so that Defendants could "determine which searches, if any, are producing relevant documents, and use that data to inform [their] ongoing review," and proposed to generate a random sample for review. *Id.* at 2. Plaintiffs objected to this procedure.

At the end of September, all discovery deadlines in this case were stayed due to the lapse in federal appropriations.

## D.    Custodial ESI Discovery: November and December

When appropriations were restored in mid-November, the parties again met and conferred over the status of custodial ESI discovery. On November 24, Plaintiffs revised their requested search parameters—after insisting for months that they could not do so without custodian-by-custodian hit count data—dropping religious terms

Defs.' Opp. to Pls.' Mot. to Enforce
Case No. 2:22-cv-1916-FWS (PVCx)

related to Christianity and Judaism, and imposing modest proximity requirements for some custodians and some limiting terms. *See* ECF No. 182-6 at 13–18.  Under the revised search parameters, for many custodians, the roots "Shiite! OR Shii! OR Sunni! OR mosque! OR jihad!" would produce a hit if they appeared anywhere in a document. *Id.* at 17.  For other custodians, one term from the string "inspect! OR interview! OR question! OR secondary OR CBP OR OFO" would also be required to produce a hit, with no requirement of proximity to the religious term. *Id.* at 15. And for a third group of custodians, a term from that limiting string would be required to appear within 100 words of the religious term. *Id.* at 14.

On December 1, the parties met and conferred about Plaintiffs' revised proposal, but were unable to reach agreement.  Plaintiffs filed their motion several days later.

In the meantime, Defendants have continued to search for and review ESI in response to Plaintiffs' requests for production.  CBP has now completed its search for documents identified by Plaintiffs' requested search parameters related to Plaintiffs' names and anti-Islamic slurs, and expects to complete its search related to the names of CBP officers in the near future.  Once Defendants have completed their reviews of these documents, and similar documents identified by DHS, they will make a rolling production of any relevant, responsive, and non-privileged material.

11

Absent court order to the contrary, CBP will then conduct additional reasonable searches for ESI potentially responsive to Plaintiffs' requests for production, review the documents identified by those searches, and make rolling productions of any relevant, responsive, and non-privileged material.

## ARGUMENT

In their motion, Plaintiffs ask that the Court order Defendants "to proceed in the typical discovery process of coming to a reasonable set of documents for review through negotiation over review priorities." Mot. at 13. Defendants have been attempting to do precisely that for many months now, despite Plaintiffs' insistence that no meaningful discussion is possible unless Defendants first retrieve large quantities of irrelevant documents, load them into review platforms, generate dozens of separate "hit count" reports, and repeat that process over and over again until Plaintiffs are satisfied with the results. Experience has shown that this procedure is unduly burdensome, leads to frustration, and delays the substantive review of ESI.

There are two chief problems with Plaintiffs' approach. First, it front-loads all of the search, retrieval, and transfer of ESI, requiring that the search and transfer process be completed before any negotiation or substantive review can begin. To use time and resources efficiently, it is essential that Defendants be permitted to take a piecemeal approach to their search efforts, retrieving one batch of documents and uploading them for review while Defendants proceed to search for the next batch of

Defs.' Opp. to Pls.' Mot. to Enforce
Case No. 2:22-cv-1916-FWS (PVCx)

documents.  Second, Plaintiffs' approach would require Defendants to generate dozens—and likely hundreds—of reports for Plaintiffs, while time passes that could be better spent in the actual review of ESI.  Generating these iterative reports is wasteful and unnecessary, since Plaintiffs already have more than enough information to narrow their ESI search parameters to a reasonable scope, if they wish to do so.

In the alternative, Plaintiffs suggest that if Defendants will not—or cannot—front-load their searches and generate voluminous reports, they should instead be ordered to review the hundreds of thousands of ESI documents returned by the current version of Plaintiffs' search parameters.  Mot. at 13.  Plaintiffs' motion is thus a back-door attempt to force Defendants to conduct a search and review of custodial ESI that even Plaintiffs have not contended would be reasonable.  The Court should deny this relief as well, but if it is inclined to order Defendants to conduct a particular search, it should modify Plaintiffs' proposed search parameters and impose meaningful limiting terms to ensure that any search is tailored to retrieve information that is both relevant and proportional to the needs of this case.  *See* Fed. R. Civ. P. 26(b)(1).

**A.    Defendants should not be required to front-load all of their search, retrieval, and transfer of ESI, but should be allowed to continue conducting piecemeal searches and reviewing the results.**

Since federal appropriations were restored, CBP has adopted a new—and more productive—approach to ESI discovery in this case, identifying portions of Plaintiff's ESI search parameters to which it does not object, running those searches, and reviewing the resulting documents.  In this way, CBP has narrowed the scope of dispute between the parties and made progress towards fulfilling its obligation to conduct a reasonable search for responsive ESI, while the parties have continued to negotiate the ultimate scope of that search.  Plaintiffs now ask the Court to disrupt that process and order CBP to complete its search, retrieval, and transfer of ESI before it can resume its substantive review.  Plaintiffs' motion should be denied.

As explained in the declaration of Elaine Dismuke, CBP's ability to search for ESI is constrained by the capacity of its computer systems, one of which limits the number of keywords that can be used in a given search, while another prohibits the combination of disjunctive strings—such as "X OR Y OR Z"—with proximity limits such as "w/3."  Dismuke Decl. ¶¶ 9–11.  In that system, the search "X OR Y OR Z w/3 A" must be decomposed into three separate searches: "X w/3 A"; "Y w/3 A"; and "Z w/3 A."  *Id.* ¶ 11.

Given those limits, there would be two ways for CBP to implement Plaintiffs' proposed search string "(inspect! OR interview! OR question! OR secondary OR

14

CBP OR OFO) w/25 (religio! OR faith! OR Muslim! OR Islam! OR pray! OR worship!)" in the latter system.  *See* ECF No. 182-6 at 16.  On the one hand, CBP could discard the proximity limit and run the search as "(inspect! OR interview! OR question! OR secondary OR CBP OR OFO) <u>AND</u> (religio! OR faith! OR Muslim! OR Islam! OR pray! OR worship!)", sweeping in many more documents at the cost of additional time and technological resources to process them.  Alternatively, CBP could decompose this string into 36 separate searches that it would then run individually—"inspect! w/25 religio!", "interview! w/25 religio!", and so on—at the cost of the time and computational power necessary to run the searches separately.

CBP's most fundamental limitation is time.  There is no way for the agency to conduct complex searches for ESI, export the identified documents from its native systems, and upload them to a review platform, in one seamless action.  The searches must be broken up into component parts, as described above; running each of those searches takes time and computing power; exporting the search results takes more computing power and more time; and uploading the results into a review platform takes still more time and computing power.  This process must be performed iteratively, over and over and over again.  *See* Dismuke Decl. ¶¶ 5–16.

CBP can, however, review the results of one search while it conducts the next one, because the search and review are performed by different people, using different computers.  Since the restoration of appropriations, CBP has redesigned its ESI

15

search process for this case to take advantage of this capability, conducting piecemeal searches drawn from Plaintiffs' search parameters, and reviewing the results of one search while the next one is being performed. This redesigned process has allowed CBP to make progress on its substantive review of ESI while the ultimate scope of ESI discovery is still being negotiated between the parties.

Plaintiffs' requested relief would bring that process to a halt, and return the parties to the stalemate that preceded the lapse in appropriations. The Court therefore should not order CBP "to immediately . . . collect all potentially responsive custodial ESI . . . returned by Plaintiffs' search parameters, and upload that ESI to Defendants' discovery review platform." Mot. at 11. CBP is not capable of doing so "immediately" for all of the reasons described above, but could only do so over a period of time—likely weeks, given the breadth and complexity of Plaintiffs' requested searches. And requiring CBP to prioritize the disputed ESI searches would disturb the productive search and review process that the agency has been using to make progress on its substantive ESI obligations since the restoration of appropriations.

**B.    Defendants should not be ordered to produce separate "hit count" reports for approximately 80 different custodians.**

Since September, Defendants have provided Plaintiffs with a great deal of information about the number of documents returned by their various search terms. This information shows exactly what any reasonable person would expect: common

16

terms such as "religio!", "faith!", or "Muslim!" produce a very large number of hits, especially when they are unconstrained by any meaningful limit, while more obscure terms such as "Taymiyyah" produce very few hits.  Other religious terms, such as "Shia!" or "imam!", sit somewhere in between those poles.  *See* ECF No. 182-4 at 17.  The large number of documents returned by Plaintiffs' search parameters is not the result of any anomaly in the search results, but rather a predictable consequence of Plaintiffs' refusal to propose reasonably tailored search terms proportionate to the needs of this case.

Plaintiffs have more than enough information to propose appropriate search terms, if they wished to do so.  Defendants have provided Plaintiffs with total hit count data for the DHS custodians, and individual hit count data for the five representative CBP custodians whose ESI was retrieved before the lapse in appropriations—collectively, more than one quarter of the custodians requested by Plaintiffs.  The parties can—and should—use this information as the basis of their negotiations over the ultimate scope of ESI discovery, rather than waiting for additional data that will be time-intensive and burdensome to generate, and will likely confirm what the sample searches have already shown.  The available data may not be perfect, but it is good enough—and it confirms what anyone would expect from a review of the search terms themselves.  *See* ECF No. 182-4 at 6 (explaining that "[t]he hit counts that we have provided show exactly what one

17

would reasonably expect: more common or generally used words and roots produce more hits, and more specific or obscure terms produce fewer"). If the parties are to reach agreement, Plaintiffs must decide whether they would prefer to eliminate search terms, impose new proximity limits, tighten existing proximity limits, or employ some combination of those strategies.

In any event, the Court should not order Defendants to "provide hit counts broken down by both search term and custodian" for "the complete universe of custodial ESI." Mot. at 12. Producing separate hit count reports for approximately 80 custodians would require a great deal of work that Defendants' discovery experts could otherwise spend assisting with the substance of ESI review and production, and would inevitably lead Plaintiffs to request another round of 80 revised reports, and probably another round after that. There is no reason to believe that so many separate reports would be sufficiently useful to the parties' negotiations over the scope of ESI discovery as to justify the time, effort, and delay necessary to generate them.

**C.    If the Court orders Defendants to conduct a particular search, it should modify Plaintiffs' search parameters and impose meaningful limiting terms.**

The Court should not order Defendants to immediately conduct a particular search—and it certainly should not order Defendants to review the hundreds of thousands of ESI documents returned by the current version of Plaintiffs' search

parameters. *See* Mot. at 13. If, however, the Court decides to order Defendants to conduct a particular search, it should modify Plaintiffs' search parameters and impose meaningful limiting terms consistent with the requirements of Rule 26.

As discussed above, some of Plaintiffs' search parameters employ the following limiting string: "inspect! OR interview! OR question! OR secondary OR CBP OR OFO". ECF No. 182-6 at 13–16. For some custodians, and some religious terms, one term from that limiting string must appear within twenty-five words of the religious term. *Id.* at 13. Other search parameters only require that one term from the limiting string appear within one hundred words of the religious term. *Id.* at 14. Still other parameters only require that a term from the limiting string appear somewhere in the document, with no requirement of proximity to the religious term. *Id.* at 15. And yet another group of search parameters omits the limiting string altogether. *Id.* at 17.

If the Court orders Defendants to conduct a particular search, it should first revise this limiting string by removing "CBP," which does not suggest a relevant context, especially for CBP custodians. And the Court should then impose a uniform requirement that one term from the revised limiting string—"inspect! OR interview! OR question! OR secondary OR OFO"—must appear within ten words of the religious or First Amendment term that produces the hit. Doing so would ensure that the religious or First Amendment term that produced a given hit was genuinely

19

related to the limiting term that defined a potentially relevant context, and would therefore go a long way toward establishing a reasonable scope for ESI discovery.

**D.    The Court should not order the filing of joint status reports regarding custodial ESI discovery.**

Defendants will gladly provide any status reports or appear at any status conferences that would be useful to the Court. *See* Mot. at 15. But Defendants respectfully request that, if the Court chooses to order status reports, it permit Defendants to file any such reports on behalf of Defendants alone. A requirement of regular joint filings would invite unnecessary disagreement over the process by which the reports were drafted and reviewed by the respective parties.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion should be denied.


Dated: December 30, 2025                Respectfully submitted,


                                        BRETT A. SHUMATE
                                        Acting Assistant Attorney General
                                        Civil Division

                                        ANDREW I. WARDEN
                                        Assistant Branch Director

                                        */s/ James Bickford*
                                        JAMES BICKFORD
                                            (NY Bar No. 5163498)
                                        ROBERT W. MEYER
                                            (NY Bar No. 5942842)

20

Trial Attorneys
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0872
Email:  Robert.W.Meyer@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,578 words, which complies with the word limit of L.R. 11-6.1.

*James Bickford*
James Bickford

Date: December 30, 2025

Defs.' Opp. to Pls.' Mot. to Enforce
Case No. 2:22-cv-1916-FWS (PVCx)