**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABDIRAHMAN ADEN KARIYE, MOHAMAD MOUSLLI, AND HAMEEM SHAH,<br><br>PLAINTIFF,<br><br>V.<br><br>KRISTI NOEM, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, IN HER OFFICIAL CAPACITY, ET AL.,<br><br>DEFENDANTS. | Case No. CV 22-1916 FWS (PVCx)<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RE: LAW ENFORCEMENT PRIVILEGE (Dkt. No. 118)** |

## I.

## INTRODUCTION

Plaintiffs Abdirahman Aden Kariye, Mohamad Mouslli, and Hameem Shah allege that they have been stopped repeatedly at airports for secondary religious screening by U.S. Customs and Border Protection ("CBP") and Homeland Security Investigations because of their Muslim faith. In discovery, Plaintiffs have sought from Defendants—who are officials from U.S. Department of Homeland Security ("DHS") and its subdepartments—internal files that document Plaintiffs' interactions with the agency.

Defendants, however, have withheld or redacted volumes of otherwise responsive files, claiming that they contain sensitive investigatory techniques that are protected by the law enforcement privilege.

Courts, and the parties here, do not agree on whether privilege should even be recognized within the Ninth Circuit. Regardless, assuming the privilege is valid in this jurisdiction, Defendants have not properly invoked it. Most concerningly, Defendants have failed to identify why the specific files at issue here fall within the scope of the privilege. As explained in further detail below, this Court rejects Defendants' attempt to invoke the privilege and impede the free flow of discovery.

## II.

## BACKGROUND

Plaintiffs are Muslim American citizens. ("FAC," Dkt. No. 61 at 13, 24, 31).[1] They allege that they were repeatedly stopped for secondary inspection in American airports after returning from international travel because they are Muslim. (*See id.* at 13–38). During the inspections, CBP officers interrogated them about their faith. (*See id.*). They say that these interrogations were coercive; Plaintiffs were not free to leave until the officers let them go. (*E.g.*, *id.* at 18, 24). They contend that this secondary questioning violated the Constitutional rights to equal protection, free exercise, free association as well as the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb–2000bb-4. (*See generally* FAC). Plaintiff Shah also alleges that Defendants' retaliatory actions separately violated the First Amendment. (*Id.* at 44–45).

---

[1] For ease of reference, this Court refers to page numbers generated by CM/ECF in the blue ribbon printed on each page of every filed document.

In discovery, Plaintiffs have sought government records they believe could show why they were repeatedly selected for secondary inspection. Among the documents produced are TECS records. These records contain communications and other reports that discuss Plaintiffs and their CBP interactions. They come from the CBP's own TECS database, which is "the principal system used by CBP officers at the border to assist with screening and determinations regarding the admissibility of arriving persons." ("Opp.," Dkt. No. 133 at 7). Among the more sensitive types on information contained in these records are "(a) system codes; (b) procedures and techniques; and (c) subject-specific analysis that may be captured or included in free-text- fields' such as . . . Comments History, Remarks, and/or Referral Reason History" sections. ("Holtzer Decl.," Dkt. No. 133-4 at 5). Defendants also asserted the privilege in response to several interrogatories. (Dkt. Nos. 118-3, 118-4).

One representative example records the date and time of each CBP encounter with Mr. Mouslli between 1994 and 2022. (Dkt. No. 118-5). The entire first page is redacted. Pages two through five contain a chart where entire columns are redacted—for date of birth, "Site," "Inspector," and "Ref." (*Id.* at 3–6). The last column in the file, including its subject, is completely redacted. (*Id.*). Another representative example is a TECS - Secondary Inspection Report for Mr. Kariye. (Dkt. No. 118-6). It records basic demographic information about Mr. Kariye. (*Id.*). It also includes a report concerning his February 3, 2019, return from a trip to Canada. (*Id.*). The report briefly describes Mr. Kariye's trip but is heavily redacted. (*Id.*). Elsewhere, names of referring officers, officer codes, referral codes, a "site id," and other items are redacted. (*Id.*). The remaining representative examples contain similar information.

Though Defendants have produced volumes of files, they have objected to numerous requests for production and interrogatories by invoking the law enforcement privilege. (*See, e.g.*, Dkt. Nos. 118-3, 118-4, 118-15, 118-16). Defendants have also

produced dozens of heavily redacted documents—specifically TECS reports—justified by the same claim of privilege. (*See* Dkt. Nos. 118-5, 118-6, 118-10, 118-11, 118-12).

After a significant back and forth dispute of the privilege's application, the parties submitted briefing on this dispute. ("Motion," Dkt. No. 118-1; Opp.; "Reply," Dkt. No. 140). The Court held arguments and then directed the parties to select representative examples of redacted documents for in camera review without redactions. (Dkt. No. 147).[2] Defendants lodged the documents (Dkt. No. 159) and then requested to submit an in camera declaration addressing the documents (Dkt. No. 161). After briefing, the Court denied that request. (Dkt. No. 195). It permitted Defendants to file an additional under-seal declaration such that Plaintiffs would be allowed to view it. (*Id.*). Defendants elected not to do so.

## III.
## STANDARDS

### A. Scope of Permissible Discovery

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, provides:

[2] Defendant submitted a number of documents for in camera review: KARIYE-CBP-0082-0082; KARIYE-CBP-0088-89; KARIYE-CBP-0090-0092; KARIYE-CBP-0113-0114; KARIYE-CBP-0123-0126; KARIYE-CBP-0127-0128; KARIYE-CBP-00161-0162; KARIYE-CBP-0188-0191; KARIYE-CBP-0245-0246; KARIYE-CBP-0647-0652; KARIYE-CBP-0659-0665; KARIYE-CBP-0703-0705; KARIYE-CBP-0924-0926; KARIYE-CBP-1071-1073; KARIYE-CBP-1095-1119. The Court, after conducted an in camera review of the unredacted documents, finds that these documents should be produced to Plaintiffs unredacted.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

When a party believes discoverable information has been withheld, that party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).

## B. The Law Enforcement Privilege

### 1. Contours of the Privilege

The law enforcement privilege is meant "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference with an investigation." *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 484 (2nd Cir. 1988) (citations omitted).

"[T]he party asserting the law enforcement privilege bears the burden of showing that the privilege applies." *United States v. Matish*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016). A party meets that burden by: (1) asserting "a formal claim of privilege by the head of the department having control over the requested information,"[3] (2) basing the assertion "on actual personal consideration by that official," and (3) connecting the privilege to specified information "with an explanation [of] why it properly falls within the scope of the privilege." *Roman v. Wolf*, No. EDCV200768, 2020 WL 6588399, at *2 (C.D. Cal. July 16, 2020).

However, the privilege is qualified. *Perdomo v. Noem*, No. 2:25-CV-05605, 2026 WL 166570, at *5 (C.D. Cal. Jan. 16, 2026). It "must give way when the needs of a particular litigant for access to the information outweigh the public interest in non-disclosure." *Doe 1 v. McAleenan*, No. 18-CV-02349, 2019 WL 4235344, at *2 (N.D. Cal. Sept. 6, 2019). The privilege exists "to 'minimize disclosure of documents whose revelation might [actually] impair the necessary functioning . . . of law enforcement," not to shield . . . [law enforcement agencies] from any discovery request they might find inconvenient or uncomfortable." *Hereford v. City of Hemet*, No. 5:22-CV-00394, 2023 WL 6813740, at *17 (C.D. Cal. Sept. 14, 2023) (citation omitted). The privilege "may not be permitted to indefinitely frustrate the operation of the Federal Rules, the liberal discovery practices established by those Rules and—most importantly—the vigorous enforcements of the civil rights statutes." *Id.* (citation omitted).

So, where an agency has met its initial burden to invoke the law enforcement privilege, a court "must balance the public interest in nondisclosure against 'the need of a particular litigant for access to the privileged information.'" *Matish*, 193 F. Supp. 3d at

[3] Regarding this requirement, "multiple other courts have held that the law enforcement/investigative privilege may be invoked by 'an appropriate agency official' instead of a department head." *United States v. City of Los Angeles*, No. 2:11-CV-00974, 2023 WL 6370887, at *9 (C.D. Cal. Aug. 28, 2023) (collecting cases).

597 (citations omitted). The relevant framework to make this determination exists in the ten factors often called the *Frankenhauser* test. *Munoz v. U.S. Dep't of State*, No. CV 17-0037, 2020 WL 7347867, at *3 (C.D. Cal. June 10, 2020). The factors to be considered are:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Id.* (quoting *Wagafe v. Trump*, 334 F.R.D. 619, 623–24 (W.D. Wash. 2020)).

**2. Recognition in the Law**

This privilege is undoubtedly recognized and applied by courts throughout the country. *See, e.g.*, *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007); *City of New York*, 856 F.2d at 483–84; *Black v. Sheraton Corp. of America*, 564 F.2d 531, 541–42, 546–47 (D.C. Cir. 1977). However, the Supreme Court has yet to

explicitly recognize or reject it. *Shah v. Dep't of Just.*, 714 F. App'x 657, 659 n.1 (9th Cir. 2017).

The same is true for the Ninth Circuit. *Id.* However, in one instance, that court issued an unpublished decision in which it "assume[d] without deciding that the privilege exists" to determine whether the Department of Justice arbitrarily and capriciously asserted the privilege in violation of the Administrative Procedures Act, 5 U.S.C. §§ 551–559. *Id.* This Court reads little into that decision, as judicial opinions are "not precedential for propositions not considered" nor are they precedential "for matters that are 'simply assumed.'" *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) (citations omitted).

Without binding precedent, courts within the Ninth Circuit are split on the privilege's application. At least one has refused to recognize it outright. *U.S.A. v. Rodriguez-Landa*, No. 2:13-CR-00484, 2019 WL 653853, at *16 (C.D. Cal. Feb. 13, 2019). Others have analyzed its application with reservation. *See Est. of Solis v. Cnty. of Riverside*, No. 5:23-CV-00989, 2024 WL 4783819, at *9 (C.D. Cal. Sept. 19, 2024) (analyzing the privilege "[t]o the extent the law enforcement investigative privilege exists"). Many others, though, have applied the exception without qualification. *See City of Los Angeles*, 2023 WL 6370887, at *13.

## IV.
## ANALYSIS

### A. <u>Assuming the Validity of the Law Enforcement Privilege, Defendants Have Not Provided Sufficient Information for a Threshold Showing that It Applies in This Case.</u>

Defendants have submitted two declarations to support their claim of privilege. First, there is the declaration of FBI Agent Steven L. McQueen (Dkt. No. 133-3), who is the acting director of Threat Screening Center ("TSC"), which oversees the governmental terrorist watchlist on which Mr. Kariye and Mr. Mouslli allege they were placed. (Opp. at 14 n.9). Next, there is the declaration of the Executive Director for Operations, Office of Field Operations for CBP Christopher R. Holtzer. (Holtzer Decl.). As explained in greater detail below, these declarations fail because Mr. McQueen does not qualify as the "head of the department having control over the requested information" and because Mr. Holtzer's declaration does not sufficiently specify "the information for which the privilege is claimed." *Wagafe*, 334 F.R.D. at 623.

#### 1. Mr. McQueen Does Not Have Sufficient Authority to Invoke the Law Enforcement Privilege for the Files at Issue Here. The Court Assumes Mr. Holtzer Does.

The law enforcement privilege is qualified, meaning that courts "have adopted more flexible requirements for assertion of" it. *Doe 1*, 2019 WL 4235344, at *4. With this flexibility, numerous courts have allowed "'an appropriate agency official' instead of a department head" to invoke the privilege. *City of Los Angeles*, 2023 WL 6370887, at *9. Under this authority, Defendants argue that Mr. McQueen may invoke the privilege here because of his role at TSC, which oversees the watchlist on which Mr. Kariye and

Mr. Mouslli claim they were erroneously placed. (Opp. at 14 n.9). That may be true, but Mr. McQueen is an FBI agent, and the files at issue here come from the CBP. In Defendants' own words, TECS files come from "CBP's [own] TECS database." (Opp. at 7). The authorities Defendants cite to justify Mr. McQueen's involvement (as well as other relevant cases) all greenlight the invocation of the privilege by nondepartment heads who were still officials from the *same* agency responsible for producing discovery. *See, e.g.*, *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135–36 (D.C. Cir. 2000) (holding that the head of a regional division of the Federal Deposit Insurance Corporation's division of supervision rather than its head was of sufficient rank to assert the deliberative process and law enforcement privileges); *City of Los Angeles*, 2023 WL 6370887, at *12 (holding that the U. S. Department of Housing & Urban Development had appropriately authorized its own principal deputy general counsel to invoke the privilege); *Doe 1*, 2019 WL 4235344, at *4 (holding that lower-level officials within the United States Citizenship and Immigration Services could invoke the privilege but not an advisor to the agency). Mr. McQueen is an FBI agent who runs TSC. He holds no position in CBP and, therefore, cannot assert the privilege for CBP records from CBP's TECS database.

Nonetheless, the Court assumes that Mr. Holzer—who is the executive operations director of the *CBP's* Office of Field Operations—is an appropriate agency official to invoke the privilege.

**2. Mr. Holtzer's Declaration Shows Personal Consideration of the Files at Issue.**

Mr. Holzer's declaration largely avoids the specific files at issue in this case but, for the purposes of this prong, this is not fatal. Defendants primarily invoke the law enforcement privilege in this case to protect CBP investigatory *techniques*, rather than a specific investigation. (*See* Opp. at 1). And this is allowed. *City of New York*, 856 F.2d

at 484 (describing the privilege as intended to, among other things, protect "law enforcement techniques and procedures"). Mr. Holzer's extensive discussion of how the TECS system works, its value to CBP law enforcement operations, and his familiarity with this case, these motions, and the production of documents (Holtzer Decl. at 3) satisfy the second prong of the law enforcement privilege test, especially because this declaration was submitted alongside another, meant to be read complimentarily.

**3. However, Mr. Holtzer's Declaration Does Not Sufficiently Explain How the Files at Issue Are Protected by the Law Enforcement Privilege.**

An agency official may provide a declaration to establish that he has reviewed the materials at issue and that they are covered by the privilege. *Novoa v. Geo Grp., Inc.*, No. 517CV02514, 2020 WL 6694317, at *6 (C.D. Cal. Oct. 8, 2020); *cf. Lien v. City of San Diego*, No. 21-CV-224, 2022 WL 134896, at *3 (S.D. Cal. Jan. 14, 2022). Whether produced before or after a motion to compel,[4] though, the declaration must provide "*specific* information about how disclosure of the *specific* documents requested . . . would threaten the *specific* governmental and privacy interests at stake." *Al Otro Lado, Inc. v. Wolf*, No. 3:17-CV-2366, 2020 WL 3487823, at *4 (S.D. Cal. June 26, 2020) (italics in original). Speculation and hypotheticals "about what unnamed 'hostile actors' might do with the same *type* of information" claimed as privilege "does little to aid the Court in assessing whether the particular" files at issue deserve that designation. *Id.*

Mt. Holtzer's declaration is faulty for two reasons. First, by his own admission, it is intended primarily as a primer on TECS. He declares: "[T]he purpose of this declaration is to provide the Court and Plaintiffs with *an explanation of information that*

[4] The parties disagree on whether Defendants provided a timely declaration. (*See* Motion at 13; Opp. at 13–14). The Court sees no reason to weigh into this thicket.

*has been redacted for law enforcement privilege purposes* and explain the *importance of this privilege* in CBP carrying out its national security and law enforcement missions." (Holtzer Decl. at 3–4 (emphasis added)). In other words, the declaration explains the codes and other information redacted in generalities. The bulk of the declaration generally explains how CBP uses TECS and how TECS stores information like unique codes and interaction summaries. While this information is certainly helpful, the declaration lacks a meaningful discussion about the unique redacted TECS files that specifically pertain to Mr. Kariye, Mr. Mouslli, and Mr. Shah. The declaration fails to explain how the general techniques it addresses are privileged as to *how* they were used in Plaintiffs' specific files.

Second, the declaration contains speculation couched in general terms. It does not discuss the specifics of this case or the specific files. For example, "The TECS records produced to Plaintiffs *would* have listed the CBP officers involved in the secondary inspections." (*Id.* at 3 (emphasis added)). "TECS records also contain information that CBP considered when inspecting Plaintiffs, including reasons why a traveler *may* be referred to secondary." (*Id.* at 7 (emphasis added)). "Disclosure of the reasons as to why a traveler may be referred to secondary or processed on primary" "*could* enable individuals to thwart CBP's efforts to secure the border and enforce legal requirements at the border." (*Id.* (emphasis added)). These examples—representative of the entire declaration—do nothing to show this Court that the specific files at issue in this discovery dispute are indeed privileged.

In sum, Defendants have insufficiently asserted the law enforcement privilege.

### B. Even if Defendants Had Properly Asserted the Privilege, Plaintiff Has Shown a Compelling Need for the Files at Issue.

The records Plaintiffs seek are essential to their claims. They record the specific DHS interactions with Plaintiffs that give rise to this litigation. Often, they memorialize why Plaintiffs were stopped and why they were interrogated. This information ties directly to Plaintiffs' claims that they were unconstitutionally scrutinized. The TECS files and other withheld information will help elucidate whether or not these stops were justified from a law enforcement perspective or not. In essence, they are the heart of this lawsuit.

Neither party has explicitly addressed the *Frankenhasuer* test. Still, it helps explain this Court's understanding of this issue. The majority of factors weigh in Plaintiffs' favor:

The first factor contemplates "the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information." *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). Here, Plaintiffs allege that the interrogations to which they were subjected were coercive; they were not free to leave until the officers let them go. (*E.g.*, FAC at 18, 24). These methods do not concern the disclosure of voluntary information from helpful citizens.

The second factor contemplates "the impact upon persons who have given information of having their identities disclosed." *Frankenhauser*, 59 F.R.D. at 344. Plaintiffs themselves have already publicly identified themselves by filing this lawsuit. And Defendants do not argue in their briefing, nor does the Holtzer Declaration identify

any concern about the disclosure of the identities of any of the individuals involved in the inspections.[5]

The fifth factor asks "whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question." *Id.* Neither party has raised any ongoing criminal actions against Plaintiffs. Likewise, no future prosecutions appear imminent based on the record before this Court.

The eighth factor asks "whether the plaintiff's suit is non-frivolous and brought in good faith." *Id.* The Ninth Circuit has found that Plaintiffs "plausibly allege[d] an unwritten, officially sanctioned pattern or practice" of unconstitutional behavior. *Kariye v. Mayorkas*, No. 23-55790, 2024 WL 4403870, at *2 (9th Cir. Oct. 4, 2024), and Plaintiff's lawyers have been litigating this case in earnest.

The ninth factor asks "whether the information sought is available through other discovery or from other sources." *Frankenhauser*, 59 F.R.D. at 344. As this is material retained by CBP and CBP alone, there is no other source from which Plaintiffs may obtain the relevant files.[6]

Finally, the tenth factor weighs "the importance of the information sought to the plaintiff's case." *Id.* These records shed light on why CBP screens individuals for secondary screening and are directly relevant to Plaintiff's claims. As explained above,

---

[5] The Holtzer Declaration notes that the TECS files would include CBP officers involved in secondary inspections but does not say that disclosure of their identities would be harmful. (Holtzer Decl. at 4).

[6] The parties agree that some of the materials at issue were previously released in a FOIA request. (Motion at 18 n.13; Dkt. No. 133-4 at 8). This, however, appears to be a small portion of the relevant materials.

the records will help Plaintiffs determine whether or not CBP's actions were related to their Muslim faith. The requested information requested would be far greater than merely of "some assistance" to Plaintiffs. (Opp. at 16 (*Ayala v. City of New York*, No. 04 CIV. 1102, 2004 WL 2914085, at *1 (S.D.N.Y. Dec. 16, 2004)).

In sum, six factors weigh in favor of Plaintiffs. The remaining factors either cannot be evaluated, are nonapplicable, or are inconclusive.[7]

### C. **Mindful that Security Interests Are Present, the Court Orders Disclosure Consistent with a Stringent Protective Order.**

This "Court has broad discretion to control discovery." *Wagafe*, 334 F.R.D. at 622 (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). After reviewing the in camera records provided to it, the Court recognizes that there is some security interest in limiting the disclosure of these files. *See City of Los Angeles*, 2023 WL 6370887, at *9 (observing that because the law enforcement privilege is "based on the harm to law enforcement efforts that might result from *public* disclosure of investigatory files, courts should also consider whether disclosure of the information pursuant to a protective order would ameliorate any harm that might otherwise occur from that disclosure" (emphasis in

---

[7] It is impossible to know whether, for the sixth factor, any investigation of or related to Plaintiffs is completed (or ever occurred). The sixth and seventh factors, examining degree to which government's self-evaluation and consequent program improvement will be chilled by disclosure and whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation, appear irrelevant to this case and the material at issue. Plaintiffs seek information about complaints, disciplinary actions, and the like (*see* Dkt. No. 120-6 at 18–19), but Defendants do not cite disclosure of these materials as a concern. Finally, the fourth factor, which weighs whether the information sought is factual data or evaluative summary, does not favor either side. The Court believes that the redacted information could be categorized in different circumstances as either. In such a circumstance, this factor "does not conclusively weigh for or against application of the privilege." *See Est. of Bui v. City of Westminster Police Dep't*, 244 F.R.D. 591, 596 (C.D. Cal. 2007).

original)). For this reason, the Court believes that the materials in question should be produced consistent with a more restrictive protective order than the one currently in place, one that restricts requested information to "attorneys' eyes only." Accordingly, the parties are required to meet and confer and submit a proposed enhanced protective order that establishes attorneys' eyes only parameters as well as penalties for violation of the order. Should no agreement be reached, the parties shall each submit their own proposed protective order by the deadline described below.

## V.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion to Compel Re: Law Enforcement Privilege (Dkt. No. 118). Accordingly, the Court ORDERS:

1. Parties shall submit a proposed enhanced attorneys' eyes only protective order within seven days from this Order. If they are unable to reach an agreement on the proposed order, they shall submit their own proposed orders by the same deadline.

2. Once the Court has issued the enhanced protective order, the Defendants shall produce in unredacted form any documents previously withheld or redacted and provide complete responses to all interrogatories within fourteen days.

DATED: March 17, 2026

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE