**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABDIRAHMAN ADEN KARIYE, MOHAMAD MOUSLLI, AND HAMEEM SHAH,<br><br>PLAINTIFF,<br><br>V.<br><br>KRISTI NOEM, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, IN HER OFFICIAL CAPACITY, ET AL.,<br><br>DEFENDANTS. | Case No. CV 22-1916 FWS (PVCx)<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (Dkt. No. 120)** |

## I.

## INTRODUCTION

Plaintiffs Abdirahman Aden Kariye, Mohamad Mouslli, and Hameem Shah allege that they have been stopped repeatedly at airports for secondary religious screening by U.S. Customs and Border Protection ("CBP") and Homeland Security Investigations because of their Muslim faith. In discovery, Plaintiffs have sought from Defendants—

who are officials from U.S. Department of Homeland Security ("DHS") and its subdepartments—internal files that document Plaintiffs' interactions with the agency. Plaintiffs filed this Motion to Compel seeking relief from the Court regarding five different discovery disputes. For the reasons stated below, the Court GRANTS the Motion in part and DENIES it in part.

## II.
## BACKGROUND

Plaintiffs are Muslim American citizens. ("FAC," Dkt. No. 61 at 13, 24, 31).[1] They allege that they were repeatedly stopped for secondary inspection in American airports after returning from international travel because they are Muslim. (*See id.* at 13–38). During the inspections, CBP officers interrogated them about their faith. (*See id.*). They contend that this secondary questioning violated the Constitutional rights to equal protection, free exercise, free association as well as the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb–2000bb-4. (*See generally* FAC). Plaintiff Shah also alleges that Defendants' retaliatory actions violated the First Amendment. (*Id.*).

In discovery, Plaintiffs have sought government records they believe will show why they were repeatedly selected for secondary inspection. Currently, the parties face a wide range of discovery disputes, many of which are raised in this instant Motion. ("Motion," Dkt. No. 120-1). First, the parties dispute whether and how Defendants should be required to search material stored in DHS's TECS database (used to track secondary inspections), which has limited search capabilities. (*Id.* at 8–9). Second, the parties dispute the production of responsive materials from DHS's Office for Civil Rights and Civil Liberties ("CRCL"). (*Id.* at 10–11). Third, the parties dispute whether Defendant

---

[1] For ease of reference, this Court refers to page numbers generated by CM/ECF in the blue ribbon printed on each page of every filed document.

has sufficiently informed Plaintiffs of the identities of the officers involved in and related to Plaintiffs' questioning. (*Id.* at 11–13). Fourth, the parties dispute Defendants' obligation to search officers' work phones for responsive information. (*Id.* at 13–15). Finally, the parties dispute the scope of employment records Defendants must produce for each involved officer. (*Id.* at 15–17).

The parties have fully briefed these issues. (Motion; "Opp.," Dkt. No. 134; "Reply," Dkt. No. 141). The Court heard oral argument on the Motion and took the case under submission. (Dkt. No. 147). This Order addresses the disputes listed above in turn.

## III.
## STANDARDS

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The relevance standard is commonly recognized as one that is necessarily broad in scope in order to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Raya v. Barka*, 2022 WL 686460, at *4 (S.D. Cal. Mar. 8, 2022) (citation omitted); *see Sci. Games Corp. v. AGS LLC*, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017) ("Even after the 2015 amendments, courts continue to recognize that discovery relevance remains 'broad' in scope."). "The proportionality inquiry [in Rule 26(b)(1)] focuses, at bottom, on analyzing the marginal utility of the discovery being sought." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 314 (D. Nev. 2019) (citation omitted).

While the scope of permissible discovery may be broad, because discovery must be both relevant and proportional to the needs of the case, the right to discovery, even plainly relevant discovery, is not limitless. The 2015 amendments to Rule 26 "were designed to protect against over-discovery and to emphasize judicial management of the discovery process, especially for those cases in which the parties do not themselves effectively manage discovery." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 308 (S.D. Ind. 2016); *see Davita HealthCare Partners, Inc. v. United States*, 125 Fed. Cl. 394, 398 n.3 (2016) (the 2015 amendments to the Federal Rules "contribute to the overall goal of regulating the time and expense of litigation"). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance. In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *United States v. McGraw-Hill Cos.*, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (citations omitted); *see DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.").

When a party believes discoverable information has been withheld, that party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).

## IV.
## ANALYSIS

### A. Searching the TECS Database

The TECS database at issue in this dispute has limited search capabilities. According to Defendants:

> TECS's query function is designed to search specific, indexed fields like biographic information to provide officers with details of prior TECS inspection records for each traveler. All users of TECS are limited to these specific searches. Keyword searches across other fields in the database are not supported because TECS is structured for targeted queries of indexed data.

("Holtzer Decl.," 134-3 at 8). Given these limitations, Defendants posit that "[e]nabling keyword searches in the TECS database is not possible without severe performance impact to the database and the TECS system that relies on the database" constantly. (*Id.*).

Plaintiffs seek a court order requiring Defendants to either (1) use "standard e-discovery techniques that could facilitate keyword searches of [relevant] fields," including "methods that could be used to query the database from the backend," or (2) "have the

TECS database administrator or other knowledgeable technician meet with Plaintiffs' e-discovery experts or vendor to have good faith-discussions on how to make the TECS database text-searchable." (Motion at 8–9).

Defendants object. They argue that Plaintiffs failed to provide specific solutions to the issue, that any potential work-around would be too burdensome, that the request is not proportional to the needs of the case, and that there are alternative avenues of obtaining the requested material. (Opp. at 9–11). They also claim that a meeting between respective technical experts would risk exposing potentially sensitive law enforcement material. (*Id.* at 9 n.2; Holtzer Decl. at 9).

Defendants correctly observe that the Federal Rules of Civil Procedure prohibit the creation of new files, records, or documents for the sake of discovery. *See Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (under Federal Rule of Civil Procedure 34, "[a] party . . . is not required to create a document where none exists."). Nonetheless, some Courts have, consistent with that rule, required parties create software meant to read *existing*, discoverable data. *See, e.g.*, *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 244 (N.D. Ohio 2017) (requiring a defendant collection bureau to "write [a] program that would produce the class data of wrong number calls and associated account notes for the class period *or* produce the relevant portions of its database to Plaintiff so that her expert . . . [could] write the program and conduct the query himself"); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94CIV.2120, 1995 WL 649934, at *1 (S.D.N.Y. Nov. 3, 1995) (holding that "producing party can be required to design a computer program to extract the data from its computerized business records").

As this juncture, the Court is ill-equipped to require Defendants to create a specific program to make the TECS database searchable. Between Plaintiff's two alternate requests, the Court finds the second (a meeting between the TECS administrator and

Plaintiff's e-discovery experts) most reasonable at this moment. "[I]t cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary." *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 238 (S.D. Cal. 2015) (citation omitted). Plaintiffs believe they can avoid a full database scan for each query entered, which Defendants cite as the burdensome ask. (*See* Reply at 2–3 (quoting Defendants' Holtzer Decl. at 8)). Preparing for and coming to such a meeting is not burdensome. To assuage Defendants' concerns that identifiable solutions have not previously been provided, Plaintiff shall prepare specific technical solutions they believe might solve the searchability issue before any such meeting. As to Defendants' concerns regarding potential disclosure of sensitive material, this Court has concurrently decided (in a separate order) that Defendants failed to properly invoke the law enforcement privilege. This meeting will be subject to the heightened protective order described in that concurrent order, and counsel for both sides will be present at this meeting.[2]

### B. <u>Document Preservation from CRCL</u>

Plaintiffs assert that Defendants are withholding complaints and other similar documents held by CRCL that are responsive to Requests for Production 11, 18, and 19. (Motion at 10). President Donald Trump has recently dismissed much of the office's staff, prompting Plaintiffs to believe that responsive documents might not be preserved.

---

[2] Defendants also object to Plaintiffs' requests related to TECS database searches by noting that TECS records do not contain complaints, which, Defendants say, can be better obtained elsewhere. (Opp. at 10–11). This mischaracterizes Plaintiffs request. TECS records are undoubtedly responsive to, for example, Request for Production 14. (See Motion at 8). That request seeks "All DOCUMENTS from TECS (and from any other database, system, or platform) that CONCERN any PERSON's religion, religious beliefs, religious practices, or religious associations, where such information was entered into TECS or another database, system, or platform as a result of a DEFENDANT's questioning of the PERSON at a port of entry." (Dkt. No. 120-4 at 12).

(*Id.* at 10–11). Plaintiffs seek an order requiring CRCL to preserve responsive documents and that those documents be produced within thirty days of this order. (*Id.* at 11).

Defendants confirm that responsive documents have been preserved. (Opp. at 11; "Mina Decl.," Dkt. No. 134-5 at 3–4). Defendants, however, claim that thirty days is too quick of a turnaround to produce responsive documents, given the reduction of employees at CRCL. (*Id.*). Defendants claim they will require at least a minimum of forty-five days to produce all responsive documents. (*Id.*). Defendants shall produce all responsive documents in a timeline described later in this Order.

### C. <u>Interrogatory Number Seven</u>

This interrogatory requests:

> For each of the ten incidents of questioning alleged in the AMENDED COMPLAINT, IDENTIFY the agents, officers, or officials who participated in, were present at, or supervised any PERSON in connection with such questioning.

(Dkt. No. 120-7 at 11). Plaintiffs claim that Defendants have not satisfied their obligations under this interrogatory. Specifically, Plaintiffs contend that Defendants have not provided the names of officers who "were present at" (but did not participate in) any questioning and those who supervised questioners. (Motion at 11). Plaintiffs contend that Defendants' references to documents that will be produced are insufficient. (*Id.*) Moreover, documents Defendants have produced so far are incomplete, Plaintiffs claim, meaning that Defendants have not produced TECS reports that would allow Plaintiffs to identify missing individuals in three of the ten incidents flagged. (*Id.* at 12).

Defendants counter that they have produced the names of the twelve officers "who questioned Plaintiffs" during the incidents in questions and that, under Federal Rule of Civil Procedure 33(d), they have provided sufficient documents to which Plaintiffs may refer and glean the identities of other officers. (Opp. at 12–13). Defendants also contend that information on supervisors is irrelevant. (*Id.* at 13).

Based on the record provided, Defendant has not sufficiently responded to Interrogatory Number Seven. Plaintiff requested the names of three categories of individuals: (1) those who participated in, (2) those who were present at, or (3) those supervised individuals in connection with the questioning at issue. Defendants responded, by their own admission, by providing a portion of the requested information, likely just one of the three categories. (*See* Opp. at 12 ("Defendants have reasonably responded to this interrogatory by . . . identifying by name and rank the 12 officers of Defendants who actually *questioned* Plaintiffs." (emphasis added)). To justify this response, Defendants invoke Federal Rule of Civil Procedure 33, which they correctly observe entitles responding parties to leave some discovery obligations in the hands of opposing parties. But, as relevant here, such delegation is only appropriate after "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). Plaintiff contends that the "Holtzer Declaration conveniently ignores the three missing TECS Reports, and whether Defendants have **in fact** produced records reflecting all officers 'contacted' regarding **each** of the ten inspections." (Reply at 4). Accordingly, Defendants shall either (a) identify the specific responsive records in sufficient detail such that Plaintiffs will be able to find the relevant information or (b) Defendants shall provide an amended response to Interrogatory Number Seven complete with all responsive information.

Additionally, the information on supervisors is not irrelevant. Defendants, who contend that information is irrelevant, misunderstand Plaintiffs' obligation in this case. In their First Amended Complaint, Plaintiffs have alleged a "a policy and/or practice of singling out and targeting Muslims" within DHS. (FAC at 39). Plaintiffs rightly observe that "[s]upervisors may encourage, endorse, denounce, or be indifferent to religious questioning, all of which goes to the existence of Defendants' policy and/or practice." (Reply at 4). Accordingly, the Court finds the identities of supervisors as requested relevant and Defendants' response as of now incomplete. Defendants shall produce an amended response to Interrogatory Number Seven including supervisory information Plaintiffs seek.

**D. <u>Work Phone Communications Predating May 1, 2023</u>**

Defendants object to searching work phones for responsive information prior to May 1, 2023, claiming that any information produced would be irrelevant and that undertaking such a search would be unduly burdensome. (Opp. at 14–17).

Defendants object on relevance grounds because, prior to May 2023, nonsupervisory line officers with CBP were not issued work phones and supervisors "may have CBP-issued cell phones." (*Id.* at 14; "Wurst Decl.," 134-6 at 3). As explained above, the actions of supervisors are relevant in this case, and their communications would be probative. Moreover, Defendants seek to prohibit the time when the events of this case, which was filed in 2022, took place. Information prior to 2023 would, without a doubt, be relevant to this case. The Court rejects Defendants' relevance objection.

Next, Defendants—after stressing how few relevant phones exist—argue that any search of these phones would be overly burdensome. Defendants support this claim by noting that agency phones, prior to May 2023, were not archived in a centralized data

repository. (Wurst Decl. at 3). Accordingly, agency phones from that era are not mass searchable. (*Id.* at 4). So, to look for responsive data, Defendants would need to identify which (if any) phones would have been assigned to each involved CBP officer used during the relevant time periods, find any physical phones (if still in existence), and manually review them. (Opp. at 15; Wurst Decl. at 3–4). Defendants claim these efforts would be disproportionate to the needs of this case. (Opp. at 16). Defendants additionally claim that there are better places to find responsive materials than these phones. (*Id.* at 17).

As noted above, Defendants' burdensome objection is belied by its contemporaneous argument that so few officers likely would have had phones during the relevant period. Moreover, the alternative sources Defendants propose (searches under the broad ESI searches to which Defendants have already agreed) would not produce any materials contained in these phones, as defendants maintain they will not search these phones without a court order. In reality, then, Defendants have not actually recognized an alternate source for the materials sought; they have identified a source for potentially similar materials, which is not the same thing. Lastly, Defendants continue to downplay the relevance of materials from supervisors (which this search would exclusively cover). Communications between and from supervisors would be directly relevant because, involving leadership, it could further establish a practice and/or policy of discrimination, which Plaintiffs must establish. Accordingly, Defendants shall search any relevant phones and produce any responsive material on them.

### E. <u>Requests for Production Numbers Sixteen and Seventeen</u>

All DOCUMENTS CONCERNING complaints, disciplinary actions, performance reviews, and commendations CONCERNING the border

> officers involved in the ten incidents alleged in the Complaint at paragraphs 32–57, 74–93, and 108–134.

(Dkt. No. 120-6 at 18) (RFP No. 16).

> All DOCUMENTS CONCERNING complaints, disciplinary actions, performance reviews, and commendations CONCERNING the officers and directors identified in Defendants' First Supplemental Initial Disclosures, served on September 20, 2022.

(*Id.* at 19) (RFP No. 17).

In response to these requests, Defendants searched for "disciplinary incidents and complaints" for the twelve individuals Defendants identified in their response to Interrogatory Number Seven. (Opp. at 17). They found none and have reported as such to Plaintiffs.

Plaintiffs object that this response is incomplete for two reasons. First, it fails to identify performance reviews and commendations (as explicitly requested) or any positive reviews. (Motion at 15–16). Second, the response does not cover the complete number of officers involved in the interviews at issue, which Plaintiffs estimate to be at least twenty-one in total. (*Id.* at 16).

Defendants respond by claiming that they have since done a similar search for the nine additional officers referenced by Plaintiff. (Opp. at 17). Defendants additionally argue that Plaintiffs are impermissibly seeking the officers' entire employment records (*id.* at 18) and that searching for commendations and performance reviews would be

unduly burdensome, as, each individual officer would have to find those records him or herself, due to the constraints of the CBP's personnel system[3] (*id.* 18–19).

Defendants mischaracterize Plaintiffs' request. Plaintiffs do not seek complete employment files. Rather, they seek relevant information likely contained *in* those files. The Court agrees with Plaintiff's that commendations and positive reviews are relevant. If any officer engaged in religious profiling, commendations and positive reviews might reveal endorsement by higher-ranking officers. While Defendant explains that the manual review required to search for these files could temporarily take officers out of the line of duty, this search should be brief and would impact a very limited number of individuals. Accordingly, the Court rejects Defendants' objections to Plaintiffs' request. Defendants shall produce responsive material to Requests for Production Sixteen and Seventeen including complaints, disciplinary actions, performance reviews, and commendations for all officers involved in the religious questioning incidents discussed in the First Amended Complaint.

---

[3] Defendants maintain that the officers' "[p]erformance reviews are not stored in" CBP's main human resources database. ("Kinnahan Decl.," Dkt No. 134-7 at 4). "Performance reviews are not stored in a centralized, searchable system. Each officer, or, alternatively, that officer's supervisor would need to conduct a manual search for the performance review." (*Id.*). Defendants further claim that a manual "search would require taking officers off of frontline operations to manually search their files, which could impact overall agency operations." (*Id.*).

## V.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' Motion (Dkt. No. 120). Accordingly, the Court ORDERS as follows:

1. A TECS database administrator or other knowledgeable technician shall meet with Plaintiffs' e-discovery experts or vendors to engage in a good faith-discussion on how to make the TECS base text-searchable. Counsel for both sides shall be present for this meeting, which will be subject to the enhanced protective order discussed in the concurrent order concerning the law enforcement privilege. Plaintiff shall prepare specific technical solutions they believe might solve the searchability issue no later than two days before any such meeting.

2. Defendants shall produce *all* responsive material contained within the CRCL archive within forty-five days of this Order.

3. Defendants shall produce an amended response to Interrogatory Number Seven including supervisory information Plaintiffs seek, or, in the alternative, provide descriptions sufficient to satisfy Federal Rule of Civil Procedure 33(d)(1), within seven days of this Order.

4. Defendants shall search phones used by involved officers prior to May 2023 and produce all responsive data found within fourteen days of this Order.

5. Defendants shall produce responsive material to Requests for Production Sixteen and Seventeen including complaints, disciplinary actions, performance reviews, and commendations for all officers involved in the religious questioning incidents discussed in the First Amended Complaint.

DATED: March 17, 2026

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE